UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| DELTEK, INC.,          ) | |
|          ) | |
|     Plaintiff,     ) | |
|          ) | |
|     v.       ) | Case No. 1:09-cv-330 AJT/JFA |
|          ) | |
| IUVO SYSTEMS, INC., et al.,     ) | |
|          ) | |
|     Defendants.     ) | |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Charles B. Wayne (VSB # 24954)
Elisha A. King
Jamie M. Konn (VSB # 73113)
DLA Piper LLP (US)
500 Eighth Street NW
Washington, D.C. 20004
(202) 799-4000
(202) 799-5000 [fax]
charles.wayne@dlapiper.com
elisha.king@dlapiper.com
jamie.konn@dlapiper.com

*Counsel for Plaintiff Deltek, Inc.*

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................. 1

STATEMENT OF FACTS .................................................................................................... 3

ARGUMENT ........................................................................................................................ 3

I.    DELTEK IS ENTITLED TO THE REQUESTED PRELIMINARY INJUNCTIVE
      RELIEF ...................................................................................................................... 3

      A.    The Balance of Harm Weighs Heavily in Favor of Deltek .................................. 4

            1.    Irreparable Harm Will Result From the Defendants' Continued
                  Wrongful Acts ...................................................................................... 4

            2.    Defendants Will Suffer No or Little Harm if Enjoined ........................... 7

      B.    Deltek Will Likely Prevail on the Merits ........................................................... 10

            1.    Trademark Infringement and Unfair Competition.................................. 10

            2.    Cybersquatting .................................................................................... 14

            3.    Breach of Contract .............................................................................. 14

            4.    Tortious Interference with Contract....................................................... 18

            5.    Tortious Interference with Business Relations and Business Expectancy
                  ........................................................................................................... 19

            6.    Breach of Fiduciary Duty..................................................................... 20

            7.    Fraud .................................................................................................. 22

            8.    Statutory Civil Conspiracy ................................................................... 23

            9.    Common Law Civil Conspiracy ............................................................ 24

            10.   Defamation .......................................................................................... 25

            11.   Conversion .......................................................................................... 26

            12.   Violation of the Virginia Uniform Trade Secrets Act ............................. 26

            13.   Unjust Enrichment ............................................................................... 28

C.    Granting the Requested Injunctive Relief Would Serve the Public Interest ........ 28

II.    DELTEK SHOULD NOT BE REQUIRED TO POST A BOND.................................. 29

CONCLUSION ....................................................................................................................... 30

## INTRODUCTION

Plaintiff Deltek, Inc. ("Deltek") is a Virginia-based business that licenses its proprietary accounting and financial software to customers, and provides maintenance and consulting support to users of its software products. Deltek moves this Court to issue a preliminary injunction to prevent three of its former employees and the company they have formed from (1) intentionally infringing Deltek's trademarks and violating its rights regarding the use of its name on the internet; (2) conspiring to harm Deltek by surreptitiously obtaining confidential information regarding Deltek's licensing of its proprietary computer software, and using that information to steal business from Deltek; (3) providing misinformation to Deltek customers about Deltek's pricing and procedures that is intentionally designed to interfere with Deltek's customer relationships; (4) violating contractual obligations owed to Deltek; and (5) engaging in other tortious conduct.

The Defendants are advertising the services of their new company – which they secretly formed while still employed by Deltek – through two internet websites that infringe Deltek's trademarks. They are purposely confusing customers through the text, appearance, name, and metatags associated with their websites, which suggest that their company, Iuvo Systems, Inc. ("Iuvo"), is authorized by Deltek to provide support and consulting services related to Deltek's proprietary computer software. In fact, Deltek authorizes only its own personnel and a small number of business partners to consult on Deltek software, and Iuvo has no such authorized association with Deltek.

In addition to their wrongful internet advertising, these former employees are obtaining non-public information about recent Deltek licensing deals and ongoing negotiations in an underhanded and covert manner. They are using the information to systematically contact

Deltek's customers and offer consulting services at lower prices than Deltek has offered. Customers that have been contacted are surprised and concerned that a third party is aware of their dealings with Deltek, and have expressed disappointment that their dealings with Deltek have not remained private. Given that Deltek assists customers with handling sensitive financial data, confidentiality is a top priority. All three of the former employees involved in this conduct signed contracts with Deltek that bar the exact type of conduct in which they are now engaged.

Deltek's investigation into the formation of the former employees' competing business is continuing, but Deltek already has discovered that, in addition to competing against Deltek, these former employees have defamed Deltek in order to win business for Iuvo, by telling customers that Deltek is ill-equipped to assist customers with use of its own software. In addition, they are taking steps to undermine customer confidence in Deltek, by providing false information, purported to be based on their years of experience working for Deltek. For instance, they are suggesting to customers that Deltek has failed to provide the customers with necessary pre-processing software, and that such software – for which Deltek normally charges fees – is commonly provided by Deltek to *other* customers for free. This misinformation is causing harm to Deltek's customer goodwill. Given that two-thirds of Deltek's revenue is generated from maintenance and consulting services that follow after the sale of licenses of its software, such maligning of Deltek has the potential to cause increasing harm to Deltek.

As further detailed below, Deltek respectfully requests that this Court enjoin the defendants from further violating Deltek's rights. Without such relief, Deltek will suffer continued damage to its customer goodwill, and immeasurable harm arising from the confusion that defendants are intentionally creating in the marketplace.

## STATEMENT OF FACTS

The facts supporting this memorandum are set forth in the Verified Complaint, which is incorporated herein by reference.

In addition, on March 25, 2009, the Chief Financial Officer of a Deltek customer contacted Deltek to express surprise at a contact just received from the defendants, obviously based on leaked confidential information. Defendants had secretly learned of Deltek's recent sale to this customer – a fact which is not public information – and offered to provide consulting services to the customer "at a fraction of the price charged by Deltek or its partners." The Chief Financial Officer advised Deltek: "I thought it most interesting that they knew about our pending acquisition since we have not discussed same outside of Deltek." See Ex. 1.

## ARGUMENT

**I.    DELTEK IS ENTITLED TO THE REQUESTED PRELIMINARY INJUNCTIVE RELIEF**

The issuance or denial of a preliminary injunction "is committed to the sound discretion of the trial court." Giannoukos v. Harp, 369 F. Supp. 2d 715, 719 (E.D. Va. 2005). The trial court must consider four factors in deciding whether to issue a preliminary injunction: (1) the likelihood that the movant will suffer irreparable harm if the preliminary injunction is denied; (2) the likelihood that the opposing party will suffer harm if the injunction is granted; (3) the likelihood that the movant will succeed on the merits; and (4) the public interest. Winter v. Natural Res. Def. Counsel, --- U.S. ----, 129 S.Ct. 365, 374 (2008); Ciena Corp. v. Jarrard, 203 F.3d 312, 322 (4th Cir. 2000); Blackwelder Furniture Co. v. Seilig Mfg. Co., 550 F.2d 189, 193-96 (4th Cir. 1977).

The balance-of-hardship analysis should precede the separate consideration of likelihood of success on the merits, and is the "most important component of the analysis." Giannoukos,

3

369 F. Supp. 2d at 719; see also Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 817 (4th Cir. 1991). "If the hardship balance tilts sharply and clearly in the movant's favor, the required proof of likelihood of success is substantially reduced." Direx, 952 F.2d at 817.

Here, preliminary injunctive relief is mandated because the hardship balance "tilt[s] sharply and clearly in [Deltek's] favor." See id. Deltek will be irreparably injured if a preliminary injunction does not issue, whereas the defendants will suffer little harm as a result of the granting of injunctive relief, as they will be able to operate any business they like, as long as it does not infringe on Deltek's trademarks, or seek to undercut Deltek's ability to provide services related to customers' use of Deltek's own proprietary software. Moreover, Deltek is likely to succeed on the merits of its underlying claims, as detailed below.

Finally, the granting of a preliminary injunction will simply uphold the terms already agreed upon by the parties in their contracts, and reduce or eliminate any consumer confusion resulting from Iuvo's use of Deltek's trademarks. Such relief is, therefore, in the public interest.

### A.    The Balance of Harm Weighs in Favor of Deltek

#### 1.    Irreparable Harm Will Result From the Defendants' Continued Wrongful Conduct

A plaintiff must show a likelihood of irreparable harm before a preliminary injunction will be ordered. Winter, 129 S.Ct. at 375-76. The following conduct by the defendants is causing irreparable harm to Deltek: (1) the defendants are causing customer confusion by infringing Deltek's trademarks and violating Deltek's rights regarding the use of its name on the internet; (2) the defendants are obtaining confidential information regarding Deltek's recent licensing deals and ongoing negotiations with customers, and they are interceding in such deals to offer consulting services at lower prices than Deltek offers, and thereby undermining customer confidence in Deltek's ability to keep their business negotiations secret from third parties; (3) the

defendants are providing misinformation to Deltek customers about Deltek's pricing and procedures that is intentionally designed to interfere with Deltek's customer relationships; (4) the defendants have successfully convinced several customers to use Iuvo's services by advertising their status as former Deltek employees, and implying a continuing affiliation with or authorization by Deltek to perform consulting work on Deltek's software that does not exist; and (5) the defendants are intentionally and blatantly disregarding contractual promises they made to Deltek that they would not engage in competition for Deltek's customers for a limited period immediately after their resignations.

This conduct and threat to Deltek's business justifies the imposition of an injunction: "[W]hen the failure to grant preliminary relief creates the possibility of permanent loss of customers to a competitor or the loss of goodwill, the irreparable injury prong is satisfied." Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co., 22 F.3d 546, 552 (4th Cir. 1994) (citing Merrill Lynch, Pierce, Fenner and Smith v. Bradley, 756 F.2d 1048, 1055 (4th Cir. 1985)).

Importantly, there is a presumption of irreparable injury in trademark infringement cases as such cases present a real threat of injury to reputation.  See, e.g., Wynn Oil Co. v. Thomas, 839 F.2d 1183, 1191 (6th Cir. 1988);  Wesley-Jessen Div. Of Schering Corp. v. Bausch & Lomb, Inc., 698 F.2d 862, 867 (7th Cir. 1983); see also Lone Star Steakhouse & Saloon v. Alpha of Virginia, 43 F.3d 922, 939 (4th Cir. 1995) (recognizing presumption and discussing it favorably).

Moreover, in Lanham Act trademark infringement cases, "a presumption of irreparable injury is generally applied once the plaintiff has demonstrated a likelihood of confusion, the key element in an infringement case." Scotts Co. v. United Indus. Corp., 315 F.3d 264, 273 (4th Cir. 2002).  This presumption also has been applied in this Court and was recognized as the general

standard by the Fourth Circuit.  Id. at 273 n.3 (noting that the presumption was applied in two Lanham Act false advertising cases, JTH Tax, Inc. v. H & R Block E. Tax Servs., Inc., 128 F.Supp. 2d 926 (E.D. Va. 2001), aff'd in part, vacated in part, 28 Fed. Appx. 207 (4th Cir. 2002), and Black & Decker (U.S.) Inc. v. Pro-Tech Power Inc., 26 F.Supp. 2d 834 (E.D. Va. 1998)).

Without injunctive relief, the defendants will continue to solicit and steal customers from Deltek, and undermine Deltek's relationships with existing customers, by providing misinformation about Deltek's pricing and services, and relying on confidential, proprietary and trade secret information of Deltek to undercut Deltek on price.  Depending on the extent to which Iuvo continues to raid Deltek's customer base and contact Deltek's customers without invitation, the results could pose an increasingly serious threat to Deltek's business and its customers' confidence in Deltek.  The defendants also are harming Deltek by using familiar faces to solicit Deltek's clients.  Muldrow and Truong, through Iuvo, have recently solicited several Deltek customers to hire Iuvo to perform consulting work related to the Deltek software purchased by those organizations. More than two-thirds of Deltek's annual revenue is generated by Deltek's consulting and maintenance services.  Obviously, the effects of losing these and any other consulting and support opportunities to unfair competition must be prevented.

In addition, Deltek will suffer irreparable harm to its reputation and goodwill if an injunction is not issued because of the likelihood of confusion created by Iuvo's use of Deltek's trademarks.  It is clear that Iuvo seeks to profit from the Deltek trademarks by adopting and using the Deltek trademarks such that Iuvo will benefit from the confusion.  Deltek, on the other hand, will only be harmed by such use.  For example, Iuvo has already begun to tap into Deltek's long-standing customers, thereby affecting Deltek's reputation and goodwill.  Without an injunction, Iuvo will continue to seek Deltek customers who will no doubt believe that Iuvo is in

some way affiliated or associated with the Deltek name and Deltek trademarks they have come to know and recognize over the last twenty-five years. These threats to Deltek justify the imposition of a preliminary injunction.

### 2. The Defendants Will Suffer No or Little Harm if Enjoined

In contrast to the continuing and threatened harm to Deltek, the defendants will suffer little or no harm if they are preliminarily enjoined from (a) infringing Deltek's trademarks; (b) obtaining and using confidential information of Deltek to benefit Iuvo; and (c) selling consulting services related specifically to Deltek's proprietary computer software.

In a similar case, the Fourth Circuit upheld a trial court's issuing of an injunction where, "the judge looked at [the former employee's] education and employment background, noting that '[s]he is able to do other things, certainly in the computer field, that don't directly compete with [her prior employer].'" Ciena, 203 F.3d at 323. Based on those facts, the trial court concluded that any harm to the former employee if she were enjoined from working with competitors of the plaintiff company "is ameliorated by the fact that she is not a one trick pony." Id. Given the court's confidence that the employee could find non-competitive "meaningful work" in the technology field, an injunction was issued by the trial court, and upheld by the Fourth Circuit. Id.

Here, Iuvo's primary website, www.iuvosystems.com ("iuvosystems.com website") makes clear that the former Deltek employees have experience in providing services beyond those that are directly competitive with Deltek. For example, the website boasts that Iuvo's consultants have experience in, among other things, IT project management, Microsoft SQL Server, Oracle Database, Microsoft Windows 2003 Terminal Server, and Citrix Presentation Server.

As in Ciena, the former Deltek employees in this case also easily could find work in the technology industry that would not involve consulting specifically on Deltek's proprietary

software products.  They need not take advantage of their intricate knowledge of Deltek products – which they learned only in the course of their employment with Deltek – in order to remain gainfully employed.  Indeed, they promised as a condition of their employment that they would make a living another way, for at least a limited time period, in the event that they resigned from Deltek, and their promises should not be overlooked.  Indeed, this Court has held that an injunction that merely forces a defendant to abide by a contract does not unduly burden the defendant.  See JTH Tax, 514 F.Supp. 2d at 825.

Moreover, the Court's analysis of the balance of harms should include consideration of the defendants' bad faith.  Their underhanded tactics have included (a) secretly forming Iuvo while still working for Deltek; (b) using websites, which are confusingly similar in both wording and appearance to Deltek's website, thereby increasing the likelihood that Iuvo may be able to steal Deltek's customers; (c) raiding of Deltek's long-standing customer base as a way to improve their own business and simultaneously harm Deltek's ability to operate a successful business; (d) providing misinformation to Deltek's customers about Deltek's pricing and procedures that has interfered with Deltek's customer relationships; and (e) using an unknown insider at Deltek to obtain real-time confidential information about Deltek's business operations and software licensing deals.  Such acts of bad faith may influence the Court's decision regarding whether to order preliminary injunctive relief.  Safeway, Inc. v. CESC Plaza Limited Partnership, 261 F. Supp. 2d 439, 472 (E.D. Va. 2003) (noting that "the balancing of the equities also typically includes consideration of other equitable factors, such as the innocence or culpability of the parties [and] the presence or absence of bad faith or ill motive on the part of either party. . . .").

Any claims by defendants that they will suffer harm as a result of the expenses they have incurred in establishing Iuvo's business, or from the loss of business they will suffer if they are

enjoined, do not weigh in defendants' favor, because defendants incurred such expenses and obtained such business opportunities at their own risk. Defendants' agreements with Deltek clearly provide that defendants may not establish or work for a competing business. Rather than abiding by these terms or seeking Deltek's release of certain limitations through a legitimate business negotiation, defendants have blatantly violated their agreements by establishing a competing business, soliciting employees from Deltek, soliciting Deltek's customers, and even using websites that are strikingly similar to Deltek's website.

Finally, even if Iuvo has expended some sums of money in advertising and holding itself out as affiliated with Deltek, that amount is negligible in comparison to the years of time, energy, and capital investment that Deltek has poured into its products, services, and trademarks. See Rubbermaid v. Contico Intern., 836 F. Supp. 1247, 1257-58 (W.D. Va. 1993) (balance of the hardships tipped in favor of plaintiff where he had been in the market area longer); Two Men and a Truck International, Inc. v. Clete, Inc., 2008 WL 2512872, *3 (W.D.N.C. 2008) ("the likely harm to Plaintiff from a lack of injunction is potentially greater, given that Defendant's business is only about a year and a half old and Plaintiff has been in business since 1985."). Moreover, Iuvo has done nothing to give independent value to the Deltek trademarks. Rather, it seeks to profit from the goodwill and value that Deltek has acquired for the Deltek trademarks.

Deltek does not wish to prevent Iuvo from conducting any business. Rather, Deltek seeks to prevent Iuvo and the individual defendants from offering support and consulting services based specifically on Deltek's proprietary software, and from confusing customers and potential customers into believing that Iuvo and Deltek are affiliated, by using Deltek's trademarks – trademarks which Deltek has vested with significant market value. While Deltek has much to

lose in the manner of goodwill, reputation and overall value it has invested in its business, customer base and trademarks, Iuvo will suffer little, if any, harm if the injunction is granted.

**B.      Deltek Will Likely Prevail on the Merits**

Because the balance of harm tips decisively in Deltek's favor, "the required proof of likelihood of success is substantially reduced." Direx, 952 F.2d at 817.  Even if the likelihood of irreparable injury were not considerable, Deltek nevertheless is entitled to preliminary injunctive relief because it is likely to succeed on the merits of its claims.  Each count of the Verified Complaint is addressed below.

**1.      Trademark Infringement and Unfair Competition**

In order to establish its claims for trademark infringement and unfair competition, Deltek will prove the following elements: (1) that Deltek possesses the trademarks at issue; (2) that Iuvo uses the Deltek trademarks; (3) that such use occurs in commerce; (4) in connection with the sale or offering for sale, distribution, or advertising of goods or services; and (5) in a way that is likely to cause confusion among consumers.  See 15 U.S.C. §§ 1114, 1125(a); Lone Star, 43 F.3d at 930.[1]  There can be little doubt that Deltek will succeed on the merits of its trademark infringement and unfair competition claims, because Deltek has valid, protectable trademarks and Iuvo's "use of a colorable imitation of the trademark is likely to cause confusion among consumers."  Lone Star, 43 F.3d at 930; see also People for the Ethical Treatment of Animals, Inc. v. Doughney, 113 F. Supp. 2d 915, 919 (E.D. Va. 2000), aff'd, 263 F.3d 359 (4th Cir. 2001) (posting of website and use of misleading domain name is "in connection with the distribution of services" in commerce when it impacts on a plaintiff's business); Gov't Employees Ins. Co. v.

---

[1]  The test for trademark infringement and unfair competition under the Lanham Act is "essentially the same" as the test for unfair competition under Virginia law.  Synergistic Int'l, LLC v. Korman, 470 F.3d 162, 171 n. 9 (4th Cir. 2006).

Google, Inc., 330 F. Supp. 2d 700, 703 (E.D. Va. 2004) ("courts have found that the use of trademarks in 'metatags,' which are invisible text within [w]ebsites that are used by search engines for indexing, constitute a use in commerce under the Lanham Act.") (citations omitted).

Deltek's Certificates of Federal Trademark Registration of its trademarks establishes that Deltek has "valid, protectable trademark[s]."  15 U.S.C. § 1057(b) ("A certificate of registration of a mark . . . shall be prima facie evidence of the validity of the registered mark . . . of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate . . . .").  Iuvo cannot rebut the prima facie evidence on this point.

Similarly, Iuvo cannot seriously contest that there is a likelihood of confusion between the Deltek trademarks and Iuvo's use of them.   There are seven factors used to determine whether there is a likelihood of confusion between two marks: "(1) the strength or distinctiveness of the mark; (2) the similarity of the two marks; (3) the similarity of the goods and services that the marks identify; (4) the similarity of the facilities that the two parties use in their businesses; (5) the similarity of the advertising the two parties use; (6) the defendant's intent; and (7) actual confusion."   Lone Star, 43 F.3d at 933 (citing Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1527 (4th Cir. 1984)); see also Synergistic Int'l, 470 F.3d at 171 (a court does not have to consider all of those factors and an injunction may be warranted even if some of those factors do not favor the plaintiff.).   These factors weigh strongly in Deltek's favor.

As this Court has recognized,  it is proper to presume "a likelihood of confusion upon a showing that the defendant intentionally copied the plaintiff's trademark or trade dress."   Int'l Bancorp, LLC v. Societe Des Bains de Mer et du Cercle des Etrangers a Monaco, 192 F. Supp. 2d 467, 483 (E.D. Va. 2002) (citing Larsen v. Terk Technologies, 151 F.3d 140, 148 (4th Cir.

11

1998)).  Here there can be no dispute.  The iuvosystems.com website prominently displays "Deltek" in large lettering on the top third of the screen and lists Deltek trademarks throughout the website, presumably to create the illusion of an affiliation between Iuvo and Deltek.  See Pl's Compl., Ex. D.  Thus, Iuvo must show there is no likelihood of confusion.  See Int'l Bancorp, 192 F. Supp. 2d at 483.  Although Iuvo should bear the burden of proof on this issue, a finding of likelihood of confusion would be proper regardless of which party bears the burden of proof.

First, the Deltek trademarks are exceedingly strong, having been used for years and having been the subject of significant advertising, promotion, use and customer recognition and goodwill, including in this market.  See Washington Speakers Bureau, Inc. v. Leading Authorities, Inc., 33 F. Supp. 2d 488, 494-96 (E.D. Va. 1999), aff'd, 217 F.3d 843 (4th Cir. 2000).

Also, the two marks are more than strikingly similar; they are virtually identical.  "[I]t is a settled principle of trademark law that '[t]he dominant part of a mark may be given extra weight on the issue of likelihood of confusion."  Pizzeria Uno Corp., 747 F.2d at 1530.  The dominant part of the Deltek trademarks is "Deltek".  Iuvo prominently uses "Deltek" throughout its iuvosystems.com website and as metatags.[2]  By using infringing metatags such as "Deltek", customers conducting internet searches could be confused when Iuvo's website comes up as a search result.  See North American Medical Corp. v. Axiom Worldwide, Inc., 522 F.3d 1211, 1218-1224 (11th Cir. 2008) (competitor's use of manufacturer's trademarks within its website's metatags was a "use in commerce" and the use of those metatags caused a "likelihood of actual

_____

[2] A metatag is "[a] word or phrase in HTML computer code that usu[ally] identifies the subject of a webpage and acts as a hidden keyword for Internet search engines.  A person who uses a trademark as a metatag without permission may infringe on the trademark owner's rights."  Black's Law Dictionary (8th ed. 2004), metatag.

source confusion"; <u>Suarez Corp. Industries v. Earthwise Tech., Inc.</u>, 2008 WL 4934055, *6 (W.D. Wash. Nov. 14, 2008) ("use of metatags that are confusingly similar to a trademark can create initial interest confusion and constitute trademark infringement.") (citing <u>Brookfield Comm., Inc. v. West Coast Entertainment Corp.</u>, 174 F.3d 1036, 1065, 1045 (9th Cir. 1999)).  In addition, Iuvo also has used another website www.installdeltek.com ("installdeltek.com website"), which makes use of Deltek's name in its title.[3]

Further, the goods and services offered by Iuvo and Deltek overlap, and the companies use similar methods of advertising.  Both Deltek and Iuvo offer support and consulting services for Deltek software.  Iuvo is run by several former Deltek employees who use Deltek's business strategies and offer the same services as Deltek.  And, Iuvo and Deltek both use websites as part of their business to advertise and sell their services and to target purchasers of Deltek software.

Perhaps most importantly, Iuvo intended to trade upon Deltek's goodwill by implying an affiliation that does not exist.

> When a defendant intentionally copies a protected mark, "motivated by an intent to exploit the good will created" by the protected trademark, confusion is presumed.  <u>Shakespeare Co. v. Silstar Corp.</u>, 110 F.3d 234, 241 (4th Cir. 1997). This is because courts "presume that the person who sets out to infringe on another's trademark has more brains than scruples and will likely succeed."  <u>Sara Lee</u>, 81 F.3d at 466.  In other words, the decision of a presumably business-savvy organization to adopt a mark similar to the name of a competitor in an attempt to attract the competitor's customers is taken as compelling evidence that the mark adopted will in fact confuse consumers by its similarity to the protected mark. That is precisely the case here.

<u>Washington Speakers Bureau</u>, 33 F. Supp. 2d at 501.  Here, there can be no doubt that Iuvo is attempting to attract Deltek's customers, because it has done just that, in direct violation of the Muldrow, Truong, and Varan Agreements.  And, finally, there has been actual customer

---

[3] On the same day that the installdeltek.com website was registered, the same person also registered another website, www.installdeltek.net, which also uses Deltek's name in its title.

confusion. As a result, the balance of factors weigh strongly in Deltek's favor, and Deltek is therefore likely to prevail on its trademark infringement and unfair competition claims.

### 2. Cybersquatting

By engaging in the conduct described herein and in the Verified Complaint, Iuvo has violated the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d). To succeed on its cybersquatting claim, Deltek will prove that (1) Iuvo has a bad faith intent to profit from using the installdeltek.com website and (2) the installdeltek.com domain name is identical or confusingly similar to, or dilutive of, the distinctive and famous Deltek trademarks. See 15 U.S.C. § 1125(d)(1)(A). Iuvo's use of the installdeltek.com website is confusingly similar to Deltek trademarks, as discussed above. See 15 U.S.C. § 1125(d)(1)(A)(ii)(I). And, Iuvo used the installdeltek.com website with a bad faith intent to profit, by diverting customers seeking assistance from Deltek to Iuvo. See 15 U.S.C. § 1125(d)(1)(B)(I); People for the Ethical Treatment of Animals, Inc., 113 F. Supp. 2d at 920. Thus, Deltek is likely to prevail on its claim for damages under the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

### 3. Breach of Contract

Deltek also is likely to succeed on its claims of breach of contract against Muldrow, Truong, and Varan. Under Virginia law, "[e]ach non-competition agreement must be evaluated on its own merits, balancing the provisions of the contract with the circumstances of the businesses and employees involved." Parikh v. Family Care Center, 273 Va. 284, 288, 641 S.E.2d 98, 100 (2007) (citing Omniplex World Services Corp. v. U.S. Investigations Services, Inc., 270 Va. 246, 249, 618 S.E. 2d 340, 342 (2005)). Restrictive covenants are enforceable if they are (1) no greater than necessary to protect Deltek's legitimate business interest; (2) not unduly burdensome on any of the defendants' abilities to earn a living; and (3) reasonable and

14

sound from the standpoint of public policy.  See Combined Ins. Co. of America v. Wiest, 578

F.Supp. 822 (W.D. Va. 2008) (citing Omniplex, 270 Va. at 249, 618 S.E. 2d at 342); see also

Foti v. Cook, 220 Va. 800, 805, 263 S.E. 2d 430, 433 (1980).

Deltek's agreements restrict its former employees from engaging in certain competitive

activities and soliciting Deltek's customers for competitive consulting work.  The fact that

Deltek's entire business is centered upon its own proprietary software necessarily means that

there are significant, inherent limits on the scope of Deltek's restrictive covenant agreements

with these employees.  In other words, because Deltek licenses only the software that it develops,

and because its "maintenance and support" and "consulting services" are all based on its own

proprietary software, the restrictions imposed on Deltek's former employees are quite narrow.

Deltek seeks only to bar former employees, for a limited time period, from capitalizing on their

training by Deltek, their in-depth knowledge of Deltek's proprietary software, and their

knowledge of specific customers' use of Deltek products.

Without such limits, Deltek would be unable to protect its investment in training

employees to use and implement Deltek software; instead, Deltek's workplace easily could

become a school for would-be competitors seeking to learn the intricacies of Deltek's software

applications for their own competitive advantage.  The agreements also are necessary to

safeguard customers' satisfaction with Deltek's proprietary software.  By restricting departed

employees from consulting with respect to Deltek software, Deltek can ensure that its own

authorized personnel are assisting recent purchasers of the software to maximize their use of the

products, thereby monitoring customers' experience with Deltek products, addressing any

concerns that purchasers might have, and solidifying the relationship between Deltek and its

customers.  Virginia courts have enforced restrictive covenants based in part on the recognition

that "there is a strong public interest in creating and maintaining a customer base . . . ."  Int'l Limousine Service, Inc. v. Reston Limousine & Travel Service, Inc., 2005 WL 1026985, *2 (Va. Cir. Ct. May 3, 2005) (enforcing agreement preventing former employer from "engag[ing] in the business of providing services the same as or similar to the services of Employer" ).

Similar agreements to those at issue in this case – including agreements with longer temporal restrictions than the 1- and 2-year restrictions on the defendants – have been enforced by Virginia courts.  See Blue Ridge Anesthesia and Critical Care, Inc. v. Gidick, 239 Va. 369, 373, 389 S.E.2d 467, 469 (1990) (enforcing 3-year noncompetition agreement that prohibited former employees from employment with another company in a position selling similar equipment to that sold by former employer); Roanoke Eng'g Sales Co. v. Rosenbaum, 223 Va. 548, 553, 290 S.E.2d 882, 885 (1982) (enforcing 3-year noncompetition agreement restricting the former employee from being involved in "any business similar to the type of business conducted by" the employer); Foti, 220 Va. at 805-07, 263 S.E.2d at 433-34 (upholding a restrictive covenant which required that a departing partner of an accounting firm compensate the firm for any firm client that he solicited within two years of his separation from the firm); Worrie v. Boze, 191 Va. 916, 926-27, 62 S.E.2d 876, 881(1951) (enforcing a two-year covenant which restricted defendant from soliciting any of his former employer's patrons or directly competing with his former employer within 25 miles of the employer's establishment); but see Nortec Communications, Inc. v. Lee-Llacer, 548 F. Supp. 2d 226 (2008) (declining to enforce 12-month noncompetition and nonsolicitation provisions).[4]

---

[4] In analyzing the noncompete and nonsolicit provisions, the court in Nortec Communications was not presented with a situation raising the same level of wrongful conduct as is present here. The employee in that case merely left Nortec to take an in-house position with one of Nortec's customers, The Peace Corps – a move expressly permitted under the Muldrow, Truong, and Varan Agreements.  The employee did not establish a business that competed directly with

Given that the agreements at issue do not restrict Deltek's former employees from working in the general field of computer software, consulting on software applications other than those created and licensed by Deltek, or making use of their management and business skills in ways that do not take advantage of their Deltek-specific training, the Court is likely to find the Deltek agreements enforceable.  Although the defendants undoubtedly will argue that their contracts should not be enforced, the facts at issue justify the protections Deltek has imposed.

As the Fourth Circuit recently recognized, "[e]ach of Virginia's tests for validity of a non-competition clause prompts a reasonableness inquiry" that considers the plaintiff's business needs, including the need to protect its trade secret and confidential information.  Decision Insights, Inc. v. Sentia Group, Inc., 2009 WL 367585, *11 (Feb. 12, 2009).  In Decision Insights, the Fourth Circuit reversed a decision denying enforcement of non-compete agreement when proper consideration of the facts at issue had not occurred, and remanded "so that the requisite balancing and analysis may be conducted by the trial court."  Id.  Here, a balancing of the parties' interests and analysis of Deltek's unique business supports Deltek's efforts to shield its business from harm by recently departed employees.

Even at this early stage of the litigation, Deltek already has substantial evidence that defendants Muldrow, Truong and Varan have breached numerous provisions of their agreements with Deltek.  The most obvious breach is their formation of and working for Iuvo, a company that provides consultation and maintenance services to organizations that have purchased Deltek software, in Chantilly, Virginia – less than 10 miles from Deltek's office in Herndon, Virginia.

---

Nortec while still working for Nortec, he did not use Nortec's confidential and trade secret information to solicit and perform work for Nortec's customers, nor did he advise customers that the service they were receiving from Nortec was inadequate and commonly provided to other customers for less money.  These wrongful acts by defendants Muldrow, Truong, and Varan make for a vastly different "balancing and analysis," as required by the Fourth Circuit.

Defendants also have breached the Agreement by soliciting customers of Deltek.  At least six customers have been solicited by Muldrow and Truong to use Iuvo's consulting services for implementation of Deltek software, rather than Deltek's consulting services.  Such conduct is precisely what the agreements were intended to prevent, and defendants ultimately will be liable to Deltek for any lost profits that Deltek has sustained as a result of their wrongful acts.

Deltek's likelihood of success on its breach of contract claims is enough, alone, to warrant this Court's granting of injunctive relief.

### 4.    Tortious Interference With Contract

Under Virginia law, a plaintiff may establish a claim for tortious interference with a contract by showing (1) the existence of a valid contractual relationship; (2) knowledge of the contractual relationship on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the contractual relationship; and (4) resultant damage to the party whose contractual relationship has been disrupted.  Duggin v. Adams, 234 Va. 221, 226, 360 S.E.2d 832, 835 (1987) (quoting Chaves v. Johnson, 230 Va. 112, 120, 335 S.E.2d 97, 102 (1985)); see also Southprint, Inc. v. H3, Inc., 2006 WL 3522458, *3 (4th Cir. Dec. 7, 2006) (quoting Duggin, 234 Va. at 226, 360 S.E.2d at 835).

In this case, each of the defendants has interfered with the contracts between other defendants and Deltek.  Based on the timing of events of which Deltek is already aware – Varan's commencement of employment with Iuvo while Truong and Muldrow were still Deltek employees, Truong's registration of the iuvosystems.com website while still employed by Deltek, and Muldrow's assumption of the position of President at Iuvo within days of resigning from Deltek – it is apparent that the defendants were soliciting and encouraging each other to compete against Deltek, and violate contractual obligations to Deltek, both during and after their

18

respective employments with Deltek.  Each of the former employees had contracts with Deltek, and undoubtedly knew that the others did as well, yet they proceeded to form Iuvo, solicit Deltek customers and employees, and seek and use confidential information of Deltek, for the benefit of themselves and Iuvo, and in blatant disregard of contractual obligations owed to Deltek.  Accordingly, Deltek is likely to succeed on its claims for tortious interference with contract.

> **5.    Tortious Interference With Business Relations and Business Expectancy**

The elements of wrongful interference with prospective business relations or economic advantage are (1) the existence of a business relationship or expectancy, with a probability of future economic benefit to plaintiff; (2) defendant's knowledge of the relationship or expectancy; (3) a reasonable certainty that absent defendant's intentional misconduct, plaintiff would have continued in the relationship or realized the expectancy; and (4) damage to plaintiff.  American Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 228 (4th Cir. 2004) (citing Commercial Bus. Sys., Inc. v. Halifax Corp., 253 Va. 292, 300, 484 S.E.2d 892, 896 (1997)).

In this case, Muldrow, Truong, and Varan and other Iuvo employees are surreptitiously gaining confidential information from a John Doe (also named as a defendant) regarding business deals of Deltek that are recently completed or in the final stages.  On behalf of Iuvo, they are contacting Deltek's customers, and potential customers who are engaged in negotiations with Deltek, to offer consulting services on Deltek software at a lower price than that charged by Deltek.  There can be no question that the defendants are misappropriating Deltek's confidential information to achieve such interference, as there is no public way for them to learn the identities of customers with which Deltek is negotiating or the particular software applications purchased by each customer.  Despite the private nature of this information, on at least one occasion, Muldrow e-mailed a prospective customer to offer consulting services on a particular type of

software that had only been ordered from Deltek by that customer two weeks earlier. In addition, as recently as March 25, 2009, an Iuvo employee contacted a Deltek customer to offer consulting services for the implementation of Deltek software, having learned of the customer's purchase of Deltek software through improper means. See Ex. 1. These actions by the defendants constitute wrongful interference with Deltek's business expectancies. Again, Deltek's likelihood of success on this claim supports a grant of preliminary injunctive relief.

### 6.    Breach of Fiduciary Duty

Virginia courts have "long recognized that under the common law an employee, including an employee-at-will, owes a fiduciary duty of loyalty to his employer during his employment." Williams v. Dominion Technology Partners, L.L.C., 265 Va. 280, 289, 576 S.E.2d 752, 757 (2003) (citation omitted). This "general duty of loyalty" includes "the more specific duty that the employee not compete with his employer during his employment." Id. (citation omitted). And, while "in the absence of a contract restriction regarding this duty of loyalty, an employee has the right to make arrangements during his employment to compete with his employer after resigning his post . . . [that] right in such circumstances is not absolute." Id. Instead, "[t]his right, based on a policy of free competition, must be balanced with the importance of the integrity and fairness attaching to the relationship between employer and employee," and "[u]nder certain circumstances, the exercise of the right may constitute a breach of fiduciary duty." Id. (citation omitted).

As this Court has long held, "[a]n employee is a fiduciary with respect to the information which comes to him in the course of his employment. He must exercise good faith, loyalty and honesty towards his employer whether coupled with an interest or not, and whether the compensation is small or large . . . ." Avtec Systems, Inc. v. Peiffer, 805 F.Supp. 1312, 1321

(E.D. Va. 1992), aff'd in part, vacated in part, 21 F.3d 568 (4th Cir. 1994) (quoting Bull v. Logetronics, 323 F.Supp. 115, 133 (E.D. Va. 1971)). And, the duty of loyalty does not cease upon termination of the employment relationship. Indeed, "even after termination of an agency or employment relationship, the agent has a duty to the principal not to use or to disclose to third persons, on his own account or on account of others, in competition with the principal or to his injury, trade secrets, written lists of names, or other similar confidential matters given to him only for the principal's use." Wells Fargo Home Mortgage v. Devereaux, 2006 WL 3791376, *3 (E.D. Va. 2006) (citation omitted); see also Avtec Systems, Inc., 805 F. Supp. at 1321 ("It is well established that an employee violates his duty of loyalty, fidelity and responsibility to his employer by using confidential information to the detriment of his employer and to the advantage of a competitive firm.") (citation omitted).

In this case, Truong and Muldrow remained high-level employees of Deltek until they left on March 31, 2008 and August 18, 2008, respectively. Truong's title was "Consulting Manager" and Muldrow's title was "Managing Director." Despite their management roles, these two began setting up their competing business long before they left Deltek's employ. At some point in early 2008, Truong formed Iuvo; on February 1, 2008, Truong created and registered the iuvosystems.com website; in March 2008 Iuvo hired Varan; and, Muldrow became Iuvo's President immediately upon resigning from Deltek in August 2008. By working together to form a competitive business – one designed specifically to undercut the prices of their then-current employer by misusing confidential information regarding Deltek's software licensing deals, and with a website that intentionally infringes upon the trademarks of their then-current employer – Truong and Muldrow exceeded the legal and ethical bounds on their conduct, and committed a breach of their fiduciary duties to Deltek. See Williams, 265 Va. at 291, 576 S.E.2d at 758

("certain conduct by an employee during the term of his employment will clearly constitute a breach of the duty of loyalty he owes to his employer . . . an employee must not have 'misappropriated trade secrets, misused confidential information, [or] solicited an employer's clients or other employees prior to termination of employment.'") (citation omitted).

Moreover, Truong and Muldrow undoubtedly used confidential and proprietary information of Deltek to embark upon their competing business venture, and they continue to use such information today, to aid in soliciting Deltek customers. Indeed, how else could Muldrow and Truong, on behalf of Iuvo, call and e-mail Deltek's customers across the U.S. as soon as Deltek makes a software sale to those clients or while deals are still in the midst of negotiations? This conduct is unacceptable under Virginia law.

Truong's, Muldrow's, and Varan's competitive actions while employed by Deltek and thereafter constitute a clear breach of their fiduciary duties to Deltek, and warrant an order of injunctive relief. See Bull, 323 F. Supp. at 133 (Under the duty of loyalty, "[e]ven where [a] contract of employment does not prohibit an employee from engaging in competitive businesses after the termination of his employment, there is a restraint that he may not use 'confidential information or trade secrets obtained from the former employer, appropriating, in effect, to his competitive advantage what rightfully belongs to his employer.'") (quoting Community Counselling Service v. Reilly, 317 F.2d 239, 244 (4th Cir. 1963)).

### 7.    Fraud

Under Virginia law, fraud is committed where (1) the defendant made a false representation; (2) of a material fact; (3) intentionally and knowingly; (4) with intent to mislead; (5) the plaintiff relied on the misrepresentation; and (6) the plaintiff suffered compensable injury resulting from the misrepresentation. Arnlund v. Smith, 210 F.Supp.2d 755 (E.D. Va. 2002).

In this case, Truong and Muldrow misrepresented numerous facts to Deltek while they were employed, causing Deltek to retain them as employees, and to entrust them with responsibility for supervising key employees and handling major customer accounts, to Deltek's eventual detriment. For instance, Truong and Muldrow misrepresented their loyalty to Deltek, as a Consulting Manager and Managing Director, respectively, when in fact they were actively competing with Deltek while still employed as high-level Deltek insiders. Muldrow and Truong misrepresented their relationships with each other, holding themselves out as working together on Deltek's behalf when in fact they were collaborating to form a competing entity and leave Deltek. Unfortunately, Deltek suspects that it likely will learn of additional misrepresentations throughout the discovery process, but the evidence gathered thus far is sufficient to justify preliminary injunctive relief.

### 8.    Statutory Civil Conspiracy

A claim for statutory civil conspiracy under Virginia law must allege "(1) two or more persons combined, associated, agreed, or mutually undertook together to (2) willfully and maliciously injure another in his reputation, trade, business, or profession." T.G. Slater & Son, Inc. v. The Donald P. and Patricia A. Brennan LLC, 385 F.3d 836, 845 (4th Cir. 2004) (citing Va. Code Ann. §§ 18.2-499 and 500; Michigan Mut. Ins. Co. v. Smoot, 128 F. Supp. 2d 917, 924-25 (E.D. Va. 2000)). An act is "willful and malicious" under Virginia's conspiracy statutes if it was undertaken to "injure the plaintiff intentionally, purposefully and without legal justification." Phoenix Renovation Corp. v. Rodriguez, 461 F.Supp. 2d 411, 428 (E.D. Va. 2006) (quoting Simmons v. Miller, 261 Va. 561, 544 S.E.2d 666, 667 (2001)). And, only one party to the alleged conspiracy need act with the requisite malice in order for the conduct to

violate Virginia law. See Virginia Vermiculite, Ltd. v. W.R. Grace & Co. - - Conn., 144 F.Supp. 2d 558 (W.D.Va. 2001), aff'd on other grounds, 307 F.3d 277, cert. denied, 538 U.S. 998.

Defendants Muldrow, Truong and Varan acted together while some or all of them were still working for Deltek to form Iuvo; violated the agreements they entered into with Deltek; misappropriated trade secrets and confidential information belonging to Deltek; and competed unfairly against Deltek. Further, Iuvo, Muldrow, Truong, and Varan have worked together with a John Doe, a unknown Deltek employee who is also named as a defendant in this case, to continue to obtain up-to-date and real-time Deltek confidential, proprietary and trade secret information regarding Deltek's sales of its software to its clients, in order to solicit those Deltek clients, undercut the prices offered by Deltek, and unfairly compete with Deltek. These are clear violations of the Virginia Business Conspiracy Act. See CaterCorp, Inc. v. Catering Concepts, Inc., 246 Va. 22, 431 S.E.2d 277 (1993) (allegations that defendants conspired to aid and abet breaches of a non-competition agreement stated claims for common law and civil conspiracy).

### 9.    Common Law Civil Conspiracy

"A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish some criminal or unlawful purpose, or to accomplish some purpose, not in itself criminal or unlawful, by criminal or unlawful means." Arnlund, 210 F. Supp. 2d at 770. The Virginia Supreme Court specifically recognizes a cause of action for conspiracy to induce the breach of a contract. Bay Tobacco, LLC v. Bell Quality Tobacco Products, LLC, 263 F. Supp. 2d 483, 500 (E.D. Va. 2003) (citing Worrie v. Boze, 198 Va. 533, 537, 95 S.E.2d 192 (1956)).

As described in the complaint, defendants Iuvo, Muldrow, Truong, Varan, and Doe are acting together to violate the agreements entered into by Muldrow, Truong, and Varan with Deltek; misappropriate trade secrets and confidential information belonging to Deltek; and

compete unfairly against Deltek.  Defendants already have established a business that is directly competing with Deltek and solicited at least six customers of Deltek in direct contravention of their contractual obligations to Deltek.  As a result of their conduct, defendants are liable for civil conspiracy.  Again, it is likely that Deltek will succeed on the merits of its claim at trial.  See CaterCorp, Inc., 246 Va. 22, 431 S.E.2d 277.

### 10.    Defamation

Under Virginia law, it is defamation *per se* to make false statements that prejudice a person in his profession or trade.  Bay Tobacco, 263 F.Supp. 2d at 501.  A corporation may be defamed *per se* by statements that "cast aspersion on its honesty, credit, efficiency or its prestige or standing in its field of business."  Id.  If a plaintiff establishes a claim for defamation *per se*, Virginia law presumes that the plaintiff suffered actual damage to its reputation and, therefore, the complainant does not have to present proof of such damages.  Id.

After his departure from Deltek, Truong attended the Deltek Insight 2008 Conference – a conference hosted annually by Deltek for its customers and partners to collaborate and exchange insights on industry issues and the best practices for winning, planning and managing projects that drive outstanding business results.  While at the Insight Conference, during the evening of May 19, 2008, Truong was heard soliciting a number of Deltek customers and making disparaging remarks about Deltek to those customers.  Truong made a number of comments regarding the consulting services group he had formerly managed at Deltek, and said things such as "they don't know what they're doing" and "they don't know how to deploy Deltek software."  Truong then offered his Iuvo business card to the Deltek customers and made additional disparaging statements regarding Deltek, such as "I wouldn't use [Deltek].  If you want it done right, use my company."  Such statements constitute defamation *per se*, and therefore Deltek is

likely to prevail at trial on its defamation claim, providing yet another basis for awarding preliminary injunctive relief to Deltek.

### 11.    Conversion

"A person is liable for conversion for the wrongful exercise or assumption of authority over another's goods, depriving the owner of their possession, or any act of dominion wrongfully exerted over property in denial of, or inconsistent with, the owner's rights." Simmons v. Miller, 261 Va. 561, 582, 544 S.E.2d 666, 679 (2001) (finding ample evidence of conversion where plaintiff alleged that defendant deprived the corporation of the use and value of certain property, including customer lists); see also Economopoulos v. Kolaitis, 259 Va. 806, 814, 528 S.E.2d 714, 719 (2000) (conversion is "the wrongful assumption or exercise of the right of ownership over goods or chattels belonging to another in denial of or inconsistent with the owner's rights.")

As established above, defendants have begun soliciting Deltek's customers, and presumably are engaging in such solicitation through the use of Deltek's customer lists and other documents and information relating to Deltek's service of its customers, such as pricing plans, and descriptions of service provided to each client in the past. To the extent defendants are in possession of such materials belonging to Deltek, defendants are liable for conversion.

### 12.    Violation of the Virginia Uniform Trade Secrets Act

By engaging in the conduct described herein and in the Verified Complaint, Muldrow, Truong and Varan have misappropriated Deltek's trade secrets and confidential information, without the consent of Deltek, to the detriment of Deltek, and for Muldrow's, Truong's, Varan's, and Iuvo's own commercial advantage, in violation of the Virginia Uniform Trade Secrets Act. Va. Code § 59.1-336 *et seq.* As the Virginia Supreme Court has recognized, it is unlawful for a former employee to misappropriate confidential information about a former employer's "growth

rate, yearly sales totals, past projects, target price points for customers, profit margin, vendor lists, key accounts and suppliers, marketing plans and strategies, production costs, commissions, trade secrets, and intellectual property," to establish a competing business and divert customers to that business.  Banks v. Mario Indus. of Virginia, 274 Va. 438, 650 S.E.2d 687 (2007).  And, it is clear that a company's customer information constitutes a trade secret, the misappropriation of which is unlawful.  See Nat'l Legal Research Group, Inc. v. Lathan, 1993 WL 169789, *7-8 (W.D. Va. 1993), aff'd mem., 42 F.3d 1386 (4th Cir. 1994) (company's client-history printouts which included the entire billing and payment history for its clients constituted a trade secret).

Not only are Iuvo, Muldrow, Truong and Varan wrongfully using Deltek's customer contact information, but also, they are profiting from their use of confidential, non-public methods and techniques for maximizing the use of Deltek's proprietary software, which are shared only with authorized Deltek personnel, and which defendants learned only in the course of their employment by Deltek.  All of this information is economically valuable, see Eden Hannon & Co. v. Sumitomo Trust & Banking Co., 914 F.2d 556, 561 (4th Cir. 1990) ("Often, the value of a firm is its special knowledge," and, if firms cannot protect that knowledge, "the incentive to engage in the building of such knowledge will be greatly reduced."), and has been unlawfully misappropriated by defendants, see Nat'l Legal Research Group, Inc., 1993 WL 169789, *8 (former salesperson unlawfully misappropriated company's client history information when he used it to divert clients to a competing business he had established).  Thus, Deltek is likely to prevail on its claim for damages under the Virginia Uniform Trade Secrets Act, providing further justification for a grant of injunctive relief at this stage.

### 13.    Unjust Enrichment

Where a defendant possesses money which, in justice and fairness, he ought to refund, the law presumes that he has promised to do so. Robinson v. Robinson, 137 Va. 378, 381 (1923) (citing 2 Greenleaf on Evidence, 15th ed., Sec. 102). Thus, Deltek has brought a claim against defendants for unjust enrichment, as the undisputed facts demonstrate that: (1) Deltek had "a pre-existing right to the money" paid to Iuvo by customers of Deltek, and (2) "Defendant[s] should not justly retain the money." See Liebau v. Seven Oaks Limited Partnership, 1991 WL 834960, *1 (Va. Cir. Ct. 1991) (citing In Re Wilson, 90 B.R. 208 at 211 (Bankr. E.D. Va. 1988)).

As explained above, defendants have obtained, and maintained, the business of several clients of Deltek through unfair competition. Thus, defendants have been unjustly enriched, and Deltek's likelihood of prevailing on this claim provides additional reason to grant the preliminary injunctive relief that Deltek seeks.

### C.    Granting the Requested Injunctive Relief Would Serve the Public Interest.

In addition to its likelihood of prevailing on the claims asserted in this lawsuit, Deltek also satisfies the last element of the test for granting preliminary injunctive relief – granting the requested injunctive relief would serve the public interest. Because of the likelihood of confusion with respect to the trademarks, the public will benefit from an injunction prohibiting Iuvo from using the Deltek trademarks as a means to usurp and profit from Deltek's reputation and goodwill. Further, there is a strong public interest in fair dealing and the solemnity of contracts. By seeking the defendants' compliance with bargained-for terms of the agreements they entered with Deltek, this suit promotes the public interest in enforcement of contractual obligations. As this Court has recognized, "[p]reventing consumers from being confused serves the public interest . . . as does preventing trademarks from being used deceptively . . . protecting the interests of

trademark owners . . . and enforcing valid contracts . . . ." Toolchex, Inc. v. Trainor, 2008 WL
2323232 (E.D. Va. June 2, 2008) (granting motion for preliminary injunction) (citations omitted).

## II.    DELTEK SHOULD NOT BE REQUIRED TO POST A BOND.

Although the decision of whether to require a bond is strictly circumscribed by Federal
Rule of Civil Procedure 65(c), courts in the Fourth Circuit, including this Court, consistently
recognize that the computation of the bond amount is soundly within the court's discretion. See,
e.g., Hoechst Diafoil Co. v. Nan Ya Plastics Corp., 174 F.3d 411, 421 & n.3 (4th Cir. 1999);
R.M.S. Titanic, Inc., 9 F. Supp. 2d 624, 641 (E.D. Va. 1998), aff'd in part, rev'd in part on other
grounds, 171 F.3d 943 (4th Cir. 1999); Wilson v. Office of Civilian Heath and Med. Program of
Uniformed Serv., 866 F. Supp. 903, 910 (E.D. Va. 1994).  Depending on the circumstances, this
amount might be as little as zero dollars.  See Titanic, 9 F. Supp. 2d at 6421 (requiring bond of
zero dollars).  Alternatively, this amount might be merely nominal.  See Candle Factory, Inc. v.
Trade Associates Group, Ltd., 2001 WL 1523349 at *5 (4th Cir. Nov. 30, 2001) (unpublished
opinion) (affirming nominal bond of $500); Hoechst Diafoil, 174 F.3d at 421 & n.3 ("nominal
bond may suffice") (citing International Controls Corp. v. Vesco, 490 F.2d 1334, 1356 (2d Cir.
1974)) (approving bond of zero dollars); Arkansas Best Corp. v. Carolina Freight Corp., 60 F.
Supp.2d 517, 520-21 (W.D.N.C. 1999) (requiring bond of only $100); Warner v. Ryobi Motor
Products Corp., 818 F. Supp. 907, 909 (D.S.C. 1992) (requiring bond of only $250).

In the absence of an agreement regarding the posting of a bond, the circumstances that
courts consider in computing the bond amount include the applicant's likelihood of success on
the merits, the speculative and minimal nature of the damages to the opposing party, and the
urgency of the action.  See Titanic, 9 F. Supp. 2d at 641 (considering speculative and minimal
nature of damages to opposing party and applicant's strong likelihood of success); Wilson, 866
F. Supp. at 910 (considering, inter alia, strong likelihood of success and urgency of action);

Hoechst Diafoil, 174 F.3d at 421 & n.3 (stating that nominal bond may suffice where risk of harm is remote or circumstances otherwise warrant it); Arkansas Best, 60 F. Supp.2d at 521 (considering, *inter alia*, strong likelihood of success ); Warner, 818 F. Supp. at 909 (considering, *inter alia*, strong likelihood of success and urgency of action).

In this case, the circumstances weigh against requiring Deltek to post a bond. The likelihood of Deltek's success on the underlying claims is strong, the need for injunctive relief is urgent, and the imposition of an injunction will limit defendants only from offering and providing support and consulting services with respect to Deltek software – they will not be broadly restricted in their ability to earn a living. A bond is unnecessary under these circumstances.

## CONCLUSION

For all the foregoing reasons, this Court should issue a preliminary injunction, and no bond should be required.

Respectfully submitted,


_____/s/_____
Charles B. Wayne (VSB # 24954)
Elisha A. King
Jamie M. Konn (VSB # 73113)
DLA Piper LLP (US)
500 Eighth Street NW
Washington, D.C. 20004
(202) 799-4000
(202) 799-5000 [fax]
charles.wayne@dlapiper.com
elisha.king@dlapiper.com
jamie.konn@dlapiper.com

*Counsel for Plaintiff Deltek, Inc.*


Dated: March 27, 2009

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 27th day of March, 2009, a true and correct copy of the foregoing

Plaintiff's Memorandum in Support of Motion for Preliminary Injunction was served by hand

on:

> William F. Krebs
> Michael R. Abejuela
> Bean, Kinney & Korman, P.C.
> 2300 Wilson Boulevard, 7th Floor
> Arlington, Virginia 22201
>
> *Attorney for Iuvo Systems, Inc., Edward Muldrow,*
> *and Tom Truong*

And mailed via first-class mail, postage pre-paid to:

> Lynn Varan
> 26258 Ocala Circle
> South Riding, Virginia 20152

_____/s/_____
Jamie M. Konn