**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

| | |
|---|---|
| DELTEK, INC. | |
| Plaintiff | Civil No. 1:09 cv 330 (AJT/JFA) |
| v. | |
| IUVO SYSTEMS, INC., et al., | |
| Defendants. | |

## DEFENDANTS' BRIEF IN SUPPORT OF THEIR OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

William F. Krebs, Esquire
Virginia Bar No. 17347
Christopher A. Glaser, Esquire
Virginia Bar No. 43491
Attorney for Defendants Iuvo Systems, Inc.,
    Edward Muldrow, Tom Truong, and
    Lynn Varan
BEAN, KINNEY & KORMAN, P.C.
2300 Wilson Blvd., Seventh Floor
Arlington, VA 22201
Phone:  703-525-4000
Fax:     703-525-2207

# TABLE OF CONTENTS

TABLE OF AUTHORITIES                                                    Iv

INTRODUCTION                                                           1

STATEMENT OF FACTS                                                    2

   I.  Employment history of Muldrow, Truong and Varan                 2

   II.  Creation of Iuvo Systems, Inc.                                   5

   III. Source of Potential Client Referrals                             5

ARGUMENT                                                               7

   I.  Plaintiff is Not Entitled to a Preliminary Injunction              7

      A.  The Standard for Preliminary Injunction                       7
      B.  Deltek Cannot Establish Irreparable Harm                      7
      C.  The Hardship to Defendants Were this Court to Issue an        9
          Injunction Would Greatly Outweigh the Harm to Plaintiff
          Should the Injunction Not Issue
      D.  Plaintiff Cannot Establish a Likelihood of Success on the     12
          Merits
         1.  The Covenants Not to Compete are facially invalid and   14
            are Unenforceable as a Matter of Law
            a.  The Covenant is Unenforceable as it Improperly    15
                Permits "Blue-Penciling"
            b.  Each Agreement is Ambiguous and, thus,            15
                Unenforceable
            c.  The Covenants are Broader Than Necessary to       17
                Protect Any Legitimate Business Interests of
                Deltek
         2.  Plaintiff Fails to State a Claim of a Trademark         20
            Violation and Unfair Competition (Count I, II, III)
         3.  Plaintiff Fails to State a Claim of a Lanham Act        24
            Violation (Count III)
         4.  Deltek Fails to State a Claim of Tortuous Interference  26
            with Business Relations and Business Expectancy
            (Count IX)
         5.  Plaintiff Fails to State a Claim of Misappropriation of  28
            Trade Secrets (Count XVI)

CONCLUSION                                                            29

# TABLE OF AUTHORITIES

## Cases

*American Hosp. Supply Corp. v. Hospital Prods., Ltd.*,
  780 F.2d 589 (7th Cir. 1986) ..................................................................................... 8

*Associated General Contractors of California, Inc. v. California State Council of Carpenters*,
  459 U.S. 519 (1983)............................................................................................... 13

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 554 (2007)........................................................... 12, 13, 24, 26, 28

*Better Living Components, Inc. v. Coleman*,
  67 Va. Cir. 221 (Albemarle, 2005) ........................................................................ 15

*Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg. Co.*,
  550 F.2d 189 (4th Cir. 1977) .............................................................................. 7, 8

*Carefirst of Maryland, Inc. v. First Care, P.C. et al.*,
  434 F.3d at 267 (4th Cir. 2006)............................................................................ 20

*Chaves v. Johnson*,
  230 Va. 112 (1985) ............................................................................................... 26

*Dan River, Inc. v. Icahn*,
  701 F.2d 278 (4th Cir. 1983) ................................................................................. 8

*Dayton Progress Corporation v. Lane Punch Corporation*,
  917 F.2d 836 (4th Cir. 1990) .......................................................................... 20, 21

*Dionne v. Southeast Foam Converting & Packaging, Inc.*,
  240 Va. 297 (Va. 1990).......................................................................................... 28

*Direx Israel, Ltd. v. Breakthrough Medical Corp.*,
  952 F.2d 802 (4th Cir. 1992) .......................................................................... 8, 20

*Duggin v. Adams*,
  234 Va. 221 (1987) ............................................................................................... 26

*Federal Leasing, Inc. v. Underwriters at Lloyd's*,
  650 F.2d 495 (4th Cir. 1981) .................................................................................. 7

*Hughes Network Sys. v. Interdigital Communications Corp.*,
  17 F.3d 691 (4th Cir. 1994) ................................................................................ 7, 8

*H. Jay Spiegel & Associates, P.C. v. Steven M. Spiegel*
  2008 U.S. Dist. LEXIS 100558 (E.D.Va. 2008)............................................... 11, 20

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
  543 U.S. 111 (2004)............................................................................................... 23

*Lanmark Technology, Inc. v. Canales*,
  454 F. Supp. 2d 524 (E.D.Va. 2006) ........................................................ 16, 17, 19

*Limestone Development v. Village of Lemont, Ill.*,
  520 F.3d 797 (7th Cir., 2008) (Posner, J.) ........................................................... 13

*See Lone Star Steakhouse & Saloon Inc. et al. v. Alpha of Va., Inc.*,
  43 F.3d 922, 930 (4th Cir. 1995) .......................................................................... 22

*Market America v. Optihealth Products, Inc. et al*,
  2008 U.S. Dist. LEXIS 95337 (U.S. Dist. Ct. M.D. N.C. November 21, 2008...... 22

*Microstrategy, Inc. v. Li*,
  268 Va. 249 (2004) ............................................................................................... 28

*MicroStrategy, Inc. v. Motorola, Inc.*,
  245 F.3d 335 (4th Cir. 2001) ........................................................................ 8
*Modern Environments, Inc. v. Stinnett*,
  263 Va. 491, 495-96 (2002) ........................................................................ 17
*Motion Control Systems, Inc. v. East*,
  262 Va. 33, 38 (2001) ................................................................................. 17
*New Kids on the Block v. New America Publishing, Inc.*,
  971 F.2d 302 (9th Cir. 1991) ...................................................................... 21
*Nortec Communications, Inc. v. Carl Lee-Llacer*,
  548 F. Supp. 2d 226 (E.D.Va. 2008) ........................................ 16, 17, 18, 19, 27
*Northern Virginia Psychiatric Group, P.C. v. Halpern*,
  19 Va. Cir. 279 (Fairfax, 1990) .................................................................. 15
*Parker v. Learn The Skills Corp.*,
  530 F.Supp.2d 661 (D.Del. 2008) ............................................................... 25
*Physicians Interactive v. Lathian Systems, Inc.*,
  2003 U.S. Dist. LEXIS 22868 (2003), (J. Brinkema) ................................... 7, 8
*Power Distribution, Inc. v. Emergency Power Engineering, Inc.*,
  569 F. Supp. 54 (E.D.Va. 1983) .................................................................. 17
*Roto-Die Co. v. Lesser*,
  899 F. Supp. 1515 (E.D.Va 1995) ........................................................... 15, 17
*Rum Creek Coal Sales, Inc. v. Caperton*,
  926 F.2d 353, 359 (4th Cir. 1991) .............................................................. 20
*Sampson v. Murray*,
  415 U.S. 61 (1974) ..................................................................................... 8
*Shakespeare Company v. Silstar Corporation of America, Incorporated*,
  110 F.3d 234 (4th Cir. 1997) .................................................................. 23, 24
*Simmons v. Miller*,
  261 Va. 561 (2001) .................................................................................... 17
*Sunsport, Inc. v. Barclay Leisure, Ltd.*,
  984 F. Supp. 418 (E.D.Va. 1997) ............................................................... 21
*Tao of Systems Integration, Inc. v. Analytical Services & Materials, Inc.*,
  299 F.Supp.2d 565 (E.D.Va 2004) ............................................................. 25
*Wigand v. Costech Technologies, Inc.*,
  2008 U.S.Dist. LEXIS 743 (E.D.Va. 2008) ................................................. 27

## Statutes

15 U.S.C. §1114, ....................................................................................... 20
15 U.S.C. §1115(b) .................................................................... 10, 19, 21, 23
15 U.S.C. §1125(a) ..................................................................................... 25
Va. Code § 59.1-336 .................................................................................... 28
Va. Code § 59.1-337 .................................................................................... 28
Va. Code § 59.1-338 .................................................................................... 28

## Rules

Fed. R. Civ. P. 12(b)(6) ..................................................................... 12, 25, 27

**Treatises**

5 C. Wright & A. Miller, Federal Practice and Procedure § 1216 (3d ed.) ................................. 13

COME NOW Defendants Iuvo Systems, Inc. ("Iuvo"), Edward Muldrow ("Muldrow"), Tom Truong ("Truong") and Lynn Varan ("Varan") and oppose the Motion for Preliminary Injunction filed on behalf of plaintiff Deltek, Inc. ("Deltek"). Despite the more than six (6) months since the last individual defendant departed from Deltek, an apparently lengthy investigation by Deltek, and the existence of a declaratory judgment action pending in Fairfax Circuit Court, Deltek has unilaterally set April 3, 2009—on a one-week notice—for the hearing of this matter without any attempt to meet and confer pursuant to Local Rule 7(E), thereby abrogating defendants briefing period pursuant to Local Rule 7(F).

## INTRODUCTION

Deltek, Inc. ("Deltek") overpleads and overreaches in its seventeen (17) count complaint in an effort to stifle the fair competition they now face following the resignation of Muldrow and Truong on the heels of a restructuring of Deltek. Having repeatedly informed Muldrow and Truong that "life is about change," while forcing Truong and, later, Muldrow to leave Deltek's employment, Deltek now seeks to suppress the very change it invited, to wit the defendants' efforts to provide quality consulting service at a lower cost to, *inter alia,* purchasers of Deltek's financial software. Nearly all of the one hundred ninety-seven (197) paragraphs of allegations stem from, essentially, two predicates: that the individual defendants breached non-competition agreements and that Iuvo unfairly used certain Deltek trademarks. However, those non-competition agreements are, for various reasons, unenforceable and Iuvo refers to the challenged logos not as an indicator of source, but to fairly and accurately describe its services. Presented with increasing competition in what was once a market dominated by Deltek, Deltek has turned to kitchen-sink litigation to intimidate defendants from lawfully competing with it.

In order to allege defendants engaged in some wrongdoing outside of the specious breach

of non-competition agreement and trademark infringement claims, Deltek has alleged in its Complaint, upon "information and belief" but without any actual factual basis, that defendants must have gained competitive information from an unnamed co-conspirator it identifies as "John Doe." More accurately, Deltek's own clients sought out relationships with other companies, such as Iuvo, which provide quality services at more competitive prices. Plaintiffs' allegations of a John Doe co-conspirator are simply unfounded; with the true relationship between Iuvo and Deltek's former, current and prospective customers both lawful and much less intriguing.

### STATEMENT OF FACTS

**1.    Employment history of Muldrow, Truong and Varan**

Prior to a recent massive reorganization within Deltek Systems, Muldrow, Truong and Varan were each employed by Deltek Systems. (Truong Affidavit, Exhibit 1, ¶ 5; Muldrow Affidavit, Exhibit 2, ¶ 5.) Muldrow, Truong and Varan were each employed in different capacities, with different specialties and for different periods of time. (Muldrow Affidavit, ¶¶ 2, 4; Truong Affidavit, ¶¶ 2, 4; Varan Affidavit, ¶¶ 2, 4.)

Muldrow began his employment with Deltek June 9, 1997. (Muldrow Affidavit, ¶ 2.) During his employment, Muldrow rose to the position of Managing Director. (Muldrow Affidavit, ¶ 3.) During the reorganization, Muldrow was provided with a "choice" of accepting a demotion to a substantially lower position or terminating his employment. (Muldrow Affidavit, ¶ 6.) In fact, Muldrow was frequently encouraged by his direct supervisor to resign from Deltek   Muldrow's employment with Deltek ended on August 18, 2008. (Muldrow Affidavit, ¶ 8.)

Truong's employment with Deltek began on November 16, 1998. (Truong Affidavit, ¶ 2.) During his employment, Truong rose to the level of Managing Technical Consultant.

(Truong Affidavit, ¶ 3.) During the reorganization, Truong was provided with a "choice." He could remain in his present position to train his new supervisor without the likelihood of future advancement or immediately terminate his employment. (Truong Affidavit, ¶ 6.) Truong terminated his employment with Deltek on March 31, 2008. (Truong Affidavit, ¶ 8.)

Varan began her employment with Deltek on January 2, 2007. (Varan Affidavit, <u>Exhibit 3</u>, ¶ 2.) Contrary to Muldrow and Truong, Varan held neither a managerial position nor a technical position. (Varan Affidavit, ¶¶ 5, 6.) Varan held the position of Services Coordinator and her responsibilities were, in essence, limited to scheduling consultants and dispatching them to Deltek client sites. (Varan Affidavit, ¶ 4.)

Prior to beginning their respective employment with Deltek, Muldrow and Truong each executed a Confidential Information and Noncompetition Agreement[1] (the "Muldrow/Truong Covenant") and Varan executed an Employee Agreement (the "Varan Covenant"). Both the Muldrow/Truong Covenant and the Varan Covenant were entered into with what was Deltek Systems, not Deltek; provide for unlimited blue penciling by any court; and provide for a complete prohibition of employment, in any capacity, with an undefined competitor of Deltek.

The Muldrow/Truong Covenant provides, in relevant part,

4.    <u>Noncompetition</u>. During the period of his or her employment by the Company and for a period of two (2) years after the termination of such employment for any reason, Employee shall not directly or indirectly, be engaged as an employee or consultant of any firm or corporation engaged in a business which is in competition with the Company or any of its subsidiaries, as the foregoing terms may be reasonably construed.

Employee also agrees that during this period he or she shall not provide consulting services to any Deltek customer other than as an employee of Deltek Systems, Inc. Nothing in this agreement shall prohibit employee from becoming

---

[1] The Confidential Information and Noncompetition Agreements executed by Muldrow and Truong are identical in all relevant aspects. For ease of reference, these two separate documents will be treated as a single document, the Muldrow/Truong Covenant.

a full-time employee of a Deltek Customer after termination from Deltek Systems, Inc., provided that such customer is not in competition with Deltek Systems, Inc., as defined in the above paragraph.

* * *

6.    <u>Miscellaneous</u>. …If any provision of this Agreement shall be determined to be invalid or unenforceable by any court, the validity and enforceability of the other provisions of this Agreement shall not be affected thereby, and the provisions found invalid or otherwise unenforceable may be appropriately amended by that course [sic] so as to be valid and enforceable.

In apparent recognition by Deltek Systems of potential enforcement difficulties with the Muldrow/Truong Covenant, Deltek Systems re-wrote that document with respect to new hires. Deltek Systems' efforts are reflected in the Varan Covenant. The Varan Covenant purports to prohibit Varan from engaging in Competitive Activity defined as,

"<u>Competitive Activity</u>" shall mean, directly or indirectly, (i) owning, managing, operating, joining, controlling, being employed by, or participating in the ownership, management, operation or control of, or being connected in any manner with, including, without limitation, holding any position as a shareholder, director, officer, consultant, independent contractor, employee or partner of, spokesman for, or investor in, any Competitor, or …

"<u>Competitor</u>" shall mean any Person [including any corporate entity] that is engaged in (or intends or proposes to engage in, or has been organized for the purpose of engaging in) a Competing Business in the Company's Market Area.

Moreover, the Varan Covenant contains a broad blue-penciling provision which, effectively, permits the wholesale rewriting of the agreement. The relevant section provides,

3.5 <u>Severability</u>. … In addition, should a court or arbitrator determine that any provision or portion of any provision of this Agreement is not reasonable or valid, either in period of time, geographical area, or otherwise, the parties hereto agree that such provision should be interpreted and enforced to the maximum extent which such court or arbitrator deems reasonable or valid.

Varan voluntarily terminated her employment with Deltek in February, 2008.

During their respective terms of employment with Deltek, Muldrow, Truong and Varan did not misrepresent their loyalty to Deltek and were not collaborating to form a

4

competing entity and leave Deltek. (Muldrow Affidavit, ¶¶ 9, 11; Truong Affidavit, ¶¶ 9, 11; Varan Affidavit, ¶ 9.)

### 2. Creation of Iuvo Systems, Inc.

Truong incorporated Iuvo Systems, Inc. ("Iuvo") in Virginia effective February 5, 2008. (Truong Affidavit, ¶ 12.) Prior to March 31, 2008, Iuvo did not conduct any business. (Truong Affidavit, ¶ 13.) Truong incorporated Iuvo to reserve the name and to prepare for a future business. At no time during his employment with Deltek did Truong engage in any business through Iuvo. (Truong Affidavit, ¶ 14.)

Truong registered the domain name "iuvosystems.com" on February 1, 2008. (Truong Affidavit, ¶ 16.) No active website or content of any nature was posted on the "iuvosystems.com" domain name prior to March 31, 2008. (Truong Affidavit, ¶ 18.) Truong registered the domain name "iuvosystems.com" to reserve the name and to prepare for a future business. (Truong Affidavit, ¶ 17.) At no time during his employment with Deltek did Truong engage in any business through the "iuvosystems.com" domain name.

Truong registered the domain names "installdeltek.com" and "installdeltek.net" on May, 14, 2007. (Truong Affidavit, ¶ 19.) "installdeltek.com" and "installdeltek.net" have no content and were registered merely to reserve the potential for future usage. (Truong Affidavit, ¶¶ 20, 21.)

Neither Muldrow nor Varan had any knowledge of or played any role in Truong's formation of Iuvo or the registration of its web domains. (Muldrow Affidavit, ¶ 9-11; Varan Affidavit, ¶ 9, 14.)

### 3.    Source of Potential Client Referrals

Iuvo  provides government contractors, engineering and construction firms, and financial businesses consulting services in connection with their existing or intended database driven applications and core IT software, which frequently includes Deltek products.  (Iuvo Affidavit, <u>Exhibit 4</u>, ¶¶ 4, 5.)  Iuvo has obtained client referrals through pre-existing relationships with non-Deltek individuals and from unsolicited contacts from potential clients.  (Iuvo Affidavit, ¶ 18.)  Contrary to Deltek's bare "upon information and belief" assertions, neither Iuvo, Muldrow, Truong nor Varan have received any confidential or proprietary information from a source within Deltek.  (Iuvo Affidavit, ¶ 12; Muldrow Affidavit, ¶ 14; Truong Affidavit, ¶ 24; Varan Affidavit, ¶ 15.)  The alleged existence of the so-called "John Doe" co-conspirator Deltek employee is without basis.

For example, Alliant Techsystems, Inc. ("ATK") is a client for whom Iuvo has performed work.  (Iuvo Affidavit, ¶ 14.)  Although Deltek alleges that Muldrow and Iuvo are relying on confidential, proprietary and trade secret information of Deltek in order to provide services to ATK, Muldrow and Iuvo were solicited directly by Amelia Ruzzo[2], Vice President of IT, (Iuvo Affidavit, ¶ 15.)  (Muldrow Affidavit, ¶ 17.) and were requested to perform services for ATK (Iuvo Affidavit, ¶ 16.) (Muldrow Affidavit, ¶ 18.).  Iuvo is providing ATK with its services without reliance on any confidential, proprietary or trade secret information of Deltek.  Similarly, each of Iuvo's actual and prospective clients identified by Deltek in its Verified Complaint—Engineered Electric Company (Complaint, ¶ 61), Education and Training Resources (Complaint, ¶ 70), SeaAlaska (Complaint, ¶ 74), Eagle Systems (Complaint, ¶ 75), and TerraHealth (Complaint, ¶

---

[2] Ms. Ruzzo is scheduled to be one of the keynote address speakers at the "Insight" May 2009 event in Orlando, Florida which is a Deltek users conference hosted by Deltek.

78)—are all clients or are prospects that have either contacted Iuvo without solicitation or were referred to Iuvo by contacts outside of Deltek. (Iuvo Affidavit, ¶ 18.) (Muldrow Affidavit, ¶ 20.) (Truong Affidavit, ¶ 26.)

Beyond the mere allegation by Deltek of the existence of a so-called "John Doe" co-conspirator Deltek employee, Deltek has no basis and provided no facts—as, indeed, it cannot—to support its assertion. Rather than acknowledge the fact that Deltek customers may have affirmatively sought an alternative to Deltek's offer for consulting services, Deltek has conjured from whole cloth the existence of "John Doe".

## ARGUMENT

## I.    PLAINTIFF IS NOT ENTITLED TO A PRELIMINARY INJUNCTION

### A.    The Standard for Preliminary Injunctions.

The entry of a preliminary injunction is governed by the four-part *Blackwelder* test: (1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied; (2) the likelihood of harm to the defendant if the requested relief is granted; (3) the likelihood that the plaintiff will succeed on the merits; and (4) the public interest. *Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg. Co.*, 550 F.2d 189, 195-96 (4th Cir. 1977). The plaintiff bears the burden of establishing each of the Blackwelder factors. *Physicians Interactive v. Lathian Systems, Inc.*, 2003 U.S. Dist. LEXIS 22868, *9 (2003), (J. Brinkema).

"[A] preliminary injunction is an extraordinary remedy, to be granted only if the moving party clearly establishes entitlement to the relief sought." *Hughes Network Sys. v. Interdigital Communications Corp.*, 17 F.3d 691, 693 (4th Cir. 1994), citing, *Federal Leasing, Inc. v. Underwriters at Lloyd's*, 650 F.2d 495, 499 (4th Cir. 1981). Indeed, granting a preliminary injunction requires that a district court, acting on an incomplete record, order a party to act, or

refrain from acting, in a certain way. "The danger of a mistake in this setting is substantial." *Hughes Network Sys.*, 17 F.3d at 693, quoting, *American Hosp. Supply Corp. v. Hospital Prods., Ltd.*, 780 F.2d 589, 593 (7th Cir. 1986).

The degree of "harm to both parties is the most important consideration." *Physicians Interactive*, 2003 U.S. Dist. LEXIS 22868, at *9; *Direx Israel, Ltd. v. Breakthrough Medical Corp.*, 952 F.2d 802, 812 (4th Cir. 1992). A plaintiff seeking preliminary injunctive relief must make a clear showing that irreparable harm would result if relief is denied. *Direx Israel*, 952 F.2d at 812. In addition, to qualify as irreparable harm, the injury must be actual and imminent as opposed to remote or speculative. *Dan River, Inc. v. Icahn*, 701 F.2d 278, 283 (4th Cir. 1983)

If "the plight of the defendant [is] not substantially different from that of the plaintiffs, that is, if there is no imbalance of hardship in favor of the plaintiff, then the probability of success begins to assume real significance, and interim relief is more likely to require a clear showing of a likelihood of success." *MicroStrategy*, 245 F.3d 335, 339 (4th Cir. 2001), *quoting Blackwelder*, 550 F.2d at 195 n.3.

### B.    Deltek Cannot Establish Irreparable Harm

Courts "have insisted that the harm necessary to justify issuance of a preliminary injunction be irreparable" and where money damages could fully compensate a successful plaintiff, "courts generally have refused to find that harm irreparable." *Hughes Network Sys. v. Interdigital Communications Corp.*, 17 F.3d at 693. The Supreme Court has stated:

> The key word in this consideration is *irreparable*. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

*Hughes Network Sys.*, 17 F.3d at 693, citing, *Sampson v. Murray*, 415 U.S. 61, 90, 39 L. Ed. 2d

166, 94 S. Ct. 937 (1974).

Deltek's Complaint purports to arise from the competition it now faces from Iuvo and Iuvo's ability to attract potential Deltek customers through more competitive pricing of its services. Such actions by Iuvo, if wrongful, can easily be remedied by money damages. Indeed, even if Deltek can show entitlement to some relief, a doubtful proposition, much of Deltek's Complaint and Memorandum in Support of Motion for Preliminary Injunction demonstrate Deltek's entitlement to, at most, compensatory damages but not injunctive relief.[3] For example, Deltek alleges that "defendants ultimately will be liable to Deltek for any lost profits that Deltek has sustained," (Memorandum, p. 18) and that a primary complaint against Iuvo is that its actions are "designed specifically to undercut the prices" of Deltek. (Memorandum, p. 21.)

Deltek alleges nothing in its Complaint which raises the potential for irreparable harm. Deltek's action is predicated on Iuvo competing for a small number of customers against Deltek and, presumably, such customers represent a given income stream which could be distilled down to monetary damages in the event that Deltek is ultimately successful on the merits. As Deltek is unable to establish irreparable harm, a preliminary injunction should not be granted.

---

[3] Deltek requests in its Motion for Preliminary Injunction an order restraining defendants from using the Deltek Trademarks and requiring Muldrow, Truong and Varan to adhere to the terms of their respective non-competition agreements.[3] Conspicuously absent from Deltek's Motion for Preliminary Injunction is any request for relief regarding any of the damages-based counts of Deltek's Complaint (i.e. Breach of Fiduciary Duty (Count X), Fraud (Count XI), Statutory Civil Conspiracy (Count XII), Common Law Civil Conspiracy (Count XIII), Defamation (Count XIV), Conversion (Count XV), Virginia Uniform Trade Secrets Act (Count XVI), and Unjust Enrichment (Count XVII)). Nevertheless, Deltek does not provide a proposed Order to apprise either this Court or the defendants of the true nature of relief sought and Deltek's Memorandum proceeds through each of its seventeen (17) counts and raises arguments as though it had moved for a preliminary injunction as to each. For the purposes of this Memorandum, defendants believe they must only oppose those counts which are raised in the Motion.

### C.    The Hardship to Defendants Were this Court to Issue an Injunction Would Greatly Outweigh the Harm to Plaintiff Should the Injunction Not Issue.

The issuance of an injunction would carry with it a substantial likelihood of significant harm to Iuvo.  Deltek has requested that the "www.iuvosystems.com" website be changed to remove the phrases "Deltek Upgrade," "We Provide Deltek Solutions," and "Technology Consultants With Deltek Experience" as well as the "puzzle pieces" associated with the word "Deltek."  However, Iuvo is engaging in a fair use of the Deltek Trademarks and, as such, its actions are protected and Iuvo is not subject to liability.  Iuvo's use of the Deltek Trademarks is not to serve as a source of origin of Iuvo's services, but rather the use serves as a descriptive adjective identifying Iuvo's services.  In fact, Iuvo, throughout the "www.iuvosystems.com" website, makes it clear that Iuvo is neither Deltek nor even affiliated with Deltek.  Specifically, Exhibit D of Plaintiff's Verified Complaint—a screen copied from www.iuvosystems.com— provides,

> Deltek, Deltek Time & Expense, Deltek Vision, Deltek GCS Premier and Deltek Costpoint are registered trademarks of Deltek, Inc.  All other names are trademarks or registered trademarks of their respective companies.  Iuvo Systems is not affiliated or endorsed by Deltek, Inc.

As a valid competitor in the market place, Iuvo has the right to make a fair use of Deltek's marks to describe its services.  *See 15 U.S.C. §1115(b).*

If the requested injunction were to issue, part of the Order would require that Iuvo be precluded from doing that which it is lawfully entitled to do: using the "Deltek" descriptor fairly and in good faith.  Deltek appears to recognize, as it must, the validity of Iuvo's ability to use registered marks fairly.  In this regard, Deltek avers that Iuvo could continue advertising its experience relating to "Microsoft SQL Server, Oracle Database, Microsoft Windows 2003 Terminal Server, and Citrix Presentation Server."  (Memorandum, p. 7)  Without question, if

Iuvo could make fair use of Microsoft's and Oracle's trademarks to describe the unrelated services performed by Iuvo, it could likewise make fair use of Deltek's trademarks to describe the unrelated services performed by Iuvo.

The harm that Iuvo would suffer would be substantial as it would not be able to adequately describe its services to its clients. There is no alternative description that would be as effective in communicating to clients the fact that Iuvo provides consulting services in connection with various Deltek software. Precluding Iuvo from using the "Deltek" descriptor would essentially preclude Iuvo from continuing to properly describe its services fairly and in good faith to its clients. Further, the additional requested relief in the preliminary injunction that Iuvo cease providing services in connection with Deltek software would create substantial harm to Iuvo in that it would no longer be able to provide its services to current and future clients. In fact, such an order would require that Iuvo fail to fulfill its obligations to current clients.

On the other hand, the harm that Deltek may potentially suffer should an injunction not issue is minimal at best. With the vast number of Deltek clients, Deltek seeks to prove irreparable harm by referencing only six (6) clients who have been made aware of, and who have independently sought after, Iuvo's services. Assuming for the sake of argument that Deltek is able to demonstrate some level of irreparable injury, the balancing of the harms still supports the position that the requested preliminary injunction should not be granted. This Court recently stated in *H. Jay Spiegel & Associates, P.C. v. Steven M. Spiegel* that

> a showing of irreparable injury does not end the inquiry and does not automatically fulfill the *Blackwelder* balance of harms test in favor of Plaintiff. It is possible, after all, that the harm to a plaintiff without a preliminary injunction may be irreparable but of a miniscule amount. After a plaintiff makes a showing of irreparable injury, the court must still weigh the amount of likely harm to the plaintiff against the amount of harm likely to befall the defendant if the injunction issues.

*H. Jay Spiegel & Associates, P.C. v. Steven M. Spiegel* 2008 U.S. Dist. LEXIS 100558, *7 (E.D.Va. 2008).

Deltek does not allege that any of its clients have mistaken Iuvo for Deltek, or have believed that Iuvo is Deltek. On the contrary, the referenced clients have focused on concerns that a third party is aware of the conversations between Deltek and the client, not that the client was confused as to the origin of services offered by Iuvo. (See, Memorandum of Deltek, Exhibit A, "I thought it most interesting that they knew about our pending acquisition since we have not discussed same outside of Deltek.")

The hardship to Iuvo that would result from the granting of the requested preliminary injunction far outweighs the hardship to Deltek in the absence of granting the requested preliminary injunction. Let there be no mistake, Deltek seeks to obtain a preliminary injunction that would, in effect, put the defendants out of business prior to trial, discovery, or any determination on the merits. Such an injunction would inflict an irreparable injury on defendants. As such, a preliminary injunction should not issue.

### D.    Plaintiff Cannot Establish a Likelihood of Success on the Merits.

Plaintiff is unlikely to succeed on the merits as, indeed, Plaintiff is unlikely to prevail at the forthcoming Motion to Dismiss for failure to state a claim upon which relief may be granted. While more properly directed towards the forthcoming Motion to Dismiss, it is apparent that Deltek's failure to adhere to the more stringent pleading requirements set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 127 S.Ct. 1955 (2007) render the Complaint fatally flawed and compel a determination that Deltek cannot establish a likelihood of success on the merits.

Under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 127 S.Ct. 1955 (2007), to withstand a Rule 12(b)(6) motion, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do." *Bell Atlantic*, 550 U.S. at 555, 127 S.Ct. at 1964-5 (internal quotations omitted.). "Factual allegations must be enough to raise a right of relief above the speculative level." *Bell Atlantic*, 550 U.S. at 555, 127 S.Ct. at 1965. A properly pled complaint "must contain something more than a statement of facts that merely creates a suspicion of a legally cognizable right of action." *Bell Atlantic*, 550 U.S. at 555, 127 S.Ct. at 1965, <u>citing</u>, 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp 235-236 (3d ed.).

The Seventh Circuit, in applying *Bell Atlantic*, has noted that a defendant should not be forced to undergo costly discovery unless the complaint contains enough detail, factual or argumentative, to indicate that the plaintiff has a substantial case. *Limestone Development v. Village of Lemont, Ill.,* 520 F.3d 797, 802-3 (7th Cir., 2008) (Posner, J.). Given the ever-increasing costs of discovery, a "district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Bell Atlantic*, 127 S.Ct. at 1967, *citing, Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 528 (1983); *Limestone Development*, 520 F.3d at 803-4 ("If discovery is likely to be more than usually costly, the complaint must include as much factual detail and argument as may be required to show that the plaintiff has a plausible claim.").

The Deltek Complaint likewise alleges mere legal conclusions without sufficient allegations to plausibly suggest any wrongdoing sufficient to show that Deltek is entitled to any relief. In the present matter, the Complaint frequently fails to rise even to the now-retired *Conley* standard to notify the defendants of the true nature of the claims alleged by Deltek. As to each of Deltek's seventeen (17) counts, Deltek either builds assertion upon the poor foundation of unenforceable non-competition covenants or merely repleads the same nebulous facts and

restates the hornbook elements of each count in a merely conclusory fashion. Since Deltek submits no new affidavits or declarations in support of its Motion for Preliminary Injunction, other than one vague email, the entire factual underpinnings for the Motion are the allegations in the "Verified Complaint." Yet, much of, if not the vast bulk of, the complaint is pleaded on "information and belief." Somehow, the vague assertions of information and belief in the complaint became unqualified declarative assertions of fact in the preliminary injunction papers. In the complaint, Deltek presupposes that "John Doe" must exist because of some circumstantial—and incorrect—conclusions, yet, in the instant motion John Doe's existence is pled as a foregone conclusion warranting drastic emergency injunctive relief. Much of the instant motion simply assumes the things which plaintiff will be required to prove. For example, Deltek asserts in its Memorandum, without any factual basis, that defendants "underhanded tactics have included … using an unknown insider at Deltek to obtain real-time confidential information about Deltek's business operations and software financing deals," but asserts in its Complaint that "Upon information and belief, an unknown individual within Deltek's operations, listed in this action as John Doe, has been and continues to actively assist [defendants] in competition with Deltek." (Memorandum in Support, p. 8; Complaint, ¶ 82, see also Complaint, ¶¶ 71, 76.) However, Deltek fails to allege a sufficient factual predicate to constitute, let alone, rise above the mere suspicion of a cognizable right of action.

1.    **The Covenants Not to Compete are Facially Invalid and are Unenforceable as a Matter of Law**

The principal thrust of Deltek's seventeen (17) count Complaint is that the purported actions Muldrow, Truong and Varan are prohibited by covenants not to compete. Indeed, Deltek echoes statements such as "Deltek's likelihood of success on its breach of contract claims is enough, alone, to warrant this Court's granting of injunctive relief." However, the covenants are

unenforceable as a matter of law. [4]

> **a.      The Covenant is Unenforceable as it Improperly Permits "Blue-Penciling"**

A "saving clause in an employment contract which allows the court to narrow the effect of a restrictive covenant is against public policy. In addition to questions about interference with contracts, restraint of trade, and other legal arguments, does the judiciary want to become the employer's scrivener?" *Northern Virginia Psychiatric Group, P.C. v. Halpern*, 19 Va. Cir. 279, 282 (Fairfax, 1990); *Better Living Components, Inc. v. Coleman*, 67 Va. Cir. 221, 222-223 (Albemarle, 2005) (Refusing enforcement of savings clause permitting judicial "blue-penciling.")  There "is a distinction between severing, where a covenant is excised entirely from the agreement, and 'blue penciling,' where the court rewrites invalid language to make it fit within the bounds of the law," and that Virginia courts "will not "blue pencil" a contract to make it enforceable." *Better Living*, 67 Va. Cir. at 227.

Here, the Muldrow/Truong Agreement and the Varan Agreement each purports to permit the courts to rewrite the parties' agreement to fit.  The existence of a blue-pencil provision in the contract, in and of itself, causes an insurmountable ambiguity: what is the term of the agreement and what does it prohibit?  As the Muldrow/Truong Covenant and the Varan Covenant fail to apprise Muldrow, Truong or Varan of what they can, and cannot do, the agreement fails.

> **b.      Each Agreement is Ambiguous and, thus, Unenforceable**

While one possible reading of a covenant not to compete may be valid, the covenant itself becomes unenforceable where the language is susceptible to multiple interpretations.  *Roto-Die*

---

[4] As a consequence of the unenforceability of the Muldrow/Truong Covenant and the Varan Covenant, Count VIII (Tortious Interference with Contract) must likewise fail as the sole contracts alleged to be interfered with are the unenforceable Muldrow/Truong Covenant and the Varan Covenant.  (See, Complaint, ¶ 146-154.)

*Co. v. Lesser*, 899 F. Supp. 1515, 1521 (E.D.Va 1995) (While a particular interpretation is possible, "the very fact that the mental gymnastics required to reach it had to be performed indicates why it must fail.")

The failure of a non-compete covenant to define ambiguous terms renders such covenant ambiguous and, thus, unenforceable as a matter of law. *Nortec Communications, Inc. v. Carl Lee-Llacer*, 548 F. Supp. 2d 226, 230 (E.D.Va. 2008); *Lanmark Technology, Inc. v. Canales*, 454 F. Supp. 2d 524, 530-31 (E.D.Va. 2006) (Ambiguity declared in non-compete which failed to define "competitor", "business opportunity", "services", "similar" services, "perform", and "pursuing.") Where terms such as "competitor" are undefined, the covenant becomes "capable of more than one reasonable construction," and may "be construed to prohibit much more" than is permissible rendering such covenant unenforceable.

In the present matter, the Muldrow/Truong Covenant required Muldrow and Truong to refrain from employment or consultation with a "corporation engaged in a business which is in competition with" Deltek Services without either defining "in competition with" or even describing the services provided by Deltek Services in a manner which would apprise Muldrow and Truong of what conduct is, and is not, prohibited.

Similarly, the Varan Covenant is ambiguous. It attempts to prohibit Varan from "being connected in any manner with" any entity which "intends" to "develop[], implement[], market[], and/or sell" any product that competes with any "project-based business management and/or sales management software." Nowhere in the agreement is the intent to develop defined nor is a definition provided for "project-based business management and/or sales management software" defined. Given the broad term "business management," such limitation could conceivably

prohibit Varan from "being connected" with any corporation involved in a "business."[5]  Quite

plainly, such an expansive definition renders the scope of the agreement as indefinable and

ambiguous, and, thus, unenforceable.

> **c.    The Covenants are Broader Than Necessary to Protect Any Legitimate Business Interests of Deltek**

Covenants not to compete are strictly construed against the employer.  *Simmons v. Miller*,

261 Va. 561, 581 (2001).  The "mere act" of subjecting an employee to an ambiguous covenant

not to compete "offends sound public policy."  *Power Distribution, Inc. v. Emergency Power

Engineering, Inc.*, 569 F. Supp. 54, 58 (E.D.Va. 1983).

Covenants not to compete which prohibit employees from working in any capacity with a

competitor—not just in a competing role—are greater than necessary to protect legitimate

business interests.  *Modern Environments, Inc. v. Stinnett*, 263 Va. 491, 495-96 (2002); *Motion

Control Systems, Inc. v. East*, 262 Va. 33, 38 (2001); *Roto-Die*, 899 F. Supp. at 1520; *Nortec*,

548 F. Supp.2d at 230; *Lanmark*, 454 F. Supp.2d at 529-30.  Where a covenant "could be read to

prohibit any type of employment, even employment outside the scope of the work" done for the

prior employer, the covenant is unenforceable.  *Roto-Die*, 899 F. Supp. at 1520 (Holding

covenant unenforceable as it would prevent employee "from working in any capacity, including

that of a janitor, for a 'Competitive Business.'").

In *Motion Control*, the Virginia Supreme Court struck down a provision prohibiting the

employee from becoming employed by a competitor of the original employer where the

definition of competitor is sufficiently overbroad that would include companies that did not have

competing products.  *Motion Control*, 262 Va. at 36, 38.  In *Lanmark* and *Nortec*, the covenants

---

[5]  Moreover, the covenants appear to define "competitor" as both existing as of the time of
departure and future competitors, thus rendering it impossible for the employee to have
knowledge of that which would cause a violation.

at issue contained language similar to those of the contracts at bar. Each of them prohibited employees from becoming associated in any manner with companies that compete with the employer where the employees might have contact with the original employers' customers, regardless of whether that contact involved anything in which the employee did for the original employer. *Lanmark*, 454 F.Supp.2d at 526; *Nortec*, 548 F.Supp.2d at 230.

> In *Lanmark,* this Court echoed the rationale of *Motion Control* and held,
>
> Put simply, the clause prohibits a former employee from *any* form of employment with a competitor, including work *unrelated* to the employee's work at Lanmark. In this respect, the non-compete clause far exceeds Lanmark's legitimate interest in protecting itself from employees that use "business sensitive knowledge and contacts they acquired" at Lanmark.

*Lanmark*, 454 F.Supp.2d at 530 (Emphasis in original internal citations omitted.) (Noting that this clause would bar the employee from working with a competitor to help win a library science services contract from a customer even though the employee was never involved in library sciences services; had no sensitive business knowledge regarding such services; and did not acquire any such contracts while with the original employer).

Similarly, the *Nortec* Court found that the covenant sought to prohibit the employee "from working for an existing customer or client of Nortec to the extent that the employment relates to products or services offered by" the employer. *Nortec*, 548 F.Supp.2d at 230. In striking down the covenant, the Court held that there "is no regard for whether his employment with a current Nortec client in any way relates to his prior employment with Nortec and involves the use of any skills or knowledge acquired by [the employee] in his former position. Nowhere in the agreement does Nortec define what constitutes a 'product or service offered'. Additionally, it does not require that the employment be related to a product or service offered by Nortec *to that client*." *Nortec*, 548 F.Supp.2d at 230 (emphasis in original).

18

The Muldrow/Truong Covenant and the Varan Covenant are fatally flawed as each is broader than necessary to protect any legitimate business interest of Deltek.  Given the over-breadth of each agreement, they are unenforceable.

The Muldrow/Truong Covenant purports to limit Muldrow and Truong from becoming "engaged as an employee or consultant of any firm or corporation engaged in a business which is in competition with the Company" as well as from "provid[ing] consulting services to any Deltek customer" without regard to whether or not Muldrow's and Truong's prospective employment "in any way relates to his prior employment with [Deltek] and involves the use of any skills or knowledge acquired by [Deltek] in his former position." *Nortec*, 548 F.Supp.2d at 230. Similarly, the Varan Covenant bars Varan from "being connected in any manner with" any entity which "intends" to "develop[], implement[], market[], and/or sell" any product that competes with any "project-based business management and/or sales management software" without regard to whether or not Varan's prospective employment "in any way relates to his prior employment with [Deltek] and involves the use of any skills or knowledge acquired by [Deltek] in his former position." *Nortec*, 548 F.Supp.2d at 230.[6]

Absent from both the Muldrow/Truong Covenant and the Varan Covenant is any requirement that either former employee have knowledge of the competitive nature of the prospective employer with the undefined services of Deltek Systems.  Nowhere in the Muldrow/Truong Covenant or the Varan Covenant is any limitation on their respective rights to work limited to that information gained through their employment at Deltek Systems.

In short, the focus of both agreements is the business of the prospective employer and not the skills or knowledge of Muldrow, Truong or Varan.  The covenants effectively prohibit these

---

[6] The Varan Covenant further bars Varan from owning even a single share of stock in any unidentified competitor including entities such as Microsoft or Oracle.

former employees from *any* form of employment with a competitor, including work *unrelated* to their work at Deltek Systems. Pursuant to *Lanmark*, such a prohibition is unenforceable.

>    **2.    Plaintiff Fails to State a Claim of a Trademark Violation and Unfair Competition (Count I, II, III)**

"To demonstrate trademark infringement under the Lanham Act, a plaintiff must prove, first, that it owns a valid and protectable mark, and, second, that the defendant's use of a 'reproduction, counterfeit, copy, or colorable imitation' of that mark creates a likelihood of confusion." *Carefirst of Maryland, Inc. v. First Care, P.C., et al.*, 434 F.3d 263, 267 (4th Cir. 2006), *citing*, 15 U.S.C. § 1114(1)(a). Defendants acknowledge for the purposes of this present Opposition that Deltek owns protectable rights in the Deltek Trademarks. Accordingly, the test is whether plaintiff has used a "reproduction, counterfeit, copy, or colorable imitation" of those marks that creates a likelihood of confusion. *CareFirst*, 434 F.3d at 267. The burden is on plaintiff to show that any confusion stems specifically from the use of those marks, and not just from the fact that they are both selling the same services.

Because "the hardship to plaintiff is minimal or non-existent—as it certainly is in this case—then the burden on the plaintiff to establish likelihood of success on the merits becomes considerably greater." *Direx Israel, Ltd. V. Breakthrough Medical Corp.*, 952.F.2d 802, 817 (4th Cir. 1991), *see also Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 359 (4th Cir. 1991). "Unless Plaintiff can make a strong showing of a likelihood of success on the merits, the preliminary injunction must be denied." *H. Jay Spiegel & Associates* at *13.

Iuvo's fair use of the Deltek Trademarks is a defense to a claim of infringement under 15 U.S.C. §1115(b) which states in pertinent part that a defense to infringement is

>    That the use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark,...of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or

their geographic origin.

*15 U.S.C. §1115(b)(4), See Dayton Progress Corporation v. Lane Punch Corporation*, 917 F.2d

836, 840 (4th Cir. 1990), *see also*, *Sunsport, Inc. v. Barclay Leisure, Ltd*., 984 F. Supp. 418, 421

(E.D.Va. 1997).  "To establish fair use a defendant must show that it used the mark 1) fairly and

in good faith, 2) only to describe goods and services, and 3) not as a trademark.  *Sunsport Inc.*,

984 F. Supp. at 421.

      Iuvo is making use of the Deltek Trademarks in good faith and in a descriptive fashion.

The attachment of the Deltek Trademarks as a descriptor of services accurately describes the

services offered by Iuvo and falls under the defense "where the mark is used only to describe the

goods or services of [a] party." *Id*, *citing*, *New Kids on the Block v. New America Publishing,*

*Inc.*, 971 F.2d 302 (9th Cir. 1991).  There is no intent on Iuvo's part to use the Deltek Trademarks

as a source identifier or to confuse consumers.  The clear identification on Iuvo's website

www.iuvosystems.com that the Deltek Trademarks are owned by Deltek and that Iuvo is neither

affiliated or endorsed by Deltek supports this proposition.  As a valid competitor in the market

place, Iuvo has the right to make a fair use of Deltek's marks to describe its services.  *See 15*

*U.S.C. §1115(b)*.

      If the requested injunction were to issue, Iuvo would be precluded from doing that which

it is lawfully entitled to do: using the "Deltek" descriptor fairly and in good faith.  Deltek appears

to recognize, as it must, the validity of Iuvo's ability to use registered marks fairly.   In this

regard, Deltek avers that Iuvo could continue advertising its experience relating to "Microsoft

SQL Server, Oracle Database, Microsoft Windows 2003 Terminal Server, and Citrix

Presentation Server."  (Memorandum, p. 7)  Without question, if Iuvo could make fair use of

Microsoft's and Oracle's trademarks to describe the unrelated services performed by Iuvo, it

could likewise make fair use of Deltek's trademarks to describe the unrelated services performed by Iuvo.

In order to show trademark infringement and unfair competition under the Lanham Act and unfair competition under Virginia common law, Deltek must demonstrate the following:

    (1)     evidence of ownership of a valid and protectable mark;
    (2)     evidence of the use of the mark by an infringer; and
    (3)     evidence of a likelihood of confusion.

*See Lone Star Steakhouse & Saloon Inc. et al. v. Alpha of Va., Inc.* 43 F.3d 922, 930 (4th Cir. 1995). For the purposes of this present Opposition, defendants admit that Deltek owns a valid and protectable mark and that Iuvo has used that mark fairly. Nevertheless, Deltek is unable to succeed on the merits as it will not be able to demonstrate a likelihood of confusion.

Deltek references the seven factors used to determine whether there exists a likelihood of confusion between two marks.[7] *See Lone Star*, 43 F.3d at 933. Further, Deltek suggests that

---

[7]     Deltek alleges the existence of the Deltek Trademarks within the metatags of the "iuvosystems.com" website. While the use of a mark in the metatags of a website has been held by courts to constitute a "use in commerce" under the Lanham Act as stated by Deltek, a claim of trademark infringement and unfair competition still requires that the use be "in a way that is likely to cause confusion among consumers." *See* 15 U.S.C. §1114, 1125(a); *see also Lone Star* 43 F.3d at 930. *See Market America v. Optihealth Products, Inc. et al* 2008 U.S. Dist. LEXIS 95337 *18-*19 (U.S. Dist. Ct. M.D. N.C. November 21, 2008)(use of metatags is a mere factor to be used in deciding whether there is a "likelihood of confusion" caused by the defendant's activity.). In this present matter it is doubtful that any confusion would arise solely through the usage of metatags given the disclaimer—such disclaimer being capable of visual observation as opposed to invisible metatags—which specifically states that Iuvo is "not affiliated or endorsed by Deltek."

Even assuming for the sake of argument that there possibly may be initial interest confusion merely by virtue of the use of "Deltek" in the metatags of Iuvo's website and the "iuvosystems.com" website appearing in certain search results as posited by Deltek, the highly sophisticated clients and consumers of both Deltek's and Iuvo's products and services would quickly understand the difference between Deltek and Iuvo and negate any actual confusion.

Further, the use of the term "Deltek" in the metatags of the "iuvosystems.com" website is a fair use under the Lanham Act. "Deltek" is not used as a source identifier in the metatags, but rather it serves a descriptive function that accurately describes Iuvo's offered services. Iuvo is making a good faith use of the "Deltek" descriptor, and Iuvo has no intent to cause confusion or

there is a presumption of a likelihood of confusion upon a showing that Iuvo copied Deltek's trademark. "A likelihood of confusion should not be inferred from proof that the actor intentionally copied the other's designation if the actor acted in good faith under circumstances that do not otherwise indicate an intent to cause confusion or to deceive." *Shakespeare Company v. Silstar Corporation of America, Incorporated* 110 F.3d 234, 239 (4th Cir. 1997) ("presumption arises only when the copier intends to exploit the good will created by an already registered trademark."). Deltek ignores the plain fact that Iuvo may lawfully make fair use of the Deltek Trademarks and Iuvo's disclaimer indicating that "Iuvo Systems is not affiliated or endorsed by Deltek, Inc." certainly demonstrates its use of the marks in good faith and in a fair manner.

Further, "[s]ince the burden of proving likelihood of confusion rests with the plaintiff, and the fair use defendant has no free-standing need to show confusion unlikely, it follows (contrary to the Court of Appeals's view) that some possibility of consumer confusion must be compatible with fair use, and so it is." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.* 543 U.S. 111 (2004). Notwithstanding the Supreme Court's determination in *KP Permanent Make-Up*, Deltek attempts to improperly shift its burden to prove a likelihood of confusion to Iuvo and states that Iuvo has the burden to show a lack of likelihood of confusion. The Supreme Court in *KP Permanent Make-Up* specifically addressed this issue and held that a party raising the statutory affirmative defense of fair use to a claim of trademark infringement, *15 U.S.C. §1115(b)(4)*, does not have a burden to negate any likelihood that the practice complained of will confuse consumers about the origin of the goods or services affected. *Id.*

Moreover, Deltek's reliance on *Shakespeare Company* for support of its position that in this case there should be a presumption of a likelihood of confusion is misplaced. The

---

deceive.

*Shakespeare Company* court stated that the plaintiff in that case was entitled to that presumption only if the defendant's intent is to free-ride on the plaintiff's goodwill. *See Shakespeare Company* at 241. Similarly in this case, there is no evidence of any intent—nor could there be any evidence of any intent—by Iuvo to free-ride on Deltek's goodwill. As stated above and evidenced by Deltek's own exhibits to its Verified Complaint, Iuvo has taken reasonable steps to make it clear that there is no affiliation or endorsement of Iuvo by Deltek. Further, Deltek is unable to support its bare assertion that Iuvo is attempting to free-ride on Deltek's goodwill. On the contrary, in Deltek's Verified Complaint, there are allegations that Iuvo has somehow defamed Deltek. It stretches credulity to asset both that Iuvo is somehow attempting to free-ride on Deltek's goodwill while at the same time attempting to tarnish that goodwill.

Even if Deltek is entitled to the presumption of a likelihood of confusion—which it is not—Iuvo can effectively rebut the presumption and provide this Court with a basis to find that there is no likelihood of confusion. As previously discussed herein, Iuvo's use of the Deltek Trademarks is to accurately describe its services of providing support to customers who need consulting services in connection with Deltek's software. The use by Iuvo of the Deltek Trademarks is not as a source identifier. Further, the sophistication of the consumers in this context is at a very high level. The individuals who must decide on the provider of consulting services in connection with their Deltek software are very sophisticated individuals who are familiar with Deltek and would quickly understand whether they were dealing with Deltek or another service provider. Deltek has provided no support that any Deltek customer has been actually confused as to the source of the services provided by Iuvo and has mistaken Iuvo for Deltek.

**3.      Plaintiff Fails to State a Claim of a Lanham Act Violation (Count II)**

The Lanham Act provides a civil cause of action against a person who misrepresents the "nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities" in "commercial advertising or promotion." 15 U.S.C. § 1125(a)(1)(B).

Deltek is unlikely to succeed on the merits as its Complaint fails to sufficiently allege "commercial advertising or promotion" as the Lanham Act has been interpreted.    For "representations to constitute 'commercial advertising or promotion' within the meaning of [15 U.S.C. § 1125(a)(1)(B)], they must be (1) commercial speech; (2) by a defendant who is in commercial competition with the plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services; and (4) disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." *Tao of Systems Integration, Inc. v. Analytical Services & Materials, Inc.*, 299 F.Supp.2d 565, 572 (E.D.Va 2004); *Parker v. Learn The Skills Corp.*, 530 F.Supp.2d 661, 679 (D.Del. 2008) (dismissing complaint pursuant to *Bell-Atlantic* standard for failure to allege non-opinion statements capable of being proven false). "Both the level of dissemination required to constitute commercial advertising or promotion and the size of the relevant purchasing public will vary from industry to industry and from case to case." *Tao*, 299 F.Supp.2d at 573 (declining to dismiss complaint pursuant to Rule 12(b)(6) and under the "no set of facts" *Conley* standard.)

Deltek fails to allege any facts, or even bare argument, regarding the fourth *Tao* element—dissemination sufficient to constitute advertising.[8]   Deltek simply asserts that IUVO placed metatags and references to Deltek Trademarks on the webpage www.iuvosystems.com.

---

[8] For the purposes of this analysis, the defendants concede the first three elements of *Tao*.

Deltek fails to aver any level of dissemination or even the size of the purported purchasing public.  Indeed, Deltek avers merely that the information was placed on the webpage but has failed to allege that any member of the purported purchasing public has been deceived or mislead regarding the "nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities"  As *Bell Atlantic* requires something more than a suspicion of a cause of action to survive a motion to dismiss, it is unlikely that Deltek will prevail on the forthcoming Motion to Dismiss.

### 4.    Deltek Fails to State a Claim of Tortuous Interference with Business Relations and Business Expectancy (Count IX)

Deltek baldly alleges that it had existing and prospective business relationships; that the defendants were aware of such relationships; and, that the defendants, apparently collectively, acted "in conscious disregard of Deltek's rights."  (Complaint, ¶ 157.)  However, for specific factual allegations, Deltek merely alleges the defendants "approached" Engineered Electric Company (Complaint, ¶ 61), Education and Training Resources (Complaint, ¶ 70), SeaAlaska (Complaint, ¶ 74), Eagle Systems (Complaint, ¶ 75), Alliant Techsystems, Inc. (Complaint, ¶ 77), and TerraHealth (Complaint, ¶ 78) and that some, but apparently not all, of those "approached" chose to become clients to Iuvo.  Deltek does not allege that any of these entities had existing contracts with Deltek which were not terminable at will.

"The requisite elements for a prima facie showing of a tortious interference with a contract that is not terminable at will are: (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damages to the party whose relationship or expectancy has been disrupted." *Duggin v. Adams*, 234 Va. 221, 226 (1987), *quoting*, *Chaves v.*

*Johnson*, 230 Va. 112, 120 (1985). However, "when a contract is terminable at will, a plaintiff, in order to present a prima facie case of tortious interference must allege and prove not only an intentional interference that caused the termination of the at-will contract, but also that the defendant employed 'improper methods.'" *Id.*

In applying the *Bell Atlantic* standard, this Court has dismissed a tortious interference complaint pursuant to Rule 12(b)(6) where such complaint simply mirrors the requisite statutory elements. *Wigand v. Costech Technologies, Inc.*, 2008 U.S.Dist. LEXIS 743, * 21 (E.D.Va. 2008). "Conspicuously absent [from plaintiff's Complaint] is any designation of the specific nature of those business opportunities." *Wigand*, 2008 U.S.Dist. LEXIS 743, * 21. This Court dismissed Wigand's complaint and concluded that Wigand's claims were merely "a patchwork quilt of legal conclusions that is insufficient to serve as a basis for relief under Virginia law." *Wigand*, 2008 U.S.Dist. LEXIS 743, * 22.

Likewise, this Court, again applying the *Bell Atlantic* standard, has held that a tortious interference plaintiff who alleged only that a former employee is "using confidential information in his current employment" and that such former employee "is using inside or confidential information to solicit [plaintiff's] employees," "failed to plead with the requisite particularity the use of improper means in the intentional tortious interference with an at-will contract." *Nortec*, 548 F.Supp.2d at 232.

Deltek similarly attempts to pass off a patchwork quilt of legal conclusions as its Complaint. Deltek fails to allege or identify: the nature of any business relationship of which Iuvo was aware; the method by which Iuvo jeopardized any such relationship; a description of how any such relationship was disrupted; or the damages—either the extent of the damages or the nature of the damages—suffered by Deltek as a result of the disruption. Deltek's failure to

allege any facts which would support any one of the elements of a tortuous interference claim—much less each element—causes its Complaint to fall well below the *Bell Atlantic* requirement that it demonstrate it has a plausible claim.  As it is likely that Deltek will not prevail at the forthcoming Motion to Dismiss, it is unlikely that Deltek will succeed on the merits and a preliminary injunction is unwarranted.

> ### 5.    Plaintiff Fails to State a Claim of Misappropriation of Trade Secrets (Count XVI)

Pursuant to the Virginia Uniform Trade Secrets Act, Va. Code § 59.1-336, et seq., misappropriation of a trade secret may be enjoined and/or the factual predicate for an action for damages.  Va. Code § 59.1-337; Va. Code § 59.1-338.  In this context, misappropriation is defined as "[a]cquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means," and "trade secret" is defined as information that "1.  Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper by means, other persons who can obtain economic value from its disclosure or use, and 2.  Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."  Va. Code § 59.1-336.

"Because one of the primary purposes of trade secret protection is to encourage innovation and development, the law will not be employed to restrict legitimate competition.  Therefore, 'the owner of a trade secret is not entitled to prevent others from using public information to replicate his product, nor may the owner prevent others from making similar products which are not derived from the trade secret.'"  *Microstrategy, Inc. v. Li*, 268 Va. 249, 262 (2004); *Dionne v. Southeast Foam Converting & Packaging, Inc.*, 240 Va. 297, 302 (Va. 1990) ("The crucial characteristic of a trade secret is secrecy rather than novelty.").

Deltek fails to allege sufficient facts pursuant to *Bell Atlantic* that the existence of large

entities such as Alliant Techsystems, Inc. (Complaint, ¶ 77), and TerraHealth (Complaint, ¶ 78) is a trade secret as defined by Va. Code § 59.1-336 or that would show the sufficiency of efforts to maintain the secrecy of either.   Indeed, Deltek merely mimics the statutory language and avers:

> 190.   As described above, Deltek has certain confidential and proprietary information that constitute its trade secrets.  At all relevant times, Deltek has taken reasonable and necessary measures to safeguard the secrecy and confidentiality of its trade secrets, which are valuable and lucrative assets of Deltek.

(Complaint, ¶ 190.)

Once more, Deltek's conclusory statements merely mimic the statutory language of Va. Code § 59.1-336.   Deltek alleges no facts regarding the status of any "confidential and proprietary information" as being trade secrets or that Deltek has maintained the secrecy of such items.  Deltek fails to allege any means by which it protected its purported secrets.  Deltek fails to allege that the information purportedly misappropriated constitutes a secret which is not readily ascertainable by proper means by another.   Most telling, Deltek fails to describe its customer list in any manner: is it simply a telephone-book listing of potential government contractors with fifty (50) or more employees or can it be recreated through an educated Google search?  Deltek's recitation of the statutory elements, and nothing more, fails to demonstrate that Deltek has a substantial case.

## CONCLUSION

On the basis of the foregoing, Defendants Iuvo Systems, Inc., Edward Muldrow, Tom Truong and Lynn Varan respectfully request that this Court deny Deltek, Inc.'s Motion for Preliminary Injunction and grant it any further relief deemed just and proper.

Respectfully submitted,

/s/ *Christopher A. Glaser*

William F. Krebs, Esquire
Virginia Bar No. 17347
Christopher A. Glaser, Esquire
Virginia Bar No. 43491
Attorney for Defendants Iuvo Systems, Inc.,
      Edward Muldrow, Tom Truong, and
      Lynn Varan
BEAN, KINNEY & KORMAN, P.C.
2300 Wilson Blvd., Seventh Floor
Arlington, VA 22201
Phone:  703-525-4000
Fax:     703-525-2207

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd Day of April, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will then send a notification of such filing to the following:

Charles B. Wayne, Esquire
Virginia Bar No. 24954
Jamie Moses Konn, Esquire
Virginia Bar No. 73113
*Attorneys for Plaintiff Deltek, Inc.*
DLA Piper US LLP
500 Eighth Street, NW
Washington, DC 20004
Phone: (202) 799-4000
Fax:    (202) 799-5257
Email:  charles.wayne@dlapiper.com
         jamie.konn@dlapiper.com

And I hereby certify that I will serve via electronic mail, the following non CM/ECF participant:

Elisha A. King, Esquire
Attorney for Plaintiff Deltek, Inc.
DLA Piper US LLP
500 Eighth Street, NW
Washington, DC 20004
Phone: (202) 799-4000
Fax:    (202) 799-5258
Email:  elisha.king@dlapiper.com

                                    /s/ *Christopher A. Glaser*
                                    Christopher A. Glaser, Esquire
                                    Virginia Bar No. 43491
                                    Attorney for Defendants Iuvo Systems, Inc.,
                                          Edward Muldrow, Tom Truong, and
                                          Lynn Varan
                                    BEAN, KINNEY & KORMAN, P.C.
                                    2300 Wilson Blvd., Seventh Floor
                                    Arlington, VA 22201
                                    Phone:   703-525-4000
                                    Fax:       703-525-2207
                                    cglaser@beankinney.com