IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

DELTEK, INC.,                                )
                                             )
                Plaintiff,                   )
                                             )
        v.                                   )        No. 1:09cv330 (AJT/JFA)
                                             )
IUVO SYSTEMS, INC., *et al.*,                )
                                             )
                Defendants.                  )
_____)

## MEMORANDUM OPINION

This case arises out of a dispute between Plaintiff Deltek, Inc. ("Deltek") and three of its

former employees who allegedly formed a new company, Iuvo Systems, Inc. ("Iuvo"), to

compete with Deltek.  On March 25, 2009, Deltek brought a civil action against Iuvo, Deltek's

three former employees, and another unnamed individual (collectively the "Defendants") for

federal trademark infringement, federal unfair competition, common law trademark infringement

and unfair competition, cybersquatting, breach of contract, tortious interference with contract,

tortious interference with business relations and business expectancy, breach of fiduciary duty,

fraud, statutory civil conspiracy, common law civil conspiracy, defamation, conversion, violation

of the Virginia Uniform Trade Secrets Act, and unjust enrichment.

On March 27, 2009, Deltek filed the instant motion for a preliminary injunction pursuant

to Fed. R. Civ. P. 65.  The Court heard oral argument on Deltek's motion on April 8, 2009.  At

that hearing, Deltek presented the testimony of two witnesses:  Brian Murphy, Vice President for

North American Sales, and Kim Latkiewicz, Vice President for Global Sales.  Following the

hearing on April 8, 2009, the Court granted certain of Plaintiff's requests for preliminary relief

and took the balance of Plaintiff's requests under advisement.[1]  Upon consideration of the legal

memoranda, exhibits, affidavits, sworn testimony and arguments of counsel, and for the reasons

stated below, the Court denies the balance of Plaintiff's motion and issues this Memorandum

Opinion in further support of its April 8, 2009 Order granting certain of Plaintiff's requests for a

preliminary injunction and in support of its decision to deny the balance of Plaintiff's motion.

## I. BACKGROUND

The following facts, as alleged in Plaintiff's Verified Complaint, Motion for Preliminary

Injunction and sworn affidavits and testimony in support thereof, do not appear to be contested at

this stage of the proceedings based on the Defendants' filings, sworn declarations and arguments

of counsel:

1.      Plaintiff Deltek is a Delaware corporation headquartered in Herndon, Virginia.  Deltek's

business is based on its proprietary project accounting and financial software, which allows

organizations to track financial information for discrete projects and obtain real-time

performance measurements.  Compl. at ¶ 21.  Deltek's revenue is generated primarily from the

licensing of its software, the provision of maintenance and support for customers using Deltek

software and from the provision of consulting services related to the implementation and use of

Deltek software.  *Id.* at ¶ 22.

2.      Deltek is the owner of the domain name "deltek.com" that was registered with Network

Solutions on October 10, 1994.  *Id.* at ¶ 83.  Deltek has used the Deltek name in commerce since

1983 and has been marketing its products and/or services online under the Deltek name since

1994.  *Id.*

---

[1] The Court granted those requests that pertained to Defendants' use of Deltek's trademarks on
the "www.iuvosystems.com" website, the use of Deltek's trademarks or trade names as metatags
and Defendants' use of the web domain names "www.installdeltek.com" and
"www.installdeltek.net."  *See* Preliminary Injunction Order, Apr. 8, 2009 (Doc. No. 15).

3.      Deltek owns numerous federally registered trademarks including:  DELTEK (stylized) Registration No. 1674008 (registered February 4, 1992, renewed 2002); OPEN PLAN, Registration No. 1585338 (registered March 6, 2000); COSTPOINT, Registration No. 1978814 (registered March 12, 2002); COBRA and DESIGN, Registration No. 1727269 (registered October 22, 2002); WINSIGHT, Registration No 2746672 (registered August 5, 2003); and GCS PREMIER, Registration No. 2547994 (registered June 4, 1996 and cancelled December 2008). *Id.* at ¶ 84. Deltek also has pending an application for the following trademark:  D DELTEK and Design, Serial No. 78/47729. *Id.* at ¶ 85.

4.      Defendant Edward Muldrow ("Muldrow") began his employment with Deltek on June 9, 1997. *Id.* at ¶ 28. Muldrow announced his resignation from Deltek on August 18, 2008, effective that same day. *Id.* at ¶ 58. At the time he left Deltek, Muldrow held the position of Managing Director. *Id.* at ¶ 29. His responsibilities included supporting ongoing sales efforts and managing the consulting services provided by Deltek to an assigned client base. *Id.* He was also responsible for maintaining regular contact with senior-level management to ensure that the clients received optimal value from Deltek's products and services. *Id.*

5.      Defendant Tom Truong ("Truong") began his employment with Deltek on November 16, 1998. *Id.* at ¶ 30. Truong announced his resignation from Deltek on March 5, 2008, and his final day of employment was March 31, 2008. *Id.* at ¶ 55. At the time he left Deltek, Truong held the title of Consulting Manager. *Id.* at ¶ 31. His responsibilities included mentoring and supporting a team of consultants and providing technical services on customer projects. *Id.* As a result of his employment, Truong had significant levels of interaction with Deltek customers and gained knowledge of Deltek's software applications. *Id.*

3

6.     As a result of their positions at Deltek, Muldrow and Truong had access to information

that Deltek considers to be confidential, proprietary and trade secret information belonging to

Deltek. *Id.* at ¶ 32. That information included techniques and strategies for implementing

Deltek software and internal company tool sets and documentation regarding Deltek products,

such as manuals, that are not publicly available. *Id.* Muldrow and Truong also had access to

Deltek business proposals, pricing strategies, business and marketing plans and strategy, contract

terms, and financial information regarding the company's operations. *Id.* at ¶ 33.

7.     Defendant Lynn Varan ("Varan") began her employment with Deltek on January 2, 2007.

*Id.* at ¶ 42. Varan was an employee of Deltek until February 8, 2008. Mem. in Opp. to Mot., Ex.

3, Declaration of Lynn Varan at ¶ 2 [hereinafter Varan Decl.]. At the time she left Deltek, Varan

held the position of Services Coordinator. Compl. at ¶ 42. As Services Coordinator, Varan was

responsible for scheduling technical consultants on customer engagements, collecting all

necessary requirements for consulting engagements and providing information to consultants,

and acting as a main point of contact for consulting activities for internal and external clients. *Id.*

As a result of her employment, she had access to reports on financial results, and assisted with

processing orders and providing quotes for services. *Id.* She also had access to information that

Deltek considers to be confidential, proprietary and trade secret information belonging to Deltek,

including the identities of Deltek customers, the names of decision-makers at customers and the

nature of the consulting services provided by Deltek. *Id.* at ¶ 43.

8.     As a condition of employment with Deltek, Muldrow, Truong, and Varan entered into

certain noncompetition agreements with Deltek, copies of which are attached to Plaintiff's

Verified Complaint. *Id.* at ¶¶ 35, 36, 44.[2] These noncompetition agreements contained

nondisclosure provisions that prohibited the use or disclosure of "Confidential Information" or

"Confidential or Proprietary Information," both during and after employment. *Id.* at ¶¶ 37, 45.

As defined in those agreements, "Confidential Information" or "Confidential and Proprietary

Information" included information that is essential to Deltek's success or that has or is

reasonably likely to have competitive value to Deltek or a competitor and that is created,

acquired or learned by the employee during his or her employment but not generally available to

the public. *Id.* at ¶¶ 38, 46.

9.      The noncompetition agreements also contained noncompete provisions. *Id.* at ¶¶ 39, 48.

Muldrow and Truong agreed that for a period of two years after the termination of their

employment for any reason, they would "not directly or indirectly be engaged as an employee or

consultant of any firm or corporation engaged in a business which is in competition with

[Deltek]" or "provide consulting services to any Deltek customer other than as an employee of

[Deltek]." *Id.* at ¶ 39.  Varan agreed that for a period of twelve months after the termination of

her employment, she would not engage in any "Competitive Activity," which was defined to

include directly or indirectly owning, managing, operating, being employed by, or participating

in any Competitor or acting as a Competitor in an individual capacity. *Id.* at ¶¶ 48, 49.

10.     Varan's noncompetition agreement also provided that for a period of twelve months after

the termination of her employment, she would not "directly or indirectly solicit for employment,

including recommending to any subsequent employer the solicitation for employment of, any

employee of [Deltek]." *Id.* at ¶ 47.

---

[2] Muldrow and Truong entered into Confidential Information and Noncompetition Agreements
on May 27, 2997 and November 16, 1998, respectively. *Id.* at ¶¶ 35-36.  Varan entered into an
Employee Agreement with Deltek on January 2, 2007. *Id.* at ¶ 44.  These agreements are
collectively referred to as noncompetition agreements throughout this Memorandum Opinion.

11.   On February 1, 2008, Truong created and registered the domain name "iuvosystems.com." *Id.* at ¶ 56; Mem. in Opp. to Mot., Ex. 1, Declaration of Tom Truong at ¶ 16 [hereinafter Truong Decl.].

12.   On August 20, 2008, Muldrow joined Iuvo as its President.  Compl. at ¶ 59; Mem. in Opp. to Mot., Ex. 2, Declaration of Edward Muldrow at ¶ 12 [hereinafter Muldrow Decl.].

13.   Varan began working as an independent contractor with Iuvo on or about April 21, 2008. Varan Decl. at ¶ 11. Deltek believes that Varan continues to possess information Deltek considers to be confidential, proprietary and trade secret information belonging to Deltek and is using such information for her own benefit and for the benefit of Iuvo, Muldrow and Truong. Compl. at ¶ 80.

14.   The Iuvo website, "http://www.iuvosystems.com," advertises various services using the Deltek name including "Deltek Upgrade," "We Provide Deltek Solutions," and "Technology Consultants with Deltek Experience." *Id.* at ¶ 64.

15.   Iuvo advertises in commerce including on the iuvosystems.com website and on another website, "http://www.installdeltek.com". *Id.* at ¶ 89.

16.   Iuvo uses Deltek trademarks as metatags on the iuvosystems.com website. *Id.* at ¶ 90.

17.   Since associating with Iuvo, Muldrow and Truong have approached or been contacted by certain Deltek customers to discuss Iuvo replacing Deltek or a Deltek partner in providing consulting and application management services and to provide services related to Deltek software. *Id.* at ¶ 61; Mem. in Opp. to Mot., Ex. 4, Declaration of Iuvo Systems, Inc. at ¶¶ 15, 16, 18 [hereinafter Iuvo Decl.].

18.   Certain current or former Deltek customers that have had contact with Iuvo have expressed concerns or questions to Deltek regarding the services offered by Iuvo, the information

known by Iuvo regarding the customer's use of Deltek products, or the relationship between Deltek and Iuvo.  Compl. at ¶ 73.

19.     Deltek is aware that Iuvo has replaced Deltek or a Deltek partner as a service provider for Deltek related consulting or implementation services for at least two Deltek customers, Alliant Techsystems, Inc. ("ATK") and TerraHealth.  *Id.* at ¶¶ 77-78; Iuvo Decl. at ¶ 16.

20.     Deltek suspects that Muldrow and Iuvo learned that Deltek had sold, or was in discussions regarding the sale of, its Costpoint software to certain customers, the price offered by Deltek for its consulting services and the name of customers' contact person from a current Deltek employee.  Compl. at ¶¶ 71, 76.  However, Defendants categorically deny such allegations.  *See* Truong Decl. at ¶ 24; Muldrow Decl. at ¶ 14; Varan Decl. at ¶ 15; Iuvo Decl. at ¶ 12.

21.     Deltek alleges upon information and belief that Iuvo offered to provide consulting services for use of the Deltek software at a lower cost than such services were offered by Deltek, based on improper use of information Deltek considers to be confidential, proprietary or trade secret information belonging to Deltek and that Defendants are relying on such information to provide consulting services.  Compl. at ¶¶ 74, 78.  Defendants deny that they have relied on or used Deltek's confidential or proprietary information to offer or provide Iuvo's services to potential clients.  Truong Decl. at ¶ 25; Muldrow Decl. at ¶ 15; Iuvo Decl. at ¶ 13.

22.     Deltek also believes that Iuvo, Muldrow, Truong and Varan have solicited at least two individuals to leave their employment with Deltek and join Iuvo.  Compl. at ¶ 81.

23.     Upon learning that Muldrow and Truong were competing with Deltek, Deltek notified

them in writing that their conduct was improper and demanded that they cease immediately.  In

response, despite discussions, the parties could not reach any agreement to resolve their disputes.

*Id.* at ¶ 67.

## II.  LEGAL STANDARD

The issuance or denial of a preliminary injunction "is committed to the sound discretion

of the trial court." *Quince Orchard Valley Citizens Ass'n, Inc v. Hodel*, 872 F.2d 75, 78 (4th Cir.

1989).  In determining whether an injunction is appropriate, a district court must apply the

"balance-of-hardship" test. *See Blackwelder Furniture Co. v. Seilig Mfg. Co., Inc.*, 550 F.2d

189, 194 (4th Cir. 1977); *Railway Labor Executives' Ass'n v. Wheeling Acquisition Corp.*, 736 F.

Supp. 1397, 1401-02 (E.D. Va. 1990) (applying *Blackwelder* test to determine issuance of

temporary restraining order).

Under the test, a court should examine the following four factors: (1) the likelihood of

irreparable harm to the plaintiff without the injunction; (2) the likelihood of harm to the

defendant with an injunction; (3) the plaintiff's likelihood of success on the merits; and (4) the

public interest. *See Hughes Network Sys., Inc. v. InterDigital Communications Corp.*, 17 F.3d

691, 693 (4th Cir. 1994); *Blackwelder Furniture*, 550 F.2d at 193-96.  No single factor can

defeat a motion for a preliminary injunction. Rather, "[t]he decision to grant or deny a

preliminary injunction depends upon a 'flexible interplay' among all the factors considered."

*Blackwelder Furniture*, 550 F.2d at 196.

When applying the four-factor test, the Court must first balance "the likelihood of

irreparable harm to the plaintiff if denied and of harm to the defendant if granted." *See Manning*

*v. Hunt*, 119 F.3d 254, 263 (4th Cir. 1997).  The plaintiff must demonstrate that the harm is

"'neither remote nor speculative, but actual and imminent.'" *Id.* (quoting *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 359 (4th Cir. 1991)). Thus, once the court finds that the harm to the plaintiff is actual and imminent, it should proceed to balance this harm against the harm to the defendant if the preliminary injunction issues. *See id.*

The district court then determines the likelihood of success on the merits on a sliding scale as follows:

> If, after balancing [the likelihood of harms], the balance "tips decidedly" in favor of the plaintiff, a preliminary injunction will be granted "if the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." As the balance tips away from the plaintiff, a stronger showing on the merits is required.

*See id.* (quoting *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991)).

Finally, after balancing the hardships, the Court must consider the public interest. *See id.*

### III. ANALYSIS

Deltek seeks an order from this Court (1) restraining Defendants from using the "www.installdeltek.com" and "www.installdeltek.net" websites; (2) requiring Defendants to change the "www.iuvosystems.com" website to (i) remove the phrases "Deltek Upgrade," "We Provide Deltek Solutions," and "Technology Consultants With Deltek Experience" and (ii) remove the puzzle pieces associated with the word "Deltek"; (3) requiring Defendants to cease using any Deltek trademarks as metatags; (4) requiring Defendants to refrain from using any other websites, metatags or phrases that would similarly infringe on Deltek's trademarks; (5) restraining Defendants from (i) promoting, advertising, publicizing, offering for sale or selling any products or services similar or related to those offered by Deltek under any of the Deltek trademarks or any other mark, name, symbol, or logo that incorporates or is confusingly similar

9

to any of the Deltek trademarks, (ii) using false designations of origin or engaging in acts that constitute unfair methods of competition with Deltek and from otherwise interfering with, or injuring the Deltek trademarks or goodwill associated with them, and (iii) representing that Iuvo is in any way sponsored by, affiliated with, or endorsed by Deltek; (6) restraining Defendants from using or disclosing Deltek's trade secrets or other confidential or proprietary information; and (7) restraining Deltek's former employees from (i) engaging in the business of consulting on Deltek proprietary software in direct competition with Deltek; (ii) directly or indirectly soliciting any customers of Deltek for the purpose of consulting on Deltek proprietary software in direct competition with Deltek; (iii) using or disclosing confidential or proprietary information of Deltek; and (iv) soliciting Deltek employees for a period of at least two years, with respect to Defendants Edward Muldrow and Tom Truong, or, alternatively, twelve months, with respect to Defendant Lynn Varan. Pl.'s Mot. for Preliminary Injunction at 1-3.

The Court views these requests as falling into three general categories: (1) those requests that relate to Defendants' use of Deltek's trademarks; (2) those requests that relate to Defendants' use or disclosure of Deltek's trade secrets or other confidential or proprietary information; and (3) those requests that relate to Defendants' competition with Deltek and solicitation of Deltek's customers and employees. The Court will analyze Deltek's requests accordingly.

## A.    Use of Deltek's Trademarks

With respect to Deltek's first category of requests, Plaintiff contends that Defendants' infringing use of Deltek's trademarks and violations of Deltek's rights regarding the use of its name on the internet are causing irreparable harm to Deltek. Mem. in Supp. of Mot. at 4. Plaintiff asserts that the following phrases should be removed from the "www.iuvosystems.com"

10

website: "Deltek Upgrade," "We Provide Deltek Solutions," and "Technology Consultants With

Deltek Experience" and that the puzzle pieces associated with the word "Deltek" should also be

removed. Plaintiff also requests an order requiring the Defendants to cease using any Deltek

trademarks as metatags for their websites and restraining Defendants from using the

"www.installdeltek.com" and "www.installdeltek.net" websites.

Plaintiff argues that there is a presumption of irreparable injury in trademark

infringement cases as such cases present a real threat of injury to reputation. Mem. in Supp. of

Mot. at 5. In *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 939

(4th Cir. 1995), the Fourth Circuit recognized that "in the context of a trademark infringement

action, a number of courts have adopted the reasoning that '[a] finding of irreparable injury

ordinarily follows when a likelihood of confusion or possible risk to reputation appears.'" *See

also Wesley-Jessen Div. of Schering Corp. v. Bausch & Lomb Inc.*, 698 F.2d 862, 867 (7th Cir.

1983) ("Courts readily find irreparable harm in trademark infringement cases because of the

victim's inability to control the nature and quality of the infringer's goods."). Thus, "a

presumption of irreparable injury is generally applied once the plaintiff has demonstrated a

likelihood of confusion, the key element in an infringement case." *Scotts Co. v. United Indus.

Corp.*, 315 F.3d 264, 273 (4th Cir. 2002). For this reason, whether Plaintiff will suffer

irreparable harm is "bound up" with an inquiry into the likelihood that Plaintiff will prevail on

the merits of its trademark infringement and unfair competition claims. *See id.* at 272.

Accordingly, "because the balance-of-the-hardship question is intertwined with questions about

the merits, [the] analysis of the balance-of-the-hardship question will first require a detour into

the substance of [Plaintiff's] Lanham Act claims." *Id.*

To establish its claims for trademark infringement and unfair competition, Plaintiff must prove the following elements: (1) that Deltek possesses the trademarks at issue; (2) that Iuvo uses the Deltek trademarks; (3) that such use occurs in commerce in connection with the sale or offering for sale, distribution, or advertising of goods or services; and (4) in a way that is likely to cause confusion among consumers. *See* 15 U.S.C. §§ 1114, 1125(a); *Lone Star Steakhouse & Saloon*, 43 F.3d at 930. Defendants have acknowledged for the purposes of this motion that "Deltek owns protectable rights in the Deltek Trademarks" and that Iuvo has used that mark. Mem. in Opp. to Mot. at 20, 22. However, Defendants contend that Plaintiff cannot succeed on the merits because Plaintiff cannot demonstrate that Defendants use of the Deltek trademarks creates a likelihood of confusion. Specifically, Defendants claim that their fair use of the Deltek trademarks is a defense to a claim of infringement. *See* 15 U.S.C. § 1115(b).

The standard for likelihood of confusion is established in 15 U.S.C. § 1114(1). Under that test, the analysis turns on whether the use of the trademark is "likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1); *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984). A trademark owner need not demonstrate actual confusion. *Pizzeria Uno*, 747 F.2d at 1527. Rather, "an unauthorized use of a trademark infringes the trademark holder's rights if it is likely to confuse an 'ordinary consumer' as to the source or sponsorship of the goods." *Anheuser-Busch, Inc. v. L & L Wings, Inc.*, 962 F.2d 316, 318 (4th Cir. 1992). Thus, determining the likelihood of confusion is an inherently factual issue that depends on "varying human reactions to situations incapable of exact appraisement." *Colburn v. Puritan Mills, Inc.*, 108 F.2d 377, 378 (7th Cir. 1939); *see also Anheuser-Busch*, 962 F.2d at 318.

The Fourth Circuit has delineated several factors a court must consider in determining whether a likelihood of confusion exists: "(1) the strength or distinctiveness of the mark; (2) the

12

similarity of the two marks; (3) the similarity of the goods and services that the marks identify; (4) the similarity of the facilities that the two parties use in their businesses; (5) the similarity of the advertising the two parties use; (6) the defendant's intent; and (7) actual confusion." *Lone Star Steakhouse & Saloon*, 43 F.3d at 933 (citing *Pizzeria Uno*, 747 F.2d at 1527). Not all of these factors are of equal relevance in every case. *Id.*

In support of its motion, Plaintiff contends that (1) its mark is exceedingly strong, having been used for years and having been the subject of significant advertising, promotion, use and customer recognition and goodwill; (2) its mark is more than strikingly similar to the mark used by Defendants, and that they are in fact virtually identical as Iuvo prominently uses the phrase "Deltek" throughout its website and as metatags; (3) the goods and services offered by Deltek and Iuvo – specifically support and consulting services for Deltek software – overlap and the companies use similar methods of advertising (*i.e.*, their websites); (4) Iuvo intended to trade upon Deltek's mark and goodwill by implying an affiliation that does not exist; and (5) there has been actual customer confusion as a result of Defendants' use of Deltek's marks.

Defendants, however, contend that they are making use of the Deltek trademark in a permissible, descriptive fashion only to describe the goods and services Iuvo offers. In support of their contention that there is no likelihood of confusion, Defendants point to a disclaimer on the bottom of the "www.iuvosystems.com" website which states that "Deltek, Deltek Time & Expense, Deltek Vision, Deltek GCS Premier and Deltek Costpoint are registered trademarks of Deltek, Inc." and that "Iuvo Systems is not affiliated or endorsed by Deltek, Inc."

Defendants use Deltek's trademarks in three contexts on the "www.iuvosystems.com" website. First, the website contains a flashing banner that remains on the top of the internet page and displays a series of different images. Three of these images include the term "Deltek" as

follows: (1) "Deltek Upgrade;" (2) "We Provide Deltek Solutions" and (3) "Technology Consultants With Deltek Experience." Second, Defendants use certain Deltek trademarks as metatags to identify the subject or content of their website and which may act as hidden keywords for Internet search engines. Defendants also use Deltek's name in the title of two websites registered by Defendants: "www.installdeltek.com" and "www.installdeltek.net." Third, the services section of the "www.iuvosystems.com" website includes a list of Iuvo's areas of expertise. This list includes certain Deltek products and applications. Plaintiff does not contest Defendants' third use of Deltek's trademarks.

With respect to Defendants' first use of Deltek's trademarks, the use of Deltek's name and trademarks in the flashing banner is prominently displayed on the website in a manner Plaintiff described as an "attention getter." This use of Deltek's name and trademarks is not simply a descriptive use in the sense that it identifies the goods or services that Defendants provide; rather, it is an attempt to trade on Deltek's trademarks and associated goodwill. Moreover, the specific phrases are such that they imply some connection between Deltek and Defendants and therefore may cause an ordinary consumer to believe that Defendants are affiliated or sponsored by Deltek. For example, to say that Defendants provide "Deltek Solutions" is misleading and confusing. Defendants do not provide "Deltek Solutions;" rather, Defendants provide Iuvo's solutions using Deltek products. The Court concludes that Defendant's use of Deltek's name and trademarks in the flashing banner on the Iuvo website creates a likelihood of confusion.

Defendants' second use of Deltek's trademarks as metatags may also create a likelihood of confusion. Other courts have held that the use of a competitor's trademarks as metatags can create confusion and constitute trademark infringement. *See, e.g., N. Am. Med. Corp. v. Axiom*

14

*Worldwide, Inc.*, 522 F.3d 1211, 1218-1224 (11th Cir. 2008); *Suarez Corp. v. Earthwise Tech., Inc.*, Nos. C07-5577RJB, C07-2020RJB, 2008 WL 4934055, at *6 (W.D. Wash. Nov. 14, 2008). Plaintiff submitted evidence that an internet search for "iuvosystems" returned results including the "www.iuvosystems.com" website. The description of Iuvo Systems displayed in the list of search results stated: "'Deltek Costpoint' 'Deltek Hosting' 'Deltek Install' 'Deltek Consulting'." *See* Reply in Supp. of Mot., Affidavit of Jamie Konn, Ex. C.  This use of Deltek's trademarks as metatags may cause a consumer to believe that Iuvo is affiliated or related to Deltek and may therefore constitute an improper attempt to trade on the commercial value associated with the marks.  The Deltek name and trademarks are not merely being used in a descriptive fashion, but in a manner that may lead to consumer confusion. *See generally N. Am. Med. Corp.*, 522 F.3d at 1223 (recognizing that use of metatags may cause a likelihood of actual consumer confusion as to source).  The use of the Deltek name in two of Defendants' websites may also constitute cybersquatting in violation of the Anticyberscquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

Thus, Plaintiff has made a sufficient showing at this stage of the proceedings that this use of Deltek's trademarks creates a likelihood of confusion.  As the Fourth Circuit recognized, "[a] finding of irreparable injury ordinarily follows when a likelihood of confusion or possible risk to reputation appears." *Lone Star Steakhouse & Saloon*, 43 F.3d at 939; *see also Scotts Co.*, 315 F.3d at 273.  Defendants have not shown that they will be harmed if an injunction prohibiting this limited use of Deltek's trademarks were to issue.  Finally, the public has a strong interest in the enforcement of trademark law.

For the above reasons, Defendants are enjoined from using in the "www.iuvosystems.com" website the phrases "Deltek Upgrade", "We Provide Deltek Solutions"

and "Technology Consultants With Deltek Experience"; from using as metatags for any website

associated with the Defendants' business activities any Deltek trademarks or trade names

including, but not limited to, "Deltek Costpoint," "Deltek Time Collection," "Deltek Install,"

"Deltek Hosting" and "Deltek Consulting" and from using the web domain names

"www.installdeltek.com" and "www.installdeltek.net."

**B.      Use or Disclosure of Deltek's Confidential, Proprietary or Trade Secret Information**

  1.      <u>Balance of the Harms</u>

Plaintiff seeks to enjoin Defendants from using or disclosing Deltek's trade secrets or

other confidential or proprietary information.  Plaintiff contends that Defendants are obtaining

confidential information regarding Deltek's recent licensing deals and ongoing negotiations with

customers and then interceding in such deals to offer consulting services at lower prices than

Deltek offers.  Plaintiff also contends that Defendants are using trade secrets or other

confidential or proprietary information that they learned during the course of their employment

at Deltek to provide consulting services to Deltek customers.  *See* Mem. in Supp. of Mot. at 4-5.

Plaintiff provided evidence that certain current or former Deltek customers that have had contact

with Iuvo have expressed concerns or questions regarding the information known by Iuvo and

that Iuvo has replaced Deltek, or a Deltek partner, as a service provider for Deltek related

consulting or implementation services for at least two Deltek customers, ATK and TerraHealth.

Compl. at ¶¶ 73, 77, 78.

Plaintiff argues that Defendants' conduct justifies the imposition of an injunction because

"when the failure to grant preliminary relief creates the possibility of permanent loss of

customers to a competitor or the loss of goodwill, the irreparable injury prong is satisfied."

Mem. in Supp. of Mot. at 5 (quoting *Multi-Channel TV Cable Co. v. Charlottesville Quality*

16

*Cable Operating Co.*, 22 F.3d 546, 552 (4th Cir. 1994)). However, Plaintiff failed to establish what trade secret, confidential or proprietary information was acquired by Defendants and that Defendants are now using or disclosing that information. Defendants' sworn declarations categorically deny that Defendants have received trade secret, confidential or proprietary information since leaving Deltek and that Defendants are using any of Deltek's trade secret, confidential or proprietary information at Iuvo. Truong Decl. at ¶¶ 24-25; Muldrow Decl. at ¶¶ 14-15; Varan Decl. at ¶¶ 7, 15; Iuvo Decl. at ¶¶ 12-13.

For a preliminary injunction to issue, Plaintiff must demonstrate that the harm is "'neither remote nor speculative, but actual and imminent.'" *Manning*, 119 F.3d at 263 (quoting *Rum Creek Coal Sales*, 926 F.2d at 359). At this juncture, Plaintiff has failed to make a clear showing of irreparable harm. *See generally Direx Israel*, 952 F.2d at 812 (the district court must find that the plaintiff has made a "clear showing" of irreparable harm that is "neither remote nor speculative, but actual and imminent"). Moreover, without further information on the nature of the trade secret, confidential or proprietary information Plaintiff's seek to enjoin Defendants from using, Defendants will be harmed by an ambiguous and potentially overbroad injunction.

2.     Plaintiff's Likelihood of Success on the Merits

At this stage of the proceedings, Deltek has failed to provide evidence that Defendants have in fact received confidential or proprietary information since their departure from sources inside Deltek. Indeed, Defendants categorically deny receiving any trade secret, confidential or proprietary information from sources within Deltek since their termination. Truong Decl. at ¶¶ 24-25; Muldrow Decl. at ¶¶ 14-15; Varan Decl. at ¶¶ 7, 15; Iuvo Decl. at ¶¶ 12-13.

Deltek has also failed to establish what precise trade secret or confidential information was acquired or known by Defendants and is being used by Defendants that is not publicly

available. For example, Plaintiff contends that the identity of their customers is confidential information. However, the evidence presented demonstrates that the identity of many Deltek customers is publicly available on Deltek's website or by attending conferences such as the annual Deltek Insight Conference. Moreover, Defendants submitted sworn affidavits that state that Iuvo's contacts with the Deltek customers referenced in Plaintiff's Verified Complaint have been the result of unsolicited communications from the customers or from referrals by contacts outside of Deltek. *See* Muldrow Decl. at ¶¶ 17, 20; Iuvo Decl. at ¶¶ 15-18.

Plaintiff also provided evidence that Deltek employees and certain Deltek partners receive manuals that contain proprietary and confidential information about Deltek's products and strategies and techniques for implementing and using those products. However, at the April 8, 2009 hearing, Deltek's representative testified that these manuals have been revised since Defendants' employment was terminated. The testimony also indicated that the manuals are made available to Deltek's partners as well as people who attend Deltek training programs such as Deltek University and that there are no contractual restrictions imposed upon them with respect to that information. Moreover, Defendants have indicated that much of the information contained in these manuals could be derived from other sources and that "Iuvo has not relied on nor has it used Deltek's confidential or proprietary information to offer or provide Iuvo's services to potential clients." Iuvo Decl. at ¶ 13.

Finally, Plaintiff contends that Deltek's pricing structures and the consulting services they offer are trade secret and confidential information. At the April 8, 2009 hearing, however, Plaintiff's witnesses testified that there is no restriction placed on Deltek's customers that would prevent them from disclosing the prices Deltek quotes.

18

Given the lack of evidence as to Defendants' use of confidential, proprietary or trade secret information at this stage of the proceedings, Plaintiff has not demonstrated a strong likelihood of success on the merits with respect to its claims that relate to the use or disclosure of Deltek's confidential, proprietary or trade secret information.

3.   The Public Interest

The Court concludes that the public interest lies with denying the relief sought with respect to trade secret, confidential or proprietary information given Plaintiff's failure to make a clear showing of actual or imminent harm and the ambiguous and potentially overbroad nature of Plaintiff's requests.

**C.   Competition with Deltek and Solicitation of Deltek's Customers and Employees**

1.   Balance of the Harms

Deltek's final category of requests relate to Defendants' competition with Deltek and solicitation of Deltek's customers and employees.  Deltek contends that this conduct is barred by Muldrow, Truong and Varan's respective noncompetition agreements and that allowing Defendants to continue to compete with Deltek and solicit Deltek's customers and employees will irreparably harm Plaintiff.  Specifically, Plaintiff provided evidence that a number of Deltek's customers have had communications with Iuvo or the individual Defendants regarding services that the Defendants can provide to those customers.  Plaintiff also presented evidence that Iuvo has replaced Deltek or a Deltek partner as a service provider for Deltek-related consulting or implementation services for at least two Deltek customers.  Compl. at ¶¶ 77-78. Plaintiff contends that this evidence alone is sufficient to establish irreparable injury. *See* Mem. in Supp. of Mot. at 5 (citing *Multi-Channel TV Cable Co.*, 22 F.3d at 552).

19

Defendants, however, contend that any harm to Plaintiff is not irreparable because money damages could fully compensate Plaintiff if it is ultimately successful on the merits and that the harm Defendants would suffer if a preliminary injunction were to issue greatly outweighs the harm to Plaintiff should the injunction not issue.  Muldrow, Truong and Varan submitted sworn declarations testifying that if the preliminary injunction requested by Plaintiff were to issue, they would be substantially harmed in their ability to earn a living.  *See* Truong Decl. at ¶ 27; Muldrow Decl. at ¶ 22; Varan Decl. at ¶ 16.  Similarly, Defendants have submitted evidence that the injunctive relief sought by Plaintiff would substantially harm Iuvo's business and Iuvo would be forced to permanently shut its doors and cease its business.  Iuvo Decl. at ¶¶ 19-20.  In response Plaintiff argues that the injunctive relief sought would not preclude Iuvo from continuing to operate aspects of its business.  The "Services" page of the Iuvo website states that Iuvo's areas of expertise include certain Deltek products and also other products and systems unrelated to Deltek such as Oracle and Windows.

The Court concludes that the balance of hardships weighs slightly in favor of Plaintiff.  The evidence shows that at Plaintiff has lost some business from at least two Deltek customers – however, the evidence also shows that Deltek has over 11,000 customers.  Moreover, although an injunction might severely limit Iuvo's abilities to continue operating, Plaintiffs are correct that Iuvo's own website states that they offer services in addition to those regarding Deltek products.

2.      Plaintiff's Likelihood of Success on the Merits

After balancing the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied and the harm to the defendant if the preliminary injunction is granted, the Court is obligated to determine the plaintiff's likelihood of success on the merits.  The showing on the merits varies depending on the balance of the harms.  *See generally Manning*, 119 F.3d at

263.  Where, as here, the balance of the hardships does not tip "decidedly" in favor of Plaintiff,

the Court must consider whether there is a sufficient showing of a likelihood of success on the

merits.  *Id.*

Under Virginia law, the following criteria determine the validity of non-competition

agreements:

> (1) Is the restraint, from the standpoint of the employer, reasonable in the sense
> that it is no greater than is necessary to protect the employer in some legitimate
> business interest?
>
> (2) From the standpoint of the employee, is the restraint reasonable in the sense
> that it is not unduly harsh and oppressive in curtailing his legitimate efforts to
> earn a livelihood?
>
> (3) Is the restraint reasonable from the standpoint of a sound public policy?

*Blue Ridge Anesthesia & Critical Care, Inc. v. Gidick*, 239 Va. 369, 371-72 (1990).

During the April 8, 2009 hearing, Defendants' counsel did not dispute that Muldrow,

Truong and Varan are competing with Deltek in a manner that would fall under the noncompete

provisions of their respective noncompetition agreements.  Defendants also conceded that the

conduct Plaintiff seeks to enjoin could be barred by a properly drafted noncompete provision.

However, Defendants contend that the noncompete provisions at issue here are unenforceable

under Virginia law because they are vague and, more importantly, overbroad.  Thus, Plaintiff's

likelihood of success on the merits depends on whether the noncompete provisions at issue are

enforceable.

Plaintiff contends that the noncompete provisions are no greater than necessary to protect

Deltek's legitimate business interests and that the restrictions are reasonable when viewed from

the standpoint of each former employee and taking into account the practical effect of the

restrictions given the nature of Deltek's business and competitors.  Specifically, Plaintiff argues

21

that the restrictions only bar former employees from "capitalizing on their training by Deltek, their in-depth knowledge of Deltek's proprietary software, and their knowledge of specific customers' use of Deltek products' for a limited period of time." Mem. in Supp. of Mot. at 15. Plaintiff also argues that because Deltek's business is centered upon its own proprietary software and extends only to the sale of that software, maintenance and support for that software and consulting services regarding that software, the restrictions imposed on Deltek's former employees are narrow and reasonable. *Id.* In that regard, Deltek presented evidence that it has no direct competitors with respect to its proprietary software such that prohibiting Defendants from working for a "competitor" only restricts Defendants from doing what they admit they are currently doing. Thus, Deltek contends that the noncompete provisions have to be analyzed in context and that the provisions are not "functionally" overbroad given the nature of Deltek's business.

Defendants argue, however, that the covenants are ambiguous and overbroad. As an example, the covenants appear to prohibit Muldrow, Truong, or Varan from working in any capacity at an entity that is a competitor of Deltek, including in a position unrelated to Deltek or their former employment at Deltek. *See, e.g., Roto-Die Co. v. Lesser*, 899 F. Supp. 1515, 1521 (W.D. Va. 1995) (holding covenant unenforceable where it "could be read to prohibit any type of employment, even employment outside the scope of the work" done for the prior employer and would prevent employee "from working in any capacity, including that of a janitor, for a 'Competitive Business'"). Defendants also contend that even accepting that Deltek does not have any direct competitors with respect to its proprietary software, Deltek does have competitors that provide maintenance and support to customers using Deltek software and consulting services related to the implementation and use of Deltek software.

22

Here, each noncompete provision "must be evaluated on its own merits, balancing the provisions of the contract with the circumstances of the businesses and employees involved." *Parikh v. Family Care Center*, 273 Va. 284, 288 (2007). The validity of a noncompete provision is not determined based on the language of the covenant alone. *Id.* Therefore, the validity of the noncompete provisions at issue here is affected, in part, by the number and types of Deltek's competitors. Similarly, the analysis as to the validity of a non-competition clause necessarily includes consideration of the existence of a trade secret, or other confidential or proprietary information, to be protected. *See Decision Insights, Inc. v. Sentia Group, Inc.*, No. 07-1596, 2009 WL 367585 (4th Cir. Feb. 12, 2009).

At the April 8, 2009 hearing, there was some dispute among the parties regarding whether and to what extent Deltek has competitors. Whether Deltek possesses any trade secrets and the scope of any confidential or proprietary information is similarly a point of contention among the parties. At this point in the proceedings, Plaintiff has raised questions that go to the merits of the validity and enforceability of the noncompete provisions so as to make them "fair ground for litigation and thus for more deliberate investigation." *Manning*, 119 F.3d at 263 (quoting *Rum Creek Coal Sales*, 926 F.2d at 359). The Court is of the view, however, that Plaintiff has not made so strong a showing of likelihood of success on the merits to warrant the injunctive relief sought where, as here, the balance of harms does not tip decidedly in favor of Plaintiff.

### 3. The Public Interest

Plaintiff and Defendants point to competing public interests with respect to the enforcement of covenants not to compete. As Plaintiff contends, Virginia courts have recognized that "there is a strong public interest in creating and maintaining a customer base."

23

*Int'l Limousine Serv. Inc. v. Reston Limousine & Travel Serv, Inc.*, 68 Va. Cir. 84, 2005 WL 1026985, at *2 (Va. Cir. Ct. May 3, 2005). However, a court must also be mindful that subjecting an employee to an ambiguous covenant not to compete "offends sound public policy." *Power Distribution, Inc. v. Emergency Power Engineering, Inc.*, 569 F. Supp. 54, 58 (E.D. Va. 1983) (citing *Meissel v. Finley*, 198 Va. 577, 580, 95 S.E.2d 186, 188 (1956)). Accordingly, given the breadth of the noncompete provisions at issue here, the Court is of the opinion that the public interest will not be served at this point by enjoining the Defendants from competing with Deltek on the basis of their respective noncompetition agreements. Plaintiff's request for preliminary relief with respect to Defendants' noncompetition agreements and the services currently offered by Iuvo is denied.

## IV.  CONCLUSION

For the reasons stated above and at the hearing on April 8, 2009, the Court grants in part and denies in part Plaintiff's Motion for a Preliminary Injunction. Following the April 8, 2009 hearing, the Court issued an Order granting Plaintiff's requests for preliminary relief with respect to Defendants' use of Deltek's trademarks on the "www.iuvosystems.com" website, the use of Deltek's trademarks or trade names as metatags for any website associated with Defendants' business activities and Defendants' use of the web domain names "www.installdeltek.com" and "www.installdeltek.net."

An appropriate Order addressing the remainder of Plaintiff's requests will issue.

Anthony J. Trenga
United States District Judge

Alexandria, Virginia
April 20, 2009