# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### (Alexandria Division)

| | |
|---|---|
| DELTEK, INC. | |
| Plaintiff | |
| v. | Civil No. 1:09 cv 330 (AJT/JFA) |
| IUVO SYSTEMS, INC., et al., | |
| Defendants. | |

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

William F. Krebs, Esquire
Virginia Bar No. 17347
Christopher A. Glaser, Esquire
Virginia Bar No. 43491
Michael R. Abejuela, Esquire
Virginia Bar No. 65199
Attorney for Defendants Iuvo Systems, Inc.,
        Edward Muldrow, Tom Truong, Sandy
        Levy, Hai Truong and Lynn Varan
BEAN, KINNEY & KORMAN, P.C.
2300 Wilson Blvd., Seventh Floor
Arlington, VA 22201
Phone:  703-525-4000
Fax:      703-525-2207

# TABLE OF CONTENTS

| | | |
|---|---|---|
| INTRODUCTION | | 1 |
| STATEMENT OF MATERIAL FACTS AS TO WHICH A GENUINE DISPUTE EXISTS | | 2 |
| I. | Deltek and Iuvo | 2 |
| II. | The Individual Defendants | 2 |
| | A.    Tom Truong | 2 |
| | B.    Ed Muldrow | 4 |
| | C.    Sandra Levy | 6 |
| | D.    Hai Truong | 7 |
| | E.    Lynn Varan | 8 |
| III. | Further Conduct | 9 |
| | A.    Deltek Documents | 9 |
| | B.    Deltek Employees and "Code Name" | 10 |
| | C.    Revenue Earned by Iuvo | 10 |
| | D.    Defendants' Use of Deltek's Trademarks | 11 |
| IV. | Muldrow's Missing Computer | 12 |
| ARGUMENT | | 12 |
| I. | Deltek Cannot Establish its Trademark and Cybersquatting Claims | 12 |
| | A.    Deltek Cannot Establish Consumer Confusion | 13 |
| | B.    Deltek Cannot Establish Iuvo's Use of any Mark is Misleading (Lanham Act/ Unfair Competition (Count II) | 16 |
| | C.    Deltek Cannot Establish Cybersquatting (Count IV) | 16 |
| | D.    Deltek is unable to Establish Damages (Counts I, II, III and IV) | 17 |
| II. | Deltek Fails to Establish Breach of Contract and Interference with Contract (Counts V, VI, VII, VIII) | 18 |
| III. | Deltek is Unable to Establish Interference with Expectancy (Count IX) | 20 |
| IV. | Deltek Cannot Establish Breach of Fiduciary Duty (Count X) | 23 |
| V. | Deltek Cannot Establish Conspiracy (Count XII and XIII) | 24 |
| VI. | Deltek Cannot Establish Conversion (Count XV) | 26 |
| VII. | Deltek Cannot Establish its Virginia Trade Secrets Act Claim (Count XVI) | 28 |
| CONCLUSION | | 30 |
| CERTIFICATE OF SERVICE | | 31 |

# TABLE OF AUTHORITIES

**Cases**

Carefirst of Maryland, Inc. v. First Care, P.C.
    434 F.3d 263 (4th Cir. 2006) ..................................................................... 13

Combined Ins. Co. of America v. Wiest,
    578 F.Supp.2d 822 (W.D.Va. 2008) ......................................................... 26

Daisuke Enomoto, v. Space Adventures, Ltd.,
    2009 U.S. Dist. LEXIS 18641  (E.D. Va. 2009) ...................................... 26

Deepwood Veterinary Clinic v. Sabo,
    45 Va.Cir. 508 (Fairfax, 1998) ................................................................. 23

Dionne v. Southeast Foam Converting & Packaging, Inc.,
    240 Va. 297 (Va. 1990) ............................................................................ 28

E.I. DuPont De Nemours and Co. v. Kolon Industries, Inc.,
    2009 U.S.Dist. LEXIS 76795 (E.D.Va. 2009) ........................................ 27

Feddeman & Co., C.P.A., P.C. v. Langan Assoc., P.C.,
    260 Va. 35 (2000) ..................................................................................... 23

George & Co., LLC v. Imagination Entertainment, Ltd.,
    575 F.3d 383 (4th Cir. 2009) ..................................................................... 14

Hechler Chevrolet, Inc. v. General Motors Corp.,
    230 Va. 396 (Va. 1985) ............................................................................ 25

JTH Tax, Inc. v. Lee,
    514 F.Supp. 2d 818 (E.D.Va. 2007) ......................................................... 20

Lone Star Steakhouse & Saloon Inc. v. Alpha of Va., Inc.,
    43 F.3d 922, 930 (4th Cir. 1995) ............................................................... 14

Lumber Liquidators, Inc. v. Stone Mt. Carpet Mills, Inc.,
    2009 U.S. Dist. LEXIS 80370 (E.D.Va. 2009) ....................................... 17

Modern Environments, Inc. v. Stinnett,
    263 Va. 491 (2002) ................................................................................... 18

Motion Control Systems, Inc. v. East,
    262 Va. 33 (2001) ..................................................................................... 18

People for the Ethical Treatment of Animals v. Doiughney,
    263 F.3d 359 (4th Cir. 2001) ..................................................................... 16

Red Cardinal Fifteen, Inc. v. Lange,
    1997 U.S. App. LEXIS 1411 (4th Cir. 1997) ........................................... 24

Saks Fifth Avenue, Inc. v. James, Ltd.,
    272 Va. 177 (2006) ................................................................................... 20

Shakespeare Company v. Silstar Corporation of America, Inc.,
    110 F.3d 234 (4th Cir. 1997) ..................................................................... 15

Tools USA and Equip. Co. v. Champ Frame Straightening Equip., Inc.,
    87 F.3d 654 (4th Cir. 1996) ....................................................................... 14

United Leasing Corp. v. Thrift Ins. Corp.,
    247 Va. 299 (1994) ................................................................................... 26

Venetian Casino Resort, LLC v. VenetianGold.com,
    380 F. Supp. 2d 737 (E.D. Va. 2005) ....................................................... 16

Virginia Heartland Bank v. Roberts,
   46 Va. Cir. 71 (Spotsylvania, 1998) ........................................................ 24
Western Insulation, L.P. v. Moore,
   242 Fed.Appx. 112 (4th Cir. 2007)........................................................ 20, 29
Xoom, Inc. v. Imageline, Inc.,
   323 F.3d 279 (4th Cir. 2003) .................................................................. 17

**Statutes**

15 U.S.C. § 1125(a)(1)(B) ......................................................................... 16
15 U.S.C. § 1125(d)(1)(A) ......................................................................... 16
Va. Code § 59.1-336. ................................................................................ 28
Va. Code § 59.1-337 ................................................................................. 28

COME NOW Defendants Iuvo Systems, Inc., Edward Muldrow, Tom Truong, Lynn Varan, Sandra Levy, and Hai Truong (collectively, "Defendants") and present this Memorandum in Opposition to the Motion for Summary Judgment of Deltek, Inc. ("Deltek")[1].

## INTRODUCTION

Contrary to Deltek's bare assertion, discovery has shown that things are precisely as they were at the preliminary injunction in which Deltek largely prevailed only as to those claims defendants expressly did not contest for the limited purpose of the preliminary injunction. Deltek was unsuccessful then, as it should be now, as to its other assertions. Moreover, for the reasons set forth in defendants' Motion for Summary Judgment, judgment should be entered against Deltek as to all counts.[2]

In its present motion, Deltek takes an obfuscating approach to pleading as it mixes actors, acts and damages into nebulous claims against all defendants as though these actors, acts and damages are interchangeable. Deltek's approach fails when one examines each claim in light of the alleged acts of each defendant and how such act, even if true, relates to each damage claim. In breaking each claim into its component parts, as against each individual defendant, it becomes abundantly clear that Deltek has no viable cause of action against any single defendant.

Deltek fails in its heavy burden. Accordingly, and for the reasons set forth herein, defendants are entitled to summary judgment as to each count.

---

[1] While styled as a Motion for Summary Judgment, Deltek's Motion is more properly a Motion for Partial Summary Judgment as it requests a trial on damages.

[2] Defendants have previously filed their Motion for Summary Judgment, accompanied by an exhaustive Memorandum in support thereof and exhibits relating thereto. In light of the significant overlap between plaintiff's Motion for Summary Judgment and defendants' Motion for Summary Judgment, defendants will attempt to minimize any repetition of the facts and arguments set forth in their supporting Memorandum and Exhibits by referring the Court to the relevant portions contained in their Memorandum. Defendants incorporate the arguments set forth in their Memorandum herein.

## STATEMENT OF MATERIAL FACTS AS
## TO WHICH A GENUINE DISPUTE EXISTS [3]

**I.    Deltek and Iuvo**

Defendants do not dispute the facts set forth in the corresponding portion of Deltek's Memorandum (¶¶ 1-3).  However, Deltek omits certain key facts, the absence of which provide an incorrect impression.

Paul Henning testified that the role of Iuvo was to act as a customer representative on behalf of a customer purchasing Deltek's software and not to replace Deltek as a vendor.  Specifically, Paul Henning stated in describing Iuvo as a customer representative that,

REDACTED

(Deposition of Paul Henning, Exhibit 1, 42:11-43:2.)

**II.    The Individual Defendants**

**A.    Tom Truong**

Defendants do not dispute the facts set forth in the corresponding portion of Deltek's Memorandum (¶¶ 4-5, 7-8, 14 and 16).  Defendants dispute the facts set forth in the remaining paragraphs as set forth below.

6.    More correctly, Tom Truong understood the prohibitions set forth in his non-

---

[3] In an effort to assist this Court in evaluating the merits of Deltek's Memorandum in Support, and to comply with Local Rule 56(B), defendants have adopted the outline used by Deltek in its Statement of Material Facts and defendants respond to each corresponding numbered paragraph.  However, defendants have altered the headings used by Deltek to remove any false impression.  Additionally, defendants' determination to not dispute the various facts identified herein is not a concession that the facts identified by Deltek are material to this dispute.

competition agreement as, "that I couldn't go to work for Oracle or Lawson or Jamison because those were competitors of Deltek's.  That was my understanding of this noncompetition agreement." (Deposition of Tom Truong, <u>Exhibit 2</u>, 35:1-5.)

9.      More correctly, Tom Truong testified that he had forwarded to "maybe 10 customers" an email which stated that he was "going out on my own and providing technical service offering." (T. Truong, 84:9-85:5.)

10, 11 and 15. More correctly, Tom Truong testified that he copied "Client trip reports, personal documents that I had over the years, clients' systems, client information that I had about system configuration, maybe installation instructions, release notes.  Things of that nature."  (T. Truong, 73:21-74:3.)  However, Tom Truong has not used any of the information obtained with the exception of determining specific information owned not by Deltek but by the customers supported by Iuvo such as "[s]erver name, maybe database name, name of the application that was installed on the server, IP addresses, server IP addresses, perhaps maybe operating system information."  (T. Truong, 114:4-17; 117:1-17.)

12.      More correctly, the Outlook Contacts information used by Tom Truong consists of names he entered into Outlook Contacts from business cards he received.  The Outlook Contacts is not a proprietary customer list of Deltek and no information was copied by Tom Truong from the Deltek server.  (T. Truong, 74:22-77:22.)

13.      More correctly, Tom Truong reformatted his Deltek-issued laptop and reinstalled the operating system to clean it of personal data stored on the device.  (T. Truong, 16:8-9.)  No Deltek information was destroyed as "[a]ny relevant business information -- Deltek business-related information is contained in my email."  (T. Truong, 20:6-12.)

### B.    Ed Muldrow

Defendants do not dispute the facts set forth in the corresponding portion of Deltek's Memorandum (¶¶ 17-18, 21-22, 31-32, 34 and 36).  Defendants dispute the facts set forth in the remaining paragraphs as set forth below.

19.    Ed Muldrow provided a lay opinion during his deposition, subject to the objection of counsel that the question called for a legal opinion, as to the placement of restrictions on him by paragraphs 1-3 of the agreement.  (Deposition of Ed Muldrow, Exhibit 3, 34:6-37:18.)

20.    More correctly, Ed Muldrow advised that "[o]ver the last four to seven years I've been reading cases on the Internet and articles where language like this was not enforced in the State of Virginia and my understanding Deltek didn't enforce the noncompetition agreement anyway."  (E. Muldrow, 39:7-11.)

21.    While titled "Managing Director," Ed Muldrow did not have supervisory authority over the technical consultants.  (Deposition of Kim Latkiewicz, Exhibit 4, 19:15-17.)

22.    After being informed of his pending demotion, Mr. Muldrow's future with Deltek was doubtful. (E. Muldrow, 73:15-74:11.) Mr. Muldrow left Deltek's employment effective August 18, 2008 and immediately joined Iuvo.

23.    More correctly, on August 6, 2008, Ed Muldrow forwarded from his Deltek-issued email address to a personal email address an ATK-created description of the responsibilities of a project manager (E. Muldrow, 304:13-305:9; Exhibit 5).  Additionally, on August 14, 2008, Ed Muldrow forwarded from his Deltek-issued email address to a personal email address an ATK-created document which included lodging information, an ATK-created meeting agenda and identification of persons expected to attend the meeting and their respective shirt-sizes.  (E. Muldrow, 311:17-318:17, Exhibit 6.)

4

24.     More correctly, Ed Muldrow came to have an Iuvo email account through the hopeful preparations of Tom Truong:

> Q       How did Ed Muldrow come to have an e-mail account at Iuvo Systems on
>         August 14th, 2008?
> A       I, more than likely, set up the account in the event that if he decided to come to
>         Iuvo that he was prepared, he was prepared. If he didn't, then I could easily
>         delete the e-mail. I don't know if Ed is even aware that this is an e-mail because
>         it looked like I logged in as Ed and sent it to Ed to test it.
> Q       I'm sorry. You logged in as Ed and sent it to Ed to test it?
> A       Yeah, Ed to Ed, meaning I logged in as him.
> Q       And the to is Ed Muldrow at one of his other e-mail addresses?
> A       No, no. That's the e-mail address that I just set up. Maybe, at the time when I
>         created the e-mail, I think the system sends an e-mail out and I logged in to
>         check, but I don't think Ed is aware of this e-mail.

(T. Truong, 253:1-20)

25-29.  The "only reason why [Tom Truong] touched [Ed Muldrow's Deltek-issued] computer is because Ed requested that I remove his personal information."  (T. Truong, 13:1-6.)  Tom Truong had no knowledge of what information, if any, was stored on the laptop:

> A.      I was given the laptop, I didn't bother to look at it. I ran the software and
>         cleaned the data. I didn't examine it, I didn't snoop around.  Ed asked me to
>         wipe the laptop clean, and I cleaned the laptop.
> Q.      But whether you looked or not, you knew that Mr. Muldrow's business-related
>         data was on the laptop. You did know that, right?
> A.      Perhaps, yes.
> Q.      There's no perhaps about it. You did know it, correct?
> A.      I don't know. I didn't look at the laptop to know what information was on that
>         laptop.

(T. Truong, 16:22-17:17.)

30.     More correctly, during the week prior to Ed Muldrow's resignation, Ed Muldrow and Tom Truong "discussed ATK becoming an Iuvo customer."  (T. Truong, 110:20-21.)  No testimony demonstrates that any discussion was had in which customers were planned to be "taken" from Deltek.

33.     On August 18, 2008, Ed Muldrow forwarded from his Deltek-issued email address to a personal email address ATK information for the purpose of resolving an outstanding issue.  As

testified to by Ed Muldrow, "I wanted to resolve this. I wanted to resolve this for Deltek and for ATK. I didn't resolve it. That's the short answer to that." (E. Muldrow, 316:21:317:2)

       35.    More correctly, while Ed Muldrow attended the August 20, 2009 meeting with ATK on behalf of Iuvo, the decision to attend the meeting on behalf of Iuvo was made after Ed Muldrow resigned from Deltek.

> Q      When did you make the decision to attend and participate in the Weapons Lane Deltek implementation for ATK on behalf of Iuvo?
> A      Not until I resigned from Deltek. And I have to go back and say, when I saw this, I thought this was Monday, if I could pull this calendar, Monday, August 18th, and that's when I -- after I resigned from Deltek was when there was a discussion that I would come and participate in the kickoff as a member of Iuvo.
> Q      A discussion with whom?
> A      A discussion with Amelia Russo.
> Q      And she's somebody at ATK; correct?
> A      That's correct.

(E. Muldrow, 299:1-15.)

    **C.**    **Sandra Levy**

       Defendants do not dispute the facts set forth in the corresponding portion of Deltek's Memorandum (¶¶ 37-39, and 42-47). Defendants dispute the facts set forth in the remaining paragraphs as set forth below.

       40.    Levy understood her non-competition agreement to bar her from joining a company "as an employee that directly competed with Deltek," and that she " was not to provide services similar to those that I performed for Deltek with a like company." (Deposition of Sandy Levy, <u>Exhibit 7</u>, 21:5-18.)

       41.    More correctly, Levy viewed Deltek's statement of work while at a prior employer other than Iuvo "to look at the format, not the content." (Levy, 38:12-14.).

       48.    More correctly, while some limited similarities exist between one Deltek statement of work document and one Iuvo document, no evidence exists demonstrating that the documents are the

same as or similar to those used by Deltek.  (Levy, 72:6-7.)  Moreover, Deltek has not proffered any Deltek statement of work from which any such conclusion could be drawn.

>   **D.    Hai Truong**

Defendants do not dispute the facts set forth in the corresponding portion of Deltek's Memorandum (¶¶ 49-52 and 61-62).  Defendants dispute the facts set forth in the remaining paragraphs as set forth below.

53, 57. More correctly, Hai Truong testified his understanding of the non-competition agreement as preventing him from starting a competing business.  (Deposition of Hai Truong, Exhibit 8, 16:13-17:22.)

54.    More correctly, the information "disposed" of by Hai Truong consisted solely of electronic copies of manuals.  (H. Truong, 21:1-21.)

55.    More correctly, Hai Truong reformatted the hard drive on his Deltek-issued laptop so as to remove any personal data stored on the device.  (H. Truong, 46:14-47:1.)

56.    More correctly, Hai Truong testified that consultant reports were stored on an application at Deltek.  Consultant reports would be printed at the end of each engagement and delivered to the client as the client's property.  (H. Truong, 47:20-48:21.)

58.    Hai Truong was uninformed as to the nature of Iuvo's business and was only concerned as some of Iuvo's clients were also clients of Deltek.  (H. Truong, 27:22-28:8.)

59.    Hai Truong provided assistance to Tom Truong regarding data conversion when needed and did not have insight as to Iuvo's core business method or practices.  (H. Truong, 59:4-60:9.)

60.    Hai Truong acknowledged that some work performed on behalf of Iuvo was similar to that he provided while at Deltek and that some, such as data conversion, was different.  (H. Truong, 59:4-12.)

### E.    Lynn Varan

Defendants do not dispute the facts set forth in the corresponding portion of Deltek's Memorandum (¶¶ 63-68).  Defendants dispute the facts set forth in the remaining paragraphs as set forth below.

69.    While Ed Muldrow forwarded the August 6, 2008 e-mail as described by Deltek, no evidence exists of any such meeting.  (E. Muldrow, 307:18-20, "Q. Did you and Mr. Truong and Ms. Varan discuss JCVI on the evening of August 6, 2008? A. No.")

Additionally, Deltek omits certain key facts from its Statement, the absence of which provide an incorrect impression.  Lynn Varan's employment with Deltek was as a services coordinator which entailed scheduling consultants for service calls.  (Deposition of Lynn Varan, Exhibit 9, 8:6-21.)  She would rely on her manager to provide input as to which technician should staff a particular assignment.  (K. Latkiewicz, 34:21-35:4.)  Rarely and only if she "knew very confidently" which Deltek consultant possessed the expertise to perform a client's work would she schedule a specific technician for a task.  (K. Latkiewicz, 34:12-35:4.)  (L. Varan, 26:12-13.) After resigning from Deltek, and for a short period, Ms. Varan assisted in getting Iuvo up and running and largely acted as the bookkeeper for the new company.  Her duties at Iuvo—for which she received total compensation of only $4,000—were as a mere bookkeeper and entirely different from that which she previously did as a dispatcher.  (L. Varan, 46:21-47:3; 55:15-56:4.)

## III.    Further Conduct

### A.    Deltek Documents

Defendants do not dispute the facts set forth in the corresponding portion of Deltek's Memorandum (¶¶ 75-76).  Defendants dispute the facts set forth in the remaining paragraphs as set forth below.

70-74. While Muldrow downloaded the "Opportunities" spreadsheet in his capacity as an employee of Deltek, the spreadsheet was not used by any defendant.  (E. Muldrow, 326:16-327:1; 334:7-14; P. Henning, 76:6-77:8.)

77-78.  While the referenced e-mail provides that Muldrow *would* provide contract files via thumb drive to Paul Henning at a future date, no such thumb drive was ever provided to Paul Henning. (P. Henning, 65:12-21.)

79.     While defendants possess electronic data with Deltek being identified in the metadata field as the author of the document, the mere possession is not significant.  Sandy Levy was permitted by Deltek to retain her Deltek-issued laptop computer once Deltek processed it to remove all data and to place on it a new operating system.  (S. Levy affidavit, Exhibit 10, ¶¶ 5-8.)  Once the laptop was returned to Sandy Levy, it was used by her for personal use. (S. Levy affidavit, ¶ 9.)  Documents created by Levy since her departure from Deltek—including law school documents and essays— identify Deltek in the metadata due to Deltek's placing of a Deltek-issued operating system on the device.  (S. Levy affidavit, ¶¶ 12-18.)   The documents created by Sandy Levy after her departure from Deltek were among the documents provided to Deltek during discovery.  (S. Levy affidavit, ¶ 10-11.)

80.     The forms described in general, but not specifically identified by Deltek in its Memorandum, appear to be the same as the forms described in defendants' Memorandum, pp. 22-23, described by defendants as "forms provided to third-parties regarding hardware quotes, methodology and maintenance" and "an internally used expense/timesheet report form."

The hardware quote form is a form for the purposes of quoting pricing of hardware.  (K. Latkiewicz, 165:20-167:17.)  Deltek neither sells hardware nor does Deltek collect a commission for hardware sales by partners.  (K. Latkiewicz, 166:11-167:2.)  Deltek does not currently use the hardware form and has not in "over a year."  (K. Latkiewicz, 167:11-17.)  As with the hardware quote

form, the methodology form and maintenance form are both considered by Deltek to be "facing" forms—i.e. forms provided directly to customers. (K. Latkiewicz, 169:18-170:5; 171:14-172.) The maintenance form at issue is no longer in use by Deltek as its use was discontinued by Deltek in the summer of 2008. (K. Latkiewicz, 190:22-191:10.)

**B.    Deltek Employees and "Code Name"**

Defendants do not dispute the facts set forth in the corresponding portion of Deltek's Memorandum (¶¶ 81-82). Defendants dispute the facts set forth in the remaining paragraphs as set forth below.

83.    Paul Henning closed no deals for Iuvo. (E. Muldrow, 338:19-339:5; Paul Henning, 49:12-15.)

84-86.  Neither Kirk Cummins nor any other Deltek employee performed any services for Iuvo while employed by Deltek. (E. Muldrow, 343:15-21.)

**C.    Revenue Earned by Iuvo**

Defendants do not dispute the facts set forth in the corresponding portion of Deltek's Memorandum (¶ 87). Defendants dispute the facts set forth in the remaining paragraphs as set forth below.

88.    Through September 15, 2009, Iuvo has generated REDACTED in gross revenue from clients some of which may, or may not, be a Deltek client. (Exhibit 11.)

89.    Deltek has done little to determine if it could have done the work at issue. (K. Latkiewicz, 153:8-154:10.) More correctly, while some of the work performed by Iuvo *could* have been performed by Deltek, it could also have been performed by other third-parties. In addition to Iuvo and Deltek, there are companies which provide the same kind of services to Deltek customers which are not Deltek partners. (K. Latkiewicz, 86:16-87:7; 201:22-202:17.) While even some of

Deltek's third-party partners perform the same work as does Deltek, Deltek performed no analysis to determine which, if any, of Iuvo's customers would have contracted with Deltek as opposed to its own partners.  (K. Latkiewicz, 202:7-17.)  Additionally, Kim Latkiewicz testified that Deltek could not have performed any services for Grant Thornton, LLP, one of the clients serviced by Iuvo.  (K. Latkiewicz, 154:11-155:4.)

**D.    Defendants' Use of Deltek's Trademarks**

Defendants do not dispute the facts set forth in the corresponding portion of Deltek's Memorandum (¶¶ 91, 94-99, 101, 105-107, 109-112).  Defendants dispute the facts set forth in the remaining paragraphs as set forth below.

90, 92, 93. For the purposes of this motion, defendants do not contest Deltek's allegation.

100.    In addition, Paul Henning confirmed that Tom Truong provided him contact information for TerraHealth following TerraHealth's viewing of Iuvo's website.  (P. Henning, 40:22-41:14.)

102.    Deltek has not identified the basis for its contention.  Defendants are unable to determine which clients Deltek avers defendants have obtained through web leads.  Defendants do not dispute that they obtained certain clients via web leads but, to respond to Deltek's assertion, must be apprised of which entities Deltek asserts were obtained in this manner.

103.    More correctly, Mr. Rett Dallas of ETR received a direct solicitation on behalf of Iuvo and inquired of Deltek simply, "Is this related to our purchase?"  (Plaintiff's Ex. 28.)

104.    More correctly, a representative of            REDACTED[4] states, "Received a call from the below company stating that they have learned that we are going to acquire costpoint.  I thought it

---

[4]  During the Preliminary Injunction stage, the allegations of which are identical to the present allegations,    REDACTED    was referred to as "Corporation X."  The continued use of the designation "Corporation X" by Deltek reveals how little has been revealed in discovery and the continued reference serves little purpose.

most interesting that they knew about our pending acquisition since we have not discussed same outside of Deltek. … Do you or does Deltek know anything about this company?"  (Plaintiff's Ex. 29.)

108.    Though referred to by Deltek as a "puzzle piece," such a designation is a misnomer as the design is not a puzzle piece and is not similar to any mark or design of Iuvo.

113.    The redirection from installdeltek.com and installdeltek.net to IuvoSystems.com occurred only for a "short period."  (T. Truong, 128:19.)

## IV.    Muldrow's Missing Computer

Defendants do not dispute the facts set forth in the corresponding portion of Deltek's Memorandum (¶¶ 114-118).  However, Deltek omits certain key facts from its Statement, the absence of which provide an incorrect impression.  Ed Muldrow has provided a copy of the police report generated as a result of the robbery.  He has been advised by the police that the investigation into the robbery is ongoing.

## ARGUMENT

## I.    Deltek Cannot Establish its Trademark and Cybersquatting Claims

In present motion, Deltek wrongfully asserts that this "Court ruled that Deltek had sufficiently demonstrated a likelihood of confusion arising from: (1) defendants' use of Deltek's name and trademarks in the flashing banner on the Iuvo website; (2) the use of Deltek trademark[s] in metatags for Iuvo's website; and, (3) the use of the Deltek name in two of defendants' websites." (Memorandum in Support, p. 19.)  More correctly, defendants conceded for the purpose of the preliminary injunction that the use of Deltek's marks within metatags and the two domain names would be stopped as it is a "no-cost thing."

> THE COURT: What's your position on the cybersquatting, the InstallDeltek.com and
>    .net?
> MR. KREBS: What's our position?
> THE COURT: What's your position as to why those do not --

MR. KREBS: I'm going to cut to the chase, Your Honor.  <u>We'll be glad to sign them over to Deltek or do whatever Deltek wants to do with them. We're not using them, and so we don't need them, and so they can have them.</u>

THE COURT: All right. What about the meta tags?

MR. KREBS: Meta tags, Your Honor -- I believe the meta tags fall within the fair use, that they direct – they direct to the site, but the site that they direct to is a service site describing what our products are. <u>But again, candle is not worth the game. If they want us to eliminate the use of meta tags, we'll be glad to eliminate the use of meta tags.</u>

THE COURT: All right. Any other argument?

MR. KREBS: <u>It's a no-cost thing.</u>

THE COURT: All right.

(Tr. April 8, 2008, p. 94-95. (Emphasis Added.))

### A.    Deltek Cannot Establish Consumer Confusion

Defendants' limited concession at the preliminary injunction stage does not obviate Deltek's need to establish that a likelihood of confusion exists in order to succeed in its trademark claims.[5] *Carefirst of Maryland, Inc. v. First Care, P.C., et al.*, 434 F.3d 263, 267 (4th Cir. 2006), *citing*, 15 U.S.C. § 1114(1)(a)("To demonstrate trademark infringement under the Lanham Act, a plaintiff must prove, first, that it owns a valid and protectable mark, and, second, that the defendant's use of a 'reproduction, counterfeit, copy, or colorable imitation' of that mark creates a likelihood of confusion."); *Lone Star Steakhouse & Saloon Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 930 (4th Cir. 1995).  A likelihood of confusion exists if "the defendant's actual practice is likely to produce confusion in the minds of consumers about the origin of the goods or services in question." *George & Co., LLC v. Imagination Entertainment, Ltd.*, 575 F.3d 383, 393 (4th Cir. 2009), *citing*, *CareFirst*, 434 F.3d at 267. In assessing whether a likelihood of confusion exists, the Fourth Circuit looks "to how the two parties actually use their marks in the marketplace to determine whether the defendant's use is likely to cause confusion." Id.

---

[5] Defendants expressly adopt the arguments set forth in their Memorandum in regard to Deltek's obligation to establish consumer confusion and its failure to do so.

Despite Deltek's burden to establish a likelihood of confusion, Deltek admits that it has developed few facts since the preliminary injunction stage. (Memorandum, p. 19, providing that Deltek's limited argument only addresses "new" facts")  Neither then nor now has Deltek presented either survey evidence or any instance of actual confusion. *See*, *George & Co., LLC*, 434 F.3d at 398, *citing*, *Tools USA and Equip. Co. v. Champ Frame Straightening Equip., Inc.*, 87 F.3d 654, 661 (4th Cir. 1996)("Actual confusion can be demonstrated by both anecdotal and survey evidence.")  Indeed, the sole "new" evidence proffered by Deltek is Iuvo's gross revenues received from a "web lead" generated by a customer which "touched" Iuvo's website, www.IuvoSystems.com since the purported confusion by two recipients of a direct solicitation by Iuvo was raised at the preliminary injunction stage. (Memorandum in Support, pp. 19-20.)

Deltek proffers no evidence as to why any customer "touched" Iuvo's site.  Deltek does not indicate whether the customer located www.IuvoSystems.com because it performed a Google search for "Iuvo" or for "Deltek."  On the basis of the current evidence, one cannot determine whether an employee of the customer independently entered the Iuvo website address due to a referral obtained from a third-party.  Absent any evidence of how the web lead was generated, Deltek cannot demonstrate that the customer was confused by anything, much less that it was confused by Iuvo's use of any Deltek mark.  Deltek's conclusion that the customer must have been confused as to its marks is bare speculation.

Additionally, as to the confusion caused by Iuvo's direct solicitation, Deltek has proffered no evidence that any confusion was caused by any use of Deltek's mark, as opposed to confusion arising from the initiation of the solicitation by Iuvo itself.  For example, in the first purported instance, Mr. Rett Dallas of ETR received a direct solicitation on behalf of Iuvo and inquired of Deltek simply, "Is this related to our purchase?"  (Plaintiff's Ex. 28.)  As to the second purported instance, a

representative of REDACTED states, "Received a call from the below company stating that they have learned that we are going to acquire costpoint. I thought it most interesting that they knew about our pending acquisition since we have not discussed same outside of Deltek. … Do you or does Deltek know anything about this company?" (Plaintiff's Ex. 29.) In each of Deltek's exhibits, one cannot escape the conclusion that the customer is aware that Iuvo and Deltek are separate and unrelated companies.

Deltek fails to establish any confusion by ETR or REDACTED as to Iuvo's use of any of Deltek's marks. Whatever confusion ETR and REDACTED have purportedly suffered, if any, is were quite obviously due, if at all, to the direct solicitation by Iuvo and not any trademark usage. *Shakespeare Company v. Silstar Corporation of America, Inc.*, 110 F.3d 234, 239 (4th Cir. 1997)("A likelihood of confusion should not be inferred from proof that the actor intentionally copied the other's designation if the actor acted in good faith under circumstances that do not otherwise indicate an intent to cause confusion or to deceive."). Deltek's Motion for Summary Judgment as to Counts I through IV necessarily fails as Deltek cannot demonstrate any likelihood of confusion.

## B.    Deltek Cannot Establish Iuvo's Use of any Mark is Misleading (Lanham Act/ Unfair Competition (Count II)

Deltek similarly has failed to proffer any evidence demonstrating that Iuvo's use of Deltek's marks is, in any manner, misleading. *See*, 15 U.S.C. § 1125(a)(1)(B). Indeed, Ms. Latkiewicz confirmed that Deltek lacks any evidence regarding any claims that any customer was confused, mistaken or misled as to the source of Iuvo's goods or services as a result of any mark on Iuvo's website or its use of any metatags. (K. Latkiewicz, 175:12-176:7.)

As Count II, Lanham Act/Unfair Competition, of Deltek's Second Amended Complaint is predicated on misleading the "nature, characteristics, qualities, or geographic origin of [Iuvo's] goods,

15

services, or commercial activities," Deltek's unfair competition claim likewise fails as a matter of law. 15 U.S.C. § 1125(a)(1)(B); see also, defendants' Memorandum at pp. 20-21.

### C.    Deltek Cannot Establish Cybersquatting (Count IV)

As with Deltek's other trademark claims, Deltek relies only on the record before the Court during the preliminary injunction stage.  At that stage, as indicated *supra*, defendants determined it was a "no-cost thing" to simply not oppose the granting of the preliminary injunction.  However, such limited concession does not, in and of itself, entitle Deltek to summary judgment.

To succeed on its claim of summary judgment, Deltek must establish bad faith use of a domain name that is identical or confusingly similar to that mark. 15 U.S.C. § 1125(d)(1)(A); *People for the Ethical Treatment of Animals v. Doiughney*, 263 F.3d 359, 367 (4th Cir. 2001); *Venetian Casino Resort, LLC v. VenetianGold.com*, 380 F. Supp. 2d 737, 740 (E.D. Va. 2005).  However, Deltek cannot establish bad faith as no evidence exists regarding this element.  In fact, Tom Truong testified that the purpose of the domain names was to perform services in which Deltek was not interested:

> Q.    What was the purpose of these websites that you've named for me?
> A.    Well, the purpose of the Deltek hosting website was in the beginning I talked to my boss John Emory to see if Deltek would be interested in hosting their application. If they weren't, then my intent was if I ever decided I wanted to host it -- becoming a hosting partner of Deltek, then I would use those domains.
> Q.    What does that mean to become a hosting partner?
> A.    Similar to what TBS is doing now for Deltek, which is essentially setting up the infrastructure and hosting the Deltek application for Deltek's customer.

(T. Truong, 124:10-125:2)

Most significantly, Deltek offers no evidence that either site described in its Second Amended Complaint, "www.installdeltek.com" and "www.installdeltek.net", is owned by Iuvo.  After exhaustive discovery, it is apparent that neither site is owned by Iuvo, the only entity made a defendant by Count IV.  As such, Deltek's cybersquatting claim should be dismissed.

### D.      Deltek is unable to Establish Damages (Counts I, II, III and IV)

Deltek's entire claim for damages arising from its four trademark claims exists in a single sentence: "[t]hese undisputed facts demonstrate that defendants' misuse of Deltek's trademarks have, in fact, confused customers, and further, demonstrate that Deltek has suffered substantial monetary damage as a direct result of defendants' conduct."  (Memorandum, p. 20.)  While Deltek requests a trial on the quantification of damages, Deltek must first establish the existence of some quantifiable damage.  Absent proof of the existence of any damages, Deltek should be barred from proceeding beyond summary judgment.

Claims for damages arising from purported trademark violations must be causally related to the violations at issue. *Lumber Liquidators, Inc. v. Stone Mt. Carpet Mills, Inc.*, 2009 U.S. Dist. LEXIS 80370 *3 (E.D.Va. 2009), quoting, *Xoom, Inc. v. Imageline, Inc.*, 323 F.3d 279, 286 (4th Cir. 2003). "In *Xoom*, the court affirmed the granting of summary judgment against the defendant on a counterclaim for unfair competition under the Lanham Act because the record demonstrated 'no evidence that [the defendant] suffered actual damages." *Lumber Liquidators, Inc.* at *3, *quoting, Xoom, Inc.*, 323 F.3d at 286.

Absent a claim of any actual damage, Deltek cannot make its case that such damages are causally related to any purported trademark violation.  As such, Deltek's trademark claims fail.

## II.     Deltek Fails to Establish Breach of Contract and Interference with Contract (Counts V, VI, VII, VIII)

Deltek's argument establishes its own failure.  Deltek asserts that, "No matter how precise, or how narrow, the non-competition restriction possibly could have been written, there is no language that would not have covered what the defendants in this case are doing.  *Iuvo performs* the identical consulting and maintenance services that Deltek provides to its customers—on Deltek's proprietary software."  (Memorandum, p. 21 (Emphasis added).)  Deltek's focus on Iuvo's status as a competitor

fails to address the Virginia Supreme Court's concern regarding the reasonableness of restrictions placed on departing employees.

Covenants not to compete which prohibit employees from working in any capacity with a competitor—not just in a competing role—are greater than necessary to protect legitimate business interests. *Modern Environments, Inc. v. Stinnett*, 263 Va. 491, 495-96 (2002); *Motion Control Systems, Inc. v. East*, 262 Va. 33, 38 (2001); *Roto-Die*, 899 F. Supp. at 1520; *Nortec*, 548 F. Supp.2d at 230; *Lanmark*, 454 F. Supp.2d at 529-30. Where a covenant "could be read to prohibit any type of employment, even employment outside the scope of the work" done for the prior employer, the covenant is unenforceable. *Roto-Die*, 899 F. Supp. at 1520 (covenant unenforceable as it would prevent employee "from working in any capacity, including that of a janitor, for a 'Competitive Business'" although the employee was not seeking such a position.).

Deltek's focus on Iuvo's actions is misplaced and it fails to argue in any substantive manner that the non-competition agreements at issue are enforceable. Instead, Deltek just presumes their enforceability and begins to argue that defendants—again, in a collective manner where the actions of one defendant somehow overlap to include the actions of another independent defendant—breached the agreements. Deltek does not address the fact that key terms—such as "in competition with"—are nowhere defined in the agreements. Nor does Deltek address the fact that the agreements purport to bar competition against Deltek's subsidiaries and that even Kim Latkiewicz, Deltek's Vice-President of Global Services, was unable during the preliminary injunction to identify any subsidiaries but, later during deposition, Ms. Latkiewicz, now Deltek's Rule 30(b)(6) designee, was able to identify some of Deltek's subsidiaries but was unable to identify what certain subsidiaries did. (K. Latkiewicz, 77:18-78:1, stating "I don't know what [subsidiary WST Corp., acquired in the fall of 2006 is] being used for today.")

Further, Deltek does not address the facial invalidity of the various agreements as they expressly permit the courts to rewrite the parties' agreement. (See, Muldrow/Tom Truong Agreement and Levy/Hai Truong Agreement, ¶ 6; Lynn Varan Agreement, ¶ 3.5.)  The existence of a blue-pencil provision in the agreements purports to permit them to be altered in the future.  Such a future alteration fails to allow defendants, as of either the date signed or the date of termination, to adequately apprise them of what conduct is prohibited.

Regarding Deltek's legitimate business interest in a two (2) year restriction as provided in the Muldrow/Tom Truong Agreement, it is apparent that Deltek lacks any such legitimate interest.  Every new employee, including any persons retained to replace Ed Muldrow and Tom Truong would have been required to execute the Deltek standard form agreement used in 2008 which provides for only a one (1) year restriction.  (K. Latkiewicz, 79:4-16; Exhibit 12.)  Deltek's voluntary switch to a one (1) year restriction for all employees demonstrates Deltek's concession that two (2) years is greater than necessary to protect its legitimate interests.

Most surprising in Deltek's motion is the fact that Deltek fails to address any proper measure of damages.  Deltek merely provides a rounding-off of Iuvo's gross receipts and fails to demonstrate that any portion of Iuvo's gross receipts represents harm to Deltek.

For the breach of a non-competition agreement, the proper measure is "the diminution in value of the business by reason of the wrongful act, measured by the loss of the usual profits from the business." *Saks Fifth Avenue, Inc. v. James, Ltd.*, 272 Va. 177, 188 (2006).  In establishing contract-based damages, plaintiff "must prove two primary factors relating to damages.  First, a plaintiff must show a causal connection between the defendant's wrongful conduct and the damages asserted.  Second, a plaintiff must prove the amount of those damages by using a proper method and factual foundation for calculating damages." *Saks Fifth Avenue*, 272 Va. at 188.  Defendant's profits, if any,

19

are not relevant in determining a plaintiff's contract-based damages. *JTH Tax, Inc. v. Lee*, 514 F.Supp. 2d 818, 825, n. 9 (E.D.Va. 2007); *Western Insulation, L.P. v. Moore*, 242 Fed.Appx. 112, 119 (4th Cir. 2007).

Deltek concludes, without any evidentiary basis, that one-hundred percent of Iuvo's gross receipts constitutes the harm incurred by Deltek. Deltek has failed to establish any causal relationship between Iuvo's gross receipts and the harm purportedly suffered by Deltek. Further, Deltek has utterly failed to prove the amount of any purported damage by any proper method.

### III.    Deltek is Unable to Establish Interference with Expectancy (Count IX)

In its Memorandum, Deltek fails to identify any particular expectancy with which defendants purportedly interfered but, instead, baldly claims that Iuvo has generated income from unidentified customers, "all of which was work that Deltek would have been interested in, and capable of, performing and otherwise would have expected to perform." (Memorandum, p. 24.) In support of this broad-brush allegation, Deltek directs this Court to pp. 153 and 201 of Kim Latkiewicz's deposition. However, in those pages—indeed, in the entirety of the transcript—Ms. Latkiewicz provides no basis for her bare conclusion. [6] Ms. Latkiewicz did little to determine if Deltek could have done the work at issue:

REDACTED

---

[6] In fact, Kim Latkiewicz testified that Deltek would not have performed any services for Grant Thornton, LLP, one of the clients serviced by Iuvo. (K. Latkiewicz, 154:11-155:4.)

REDACTED

(K. Latkiewicz, 153:8-154:10.)

Moreover, while some of the work performed by Iuvo *could* have been performed by Deltek, it could also have been performed by other third-parties.  In addition to Iuvo and Deltek, there are companies which provide the same kind of services to Deltek customers which are not Deltek partners.  (K. Latkiewicz, 86:16-87:7; 201:22-202:17.)  While even some of Deltek's third-party partners perform the same work as does Deltek, Deltek performed no analysis to determine which, if any, of Iuvo's customers would have contracted with Deltek as opposed to its own partners.  (K. Latkiewicz, 202:7-17.)

As for the allegations regarding p. 201 of Ms. Latkiewicz's transcript, she merely reaffirms that she has no factual basis for her assertion and that she performed no analysis for her conclusion:

REDACTED

21

REDACTED

(K. Latkiewicz, 201:8-203:4.)  Moreover, Ms. Latkiewicz performed no analysis to determined what work, if any, Deltek would have performed as opposed to being performed by its partners or third-party competitors.

Deltek simply fails to identify any particular customer with which any defendant has interfered.[7]  Deltek's broad-brush allegations do not match with the testimony actually given and cannot stand up to the strict summary judgment requirements.  Deltek's motion should be denied.

### IV.    Deltek Cannot Establish Breach of Fiduciary Duty (Count X)

Prior to resignation, employees are entitled to make arrangements to compete with their employer.  *Feddeman & Co., C.P.A., P.C. v. Langan Assoc., P.C.*, 260 Va. 35, 42 (2000)(finding breach of fiduciary duty where actions of "devastating" en masse resignation were designed to cripple former employer.)  Forming a new entity for purposes of competition, preparing to open competing business and "agreeing to employ the dissatisfied employees" of the former employer do not rise to the level of breach of fiduciary duty.  *Deepwood Veterinary Clinic v. Sabo*, 45 Va.Cir. 508 (Fairfax, 1998).

Deltek claims in its Memorandum that defendants—again, apparently collectively—"have engaged in numerous acts that breached their fiduciary duties to Deltek."  (Memorandum, p. 25.)  In identifying particular acts undertaken by particular defendants, Deltek fails to identify any act undertaken by Lynn Varan to support its claim that she breached her fiduciary duties.

---

[7] *See also*, defendants' Memorandum in Support of Motion for Summary Judgment, pp. 27-30 regarding Deltek's lack of any damages.

As with the allegations during the preliminary injunction stage—many of which have not been supported with sufficient facts despite lengthy discovery—Deltek's accusations and innuendo overwhelm the substance of the evidence.  At this stage, however, the Court has the benefit of knowing the possible universe of evidence as Deltek has now identified each of its potential trial exhibits.  Of the voluminous discovery exchanged—Deltek provided in excess of 120,000 pages of documents and defendants provided in excess of 32,000 electronic files—Deltek has identified few it deems are significant.  While Deltek claims that information was destroyed by defendants, it has made no identification of what was purportedly destroyed though it necessarily must know what information defendants could have possessed and what information Deltek currently possesses.  If information is missing, Deltek could simply determine what it actually has from the information that it should have and identify the missing components, if any.  Instead, Deltek has merely relied on vague unsupported allegations.

While a duty may exist, it is "elementary" that an essential element of a breach of fiduciary duty claim is that there be "some reasonable connection between the act or omission of the defendant and the damage which the plaintiff has suffered."  *Red Cardinal Fifteen, Inc. v. Lange*, 1997 U.S. App. LEXIS 1411, *11 (4th Cir. 1997).  Undertaking mere preparations to leave has caused no harm to Deltek and, as the testimony regarding the "Opportunities" spreadsheet uniformly provides that the document was simply not used by defendants, Deltek can identify no document which was wrongfully obtained or used by defendants.  Deltek is unable to demonstrate the existence of any damage or any causal link between any damage to any action of any defendant.  Deltek's motion should be denied.

## V.    Deltek Cannot Establish Conspiracy (Count XII and XIII)

"The mere existence of an unlawful agreement does not support a civil conspiracy action. An overt act must be present to serve as the source of the plaintiff's injury. The overt act must be

unlawful. This requirement stems from the necessity that the injury arise from an overt act and that recovery in tort is for injuries arising from the unlawful act." *Virginia Heartland Bank v. Roberts*, 46 Va. Cir. 71, 74 (Spotsylvania, 1998).

Deltek identifies limited facts which it asserts is the factual predicate to its conspiracy claims. (*See*, Memorandum, p. 27.)  Indeed, Deltek alleges no facts regarding any conspiracy involving Lynn Varan and, as to Hai Truong, alleges only singular action not involving any other individual (i.e. the purported destruction of data while employed by Deltek).  As to concerted action between the remaining defendants, Deltek alleges the use of forms by Sandy Levy and "other defendants" which were purportedly copied from Deltek without identifying any such forms and the actions of Tom Truong and Ed Muldrow in deleting the information contained on Ed Muldrow's Deltek-issued laptop and preparing to perform work with ATK while Muldrow was employed at Deltek.  (Memorandum, p. 27.)

As Deltek has not identified any form which was a trade secret of Deltek or which was wrongfully misappropriated by any defendant, the possession of forms by defendants cannot form the basis of a conspiracy claim.  "There can be no conspiracy to do an act which the law allows." *Hechler Chevrolet, Inc. v. General Motors Corp.*, 230 Va. 396, 402 (Va. 1985).  As to the possession of forms by defendants—such forms being addressed explicitly in defendants' Memorandum, pp. 22-25 as either non-proprietary or simply not used—the mere possession is not a wrongful act and cannot serve as the factual predicate for conspiracy.

Preparing to leave the employ of Deltek and perform services for another entity is likewise not unlawful.  *See*, *Feddeman*, 260 Va. 35 and *Deepwood Veterinary Clinic*, 45 Va.Cir. 508.  As the underlying action is not unlawful, concerted action to accomplish it cannot form the basis of a conspiracy.

Regarding purported destruction of information, Deltek likewise fails to demonstrate entitlement to summary judgment.  Despite exhaustive discovery, Deltek is unable to identify any information which was actually destroyed by the actions of Hai Truong, Tom Truong and Ed Muldrow, either individually or collectively.  (See, e.g., T. Truong, 20:6-12, providing that no Deltek information was destroyed as "[a]ny relevant business information -- Deltek business-related information is contained in my email." and H. Truong, 47:20-48:11.)  Deltek has not demonstrated that the reformatting of defendants' respective Deltek-issued hard drives—whether done to protect personal data as in the case of Tom Truong and Ed Muldrow or done at a moment of frustration from being terminated as in the case of Hai Truong—has caused a loss of any information to Deltek.  To the extent that any materials were lost, Deltek has not demonstrated that what was lost was its property as opposed to the property of Deltek's clients.

## VI.    Deltek Cannot Establish Conversion (Count XV)

A fundamental element of conversion in the Commonwealth is deprivation of the item from its rightful owner.  *Daisuke Enomoto, v. Space Adventures, Ltd.*, 2009 U.S. Dist. LEXIS 18641 *32 (E.D. Va. 2009); *see also United Leasing Corp. v. Thrift Ins. Corp.*, 247 Va. 299 (1994).  For that reason, copies of electronic data cannot be the basis for conversion as long as the data remains with its owner. To conclude otherwise would render, for example, the photocopying of a paper as the basis of a conversion. A "cause of action for conversion does not encompass claims for interference with undocumented intangible property rights."  *United Leasing Corp.*, 247 Va. at 305 (holding that purported right asserted was an undocumented intangible property right and, thus, not enforceable under a claim of conversion.)

Deltek's attempt to surmount that fundamental proposition by citing to *Combined Ins. Co. of America v. Wiest*, 578 F.Supp.2d 822 (W.D.Va. 2008) is flawed.  Importantly, *Wiest* extends Virginia

law farther than the Virginia Supreme Court, or any circuit court, has ever gone or has signaled it would go. *Wiest* accomplishes this extension by relying solely on one limited portion of a longer oft-cited quote from *United Leasing Corp. v. Thrift Ins. Corp.*, 247 Va. 299, 305 (1994). The *Wiest* Court cites *United Leasing* for the proposition that "courts have recognized the tort of conversion in cases where intangible property rights arise from or are merged with a document." *Wiest*, 578 F.Supp.2d at 835.[8] However, the phrase cited by *Wiest* is fully, "courts have recognized the tort of conversion in cases where intangible property rights arise from or are merged with a document, *such as a valid stock certificate, promissory note, or bond*." *United Leasing Corp.*, 247 Va. at 305 (emphasis added.)

*Wiest* relies solely on its interpretation of *United Leasing Corp*. and the only case since *Wiest* is *Kolon Industries* which relied solely on *Wiest*. No Virginia state authority exists supporting this position.[9] Dropping the limitation stated by the Virginia Supreme Court renders *Wiest* unsupported by Virginia law and its wrong holding should not be advanced by this Court.

Misplaced reliance on *Wiest*'s overextended holding does not leave truly aggrieved plaintiffs without a remedy. Contrary to *Wiest*, interference with rights in intangible property cannot form the basis of a conversion claim but may, under some circumstances, form the basis of the cause of action of trespass to chattels. "A trespass to chattels occurs when one party intentionally uses or intermeddles with personal property in rightful possession of another without authorization." *America Online, Inc. v. LCGM, Inc.*, 46 F.Supp.2d 444 (E.D.Va. 1998)(Lee, J.); *Arias v. Jokers Wild, Inc.*, 73 Va.Cir. 281, 301 (Fairfax, 2007); *see Vines v. Branch*, 244 Va. 185, 190 (1992)(identifying potential causes of action which could be brought under proper conditions as trespass, trover, detinue, or

---

[8] A second federal case cited by Deltek, *E.I. DuPont De Nemours and Co. v. Kolon Industries, Inc.*, 2009 U.S.Dist. LEXIS 76795 (E.D.Va. 2009) relies on *Wiest* for the same proposition. However, exactly as *Wiest*, *Kolon Industries* relies upon the same misquoted portion of *United Leasing Corp.*

[9] As recognized in *Kolon Industries*, on August 27, 2009, the "courts in Virginia have not yet addressed the issue of whether the possession of 'copies' of documents can constitute conversion." *Kolon Industries, Inc.*, 2009 U.S.Dist. LEXIS 76795, * 25.

assumpsit.)   In *LCGM, Inc.*, this Court granted summary judgment to an internet service provider against a defendant who used the provider's computer system to forward spam without authorization.

Deltek alleges, at most, a claim of trespass to chattels but it has not pled any such cause of action.  Deltek has pled conversion but is unable to support this claim as Deltek has failed to identify any tangible property misappropriated by any defendant or any intangible property right merged with any document such as "a valid stock certificate, promissory note, or bond."  As such, Deltek's motion fails.

**VII.    Deltek Cannot Establish its Virginia Trade Secrets Act Claim (Count XVI)**

Pursuant to the Virginia Uniform Trade Secrets Act, Va. Code § 59.1-336, et seq., misappropriation of a trade secret may be enjoined and/or be the predicate for an action for damages.  Va. Code § 59.1-337, et seq.  The statutory definition of "misappropriation," requires either wrongfully acquiring or use of a trade secret. Va. Code § 59.1-336.

"Trade secret" is defined as information that "1.  Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper by means, other persons who can obtain economic value from its disclosure or use, and 2.  Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."  Va. Code § 59.1-336.  "The crucial characteristic of a trade secret is secrecy rather than novelty." *Dionne v. Southeast Foam Converting & Packaging, Inc.*, 240 Va. 297, 302 (Va. 1990).

Deltek, in order to succeed in its trade secrets claim, must identify a particular trade secret—something that was, in fact, actually secret—which was either wrongfully acquired or used.  In its failed effort to establish its trade secrets claim, Deltek identifies a single document—the "Opportunities" spreadsheet—and a vague allusion to "a large number of Deltek implementation and

upgrade manuals" and "more than 1000 documents" without actually identifying them or proffering any such document with its Memorandum.

As Deltek bears the burden of establishing that the purported trade secret is a trade secret, its vague reference to "more than 1000 documents" and "a large number of" manuals necessarily fails. If Deltek could point to any particular purported trade secret, it was obligated to do so in its Memorandum and not engage in a game of "gotcha" in which it attempts to shift the burden to defendants to divine to which document(s) Deltek asserts rights as a trade secret.

As to the "Opportunities" spreadsheet, the single document actually identified by Deltek in its Memorandum, Deltek's position is unsupported. Ed Muldrow obtained the document while employed by Deltek and within the scope of his employment. As such, the document was not misappropriated by Ed Muldrow. No evidence exists demonstrating that the document was ever used by anyone. (E. Muldrow, 326:16-327:1; 334:7-14; P. Henning, 76:6-77:8.)

Moreover, Deltek has failed to demonstrate any recoverable damages. While a trade secrets claim may be based on a defendant's profits, a successful plaintiff must demonstrate some causal relationship between the profits derived and the purported wrongful conduct.

Deltek's argument regarding damages also suffers from the same fatal defect as did the plaintiff in *Western Insulation, L.P. v. Moore*, 242 Fed.Appx. 112, 119 (4th Cir. 2007): Deltek is unable to establish that any client of Iuvo's would have contracted with Deltek but for Iuvo's competition. (K. Latkiewicz, 201:8-203:4.) In fact, Deltek did little to determine if it could have done the work at issue. (K. Latkiewicz, 153:3-154:10.) Deltek has not performed any analysis regarding what lost business is attributable to Iuvo. (K. Latkiewicz, 97:8-98:1; 112:1-22.)

In addition to Iuvo and Deltek, there are companies which provide the same kind of services to Deltek customers which are not Deltek partners. (K. Latkiewicz, 86:16-87:7; 201:22-202:17.) While

even some of Deltek's third-party partners perform the same work as does Deltek, Deltek performed no analysis to determine which, if any, of Iuvo's customers would have contracted with Deltek as opposed to its own partners.  (K. Latkiewicz, 202:7-17.)

Absent identification of any document which constitutes a trade secret that was either misappropriated or used by any defendant, Deltek is unable to establish liability.  Moreover, even presuming it did identify any such document, which it has not done, Deltek has filed to establish any damages related to any misappropriation or use.

## CONCLUSION

On the basis of the foregoing, Defendants Iuvo Systems, Inc., Edward Muldrow, Tom Truong and Lynn Varan respectfully request that this Court deny Deltek's Motion for Summary Judgment and grant them any further relief deemed just and proper.

Respectfully submitted,

/s/ *Michael R. Abejuela*
William F. Krebs, Esquire
Virginia Bar No. 17347
Christopher A. Glaser, Esquire
Virginia Bar No. 43491
Michael R. Abejuela, Esquire
Virginia Bar No. 65199
*Attorney for Defendants Iuvo Systems, Inc.,   Edward Muldrow, Tom Truong, Sandy Levy, Hai Truong and Lynn Varan*
BEAN, KINNEY & KORMAN, P.C.
2300 Wilson Blvd., Seventh Floor
Arlington, VA 22201
Phone:   703-525-4000
Fax:      703-525-2207

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th Day of October, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will then send a notification of such filing to the following:

Charles B. Wayne, Esquire
Virginia Bar No. 24954
Jamie Moses Konn, Esquire
Virginia Bar No. 73113
*Attorneys for Plaintiff Deltek, Inc.*
DLA Piper US LLP
500 Eighth Street, NW
Washington, DC 20004
Phone: (202) 799-4000
Fax:    (202) 799-5257
Email: charles.wayne@dlapiper.com
         jamie.konn@dlapiper.com

And I hereby certify that I will serve via electronic mail, the following non CM/ECF participant:

Elisha A. King, Esquire
Attorney for Plaintiff Deltek, Inc.
DLA Piper US LLP
500 Eighth Street, NW
Washington, DC 20004
Phone: (202) 799-4000
Fax:    (202) 799-5258
Email: elisha.king@dlapiper.com

/s/ *Michael R. Abejuela*
Michael R. Abejuela, Esquire
Virginia Bar No. 65199
*Attorney for Defendants Iuvo Systems, Inc.,*
*Edward Muldrow, Tom Truong, and Lynn Varan*
BEAN, KINNEY & KORMAN, P.C.
2300 Wilson Blvd., Seventh Floor
Arlington, VA 22201
Phone:   703-525-4000
Fax:       703-525-2207
mabejuela@beankinney.com