UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |  |
|---|---|---|
| DELTEK, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:09-cv-330 AJT/JFA |
| | ) | |
| IUVO SYSTEMS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION
## TO MOTION FOR SUMMARY JUDGMENT

Charles B. Wayne (VSB # 24954)
Elisha A. King (admitted *pro hac vice*)
Jamie M. Konn (VSB # 73113)
DLA Piper LLP (US)
500 Eighth Street, NW
Washington, D.C. 20004
(202) 799-4000
(202) 799-5000 [fax]
charles.wayne@dlapiper.com
elisha.king@dlapiper.com
jamie.konn@dlapiper.com

*Counsel for Plaintiff*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

RESPONSE TO STATEMENT OF FACTS ...................................................................... 2

I.    Deltek and Iuvo ........................................................................................................ 2

II.    The Individual Defendants ...................................................................................... 2

     A.    Tom Truong ................................................................................................. 2

     B.    Edward Muldrow ........................................................................................ 3

     C.    Sandra Levy ................................................................................................ 4

     D.    Hai Truong .................................................................................................. 4

     E.    Lynn Varan ................................................................................................. 5

III.    Further Unlawful Conduct ...................................................................................... 5

     A.    Critical Documents Stolen from Deltek and Shared Within Iuvo ........................ 5

     B.    Recruitment of Deltek Employees and Suggested Use of a "Code Name" ........... 6

     C.    Revenue Earned by Iuvo from Deltek Customers ................................................. 6

     D.    Defendants' Use of Deltek's Trademarks ............................................................. 6

IV.    Muldrow's Missing Computer ................................................................................. 7

ARGUMENT ..................................................................................................................... 7

I.    Deltek is Entitled to Summary Judgment on its Trademark,
Unfair Competition, and Cybersquatting Claims (Counts I - IV) ........................ 7

II.    Deltek is Entitled to Summary Judgment on its Breach of Contract Claims
(Counts V - VII(B)) ................................................................................................ 9

III.    Deltek is Entitled to Summary Judgment on its Tortious Interference
with Contracts Claims (Count VIII) ....................................................................... 10

IV.    Deltek is Entitled to Summary Judgment on its Tortious Interference
with Business Relations and Business Expectancy Claims (Count IX) ................. 10

V.      Deltek is Entitled to Summary Judgment on its Breach of Fiduciary Duty
        Claims (Count X)........................................................................................... 12

VI.     Deltek is Entitled to Summary Judgment on its Statutory and Common Law
        Civil Conspiracy Claims (Counts XII - XIII)................................................ 13

VII.    Deltek is Entitled to Summary Judgment on its Conversion Claims (Count XV) ........... 14

VIII.   Deltek is Entitled to Summary Judgment on its Claims for Violation
        of the Virginia Uniform Trade Secrets Act (Count XVI) ............................... 16

CONCLUSION ............................................................................................................... 17

## INTRODUCTION

In their opposition to Deltek's motion for summary judgment, defendants have not challenged the core facts upon which Deltek's motion rests. Defendants claim that Deltek's case rests only on "bare assertion,"[1] but their position defies logic. All of the key facts remain undisputed, as defendants admit that they:

(1) destroyed Deltek's electronic data prior to resigning from Deltek;

(2) took confidential documents from Deltek;

(3) used Deltek documents to perform competitive work on behalf of Iuvo;

(4) solicited Deltek employees;

(5) tried to obtain information from inside Deltek, even discussing the use of a "code name" so as not to be detected by Deltek;

(6) used Deltek's trademarks on the Iuvo website, and in metatags for the website, to re-direct customers who were searching the Internet for Deltek; and

(7) took business from at least 30 Deltek customers, resulting in hundreds of thousands of dollars in revenue for Iuvo.

These facts, alone, establish Deltek's entitlement to summary judgment, and not one page of defendants' opposition contradicts that any of these acts occurred.

In this reply, Deltek does not repeat the arguments that already have been fully briefed in connection with the parties' cross motions for summary judgment. Instead, Deltek addresses only (a) defendants' failure to dispute the material facts; and (b) the small number of new legal arguments made by defendants. In sum, defendants' opposition creates no hurdle to holding all five of the individual defendants, and their employer Iuvo Systems, Inc. ("Iuvo"), liable as a matter of law for engaging in, and profiting from, their collective wrongdoing against Deltek.

---

[1] *See* Defs.' Opp. to Pl.'s Mot. for Summ. J. ("Defs. Opp.") at 1.

**RESPONSE TO STATEMENT OF FACTS**

In defendants' response to the statement of material undisputed facts set forth by Deltek, they fail to raise any genuine disputes. Instead, defendants repeatedly introduce tangential facts, following the phrase, "More correctly, . . . " In most instances, they simply provide details regarding their misconduct, rather than challenging the fact that the misconduct occurred. It is a bizarre approach that does not help defendants' position.

**I.    Deltek and Iuvo**

Defendants do not dispute Deltek's description of its business or Iuvo's, but they add a rambling quote from Paul Henning, a person who was employed by Iuvo for only a few months, to claim that in one sales pitch meeting, a customer expressed a desire to have Iuvo act as a "customer representative" while consulting services were being provided by Deltek. Defs. Opp. 2. Given the defendants' repeated admissions that Iuvo does not act as a customer representative for ongoing Deltek customers, but instead, competes with Deltek to offer maintenance and consulting services on Deltek's proprietary software, this quote adds nothing and certainly does not create a dispute of fact. *See id.*; Truong Dep. 69.

**II.    The Individual Defendants**

**A.    Tom Truong**

Deltek stated that Truong advised customers that he was going to "try going independent." Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl. Mem.") at 3, ¶ 9. Defendants respond as follows: "More correctly, Tom Truong testified that he had forwarded to 'maybe 10 customers' an email which stated that he was 'going out on my own and providing technical service offering.'" Defs. Opp. 3, ¶ 9. Defendants' response does not undermine Deltek's point that Truong solicited Deltek customers – it merely adds details of how he did it.

Similarly, defendants detail *how* Truong used Deltek documents, without disputing that he did so. *Id.* ¶¶ 10, 11, 15. They make a legal argument regarding the Deltek customer contacts that Truong took, without disputing that he took them. *Id.* ¶ 12. They do not dispute that Truong erased all Deltek business data from his laptop, but contend that Deltek could have found it by searching his company e-mail. *Id.* ¶ 13.

## B. Edward Muldrow

With regard to Muldrow, defendants fail to respond to most of the facts alleged by Deltek, and instead add a few irrelevant facts. Defs. Opp. 4, ¶¶ 19-22. In response to Deltek's contention that Muldrow forwarded to his personal e-mail documents related to Deltek customer ATK, defendants state that the documents were "ATK-created," as if that would, if true, change the fact that Muldrow possessed them only by virtue of his Deltek employment. *Id.* ¶ 23. Defendants do not dispute that an Iuvo e-mail account was established for Muldrow while he was still employed by Deltek, but instead state that it was created through "the hopeful preparations of Tom Truong." *Id.* ¶ 24. They do not dispute that Truong wiped Muldrow's computer of business data, but claim only that Truong didn't know what was on it – even though he did know it was Muldrow's work computer. *Id.* ¶ 25-29.

With respect to ATK, defendants do not dispute that (a) ATK is a Deltek customer; (b) while Muldrow was still employed by Deltek, Muldrow and Truong discussed bringing ATK business to Iuvo; (c) while Muldrow was still employed by Deltek, Muldrow discussed with ATK bringing ATK business to Iuvo; and (d) Muldrow attended a meeting at ATK on the Wednesday immediately following his Monday resignation from Deltek. *See* Pl. Mem. 5-6, ¶¶ 23, 30, 32, 33, 35; Defs. Opp. 4-6. Defendants merely quibble with the word "taken" to describe the ATK business that Muldrow undisputedly brought to Iuvo. Defs. Opp. 5, ¶ 30.

They note that Muldrow took ATK documents from Deltek "for the purpose of resolving an outstanding issue" – but they do not dispute that he took the documents, without permission from Deltek.  *Id.* ¶ 33.  They also state that Muldrow's decision to attend a Wednesday meeting at ATK, immediately following his Monday resignation from Deltek, was not made until after he had resigned – which is immaterial, given his admission that he had discussed Iuvo working for ATK with both an ATK representative and Truong while he was still with Deltek.  *Id.* ¶ 35.

### C.    Sandra Levy

With respect to Levy, defendants do not dispute the material facts asserted about her, but again, add extraneous detail.  They describe her understanding of her non-competition provision of her Deltek contract, which Deltek did not address, so defendants' description creates no dispute of fact.  *Id.* ¶ 40.

As they did with Truong, defendants explain *how* Levy used Deltek documents to perform work for another company without disputing that she did so, and characterize the comparison between Deltek and Iuvo documents as having "limited similarities," without disputing that Levy – who was responsible for contract drafting at Deltek – admitted that some Iuvo documents appeared to her to be the same as, or similar to, Deltek documents.  *Id.* ¶¶ 41, 48.

### D.    Hai Truong

Defendants similarly do not dispute any material facts relating to Hai Truong.  They describe his understanding of his non-compete agreement in the same manner as described by Deltek.  *Id.* ¶ 53, 57.  They detail *what* Deltek materials Hai Truong "disposed," without disputing that he did so.  *Id.* ¶ 54.  They claim that Hai Truong "reformatted" the hard drive on his Deltek computer to remove personal data, without disputing his admission that he did so

because he was "pissed off" and specifically wanted to deprive his supervisor from having access to the consultant reports he had written, as a way to "get back" at him. *Id.* at 7, ¶ 55.

### E.    Lynn Varan

With respect to Varan, defendants only insert new facts, rather than addressing those facts upon which Deltek's motion relies, and argue about them. This response does not create a dispute of material fact.

## III.    Further Unlawful Conduct

### A.    Critical Documents Stolen From Deltek and Shared Within Iuvo

Defendants do not dispute the fact that they took documents from Deltek – including the Sales Opportunity Spreadsheet downloaded by Muldrow and shared with other defendants – but they claim not to have used that particular document (other than Muldrow, Truong, and Paul Henning viewing its contents). Defs. Opp. 8-9, ¶¶ 70-74. Importantly, defendants' assertion is "supported" only by reference to deposition testimony from Muldrow and Henning – there is no response to Deltek's citation to Truong's deposition, in which he admitted that (1) he, Muldrow, and Henning "looked at [the spreadsheet]" and "contemplated" it; and (2) the information contained on the spreadsheet was of interest to Iuvo because it revealed the identity of customers that had just purchased or were about to purchase Deltek software. Pl. Mem. 11-12, ¶ 73 (citing Troung Dep. 241, 244).

For purposes of summary judgment, Deltek does not assert that defendants used the Sales Opportunity Spreadsheet in a manner other than reading it and sharing it among themselves; thus, there is no dispute of material fact related to the Sales Opportunity Spreadsheet. *See* Pl. Mem. 11-12, ¶¶ 70-76.

Even if defendants' argument that some Iuvo documents contain Deltek metadata because Levy retained her Deltek computer were logical (*see* Def. Opp. ¶ 79), that does not

create a dispute regarding the 778 other documents in defendants' possession that did not come from Levy's computer, and also contain Deltek metadata. *See* Pl.'s Opp. to Defs.' Mot. for Summ. J. ("Pl. Opp.") at 19-20, n.10.

Similarly, defendants' characterization of some stolen Deltek documents as no longer in use by Deltek does not create a dispute of fact regarding defendants' taking of the documents without permission and using them to perform Iuvo business. *See* Defs. Opp. 9, ¶ 80.

### B.     Recruitment of Deltek Employees and Suggested Use of a "Code Name"

Not surprisingly, defendants offer no dispute regarding their discussion of obtaining inside information from a then-current Deltek employee, and Muldrow's suggestion that they use a "code name" to hide the activity from Deltek. *See* Defs. Opp. 10. Their assertion that the identified individuals did not perform any services for Iuvo – for which they cite only Muldrow's deposition and no representation by any other defendant – does not create a dispute of any facts asserted by Deltek. *Id.* ¶¶ 83, 84-86.

### C.     Revenue Earned by Iuvo from Deltek Customers

Defendants' responses to Deltek's facts are argument, not disputes of fact. *See* Defs. Opp. 10.

### D.     Defendants' Use of Deltek's Trademarks

Defendants do not establish any genuine dispute of the facts alleged by Deltek. Their assertion that Deltek failed to identify which customers were obtained by web leads in Paragraph 102 is disingenuous; Deltek cited numerous deposition transcript pages in Paragraph 101, in which Muldrow and Truong explain which of their clients were obtained through web leads. *See* Defs. Opp. 11; Pl. Mem. 16, ¶ 101.

Defendants' quotation from the e-mails that were already attached as exhibits to Deltek's memorandum creates no dispute of fact. Defs. Opp. 11-12, ¶¶ 103-04. Whether Deltek's use of the term "puzzle piece" is a "misnomer" also is irrelevant; the point is the shape of the image and its similarity to the shapes used on Iuvo's website. Defs. Opp. 12, ¶ 108.

The fact that Internet users were re-directed from installdeltek.com and installdeltek.net to Iuvosystems.com "only for a 'short period'" does not create a dispute that the re-direction did in fact occur. *Id.* ¶ 113.

## IV.    Muldrow's Missing Computer

Defendants do not dispute any of the facts related by Deltek – including (1) the fact that Muldrow's computer was allegedly stolen just days before it was to be searched for discovery in this case; (2) the fact that Muldrow claims the thieves used his car keys to steal a computer bag from the trunk of his car, without taking the car; or (3) the fact that Muldrow claims the computer must have been stolen during the night following the initial robbery, *after* the thieves had already left the crime scene once, and *after* the police had arrived to take a report. Pl. Mem. 18, ¶¶ 114-18. Defendants note only that Muldrow produced a police report from the incident. Defs. Opp. 12.

## ARGUMENT

## I.    Deltek Is Entitled to Summary Judgment on its Trademark, Unfair Competition, and Cybersquatting Claims (Counts I - IV).

Deltek's claims for trademark infringement, unfair competition, and cybersquatting are based on defendants' use of Deltek's trademarks on the Iuvo website, in metatags for the Iuvo website, and in four domain names, deltekhosting.com and .net and installdeltek.com and.net.

Defendants do not dispute that they used Deltek's trademarks to lure customers who were searching the Internet for Deltek to the Iuvo website; rather, they state only that the "redirection"

to Iuvo's website from the domain names they established occurred for just a "short period." Defs. Opp. 12, ¶ 113.

Strangely, defendants quote from their counsel's interaction with the Court at the preliminary injunction hearing to dispute Deltek's characterization of the Court's ruling. They contend that the Court granted injunctive relief to Deltek only because defense counsel volunteered that his clients would stop the offending conduct, and that Deltek "wrongfully asserts that this Court ruled that Deltek had sufficiently demonstrated a likelihood of confusion" arising from their use of Deltek trademarks. Defs. Opp. 12-13.

If defendants had actually read the Court's April 8, 2009 Order, they would have seen that Deltek properly represented the Court's ruling. The Order states as follows (in part):

> The Court concludes that Defendant's use of Deltek's name and trademarks in the flashing banner on the Iuvo website creates a likelihood of confusion.
>
> . . . .
>
> Th[e] use of Deltek's trademarks as metatags may cause a consumer to believe that Iuvo is affiliated with or related to Deltek and may therefore constitute an improper attempt to trade on the commercial value associated with the marks. The Deltek name and trademarks are not merely being used in a descriptive fashion but in a manner that may lead to customer confusion.
>
> . . . .
>
> Thus, Plaintiff has made a sufficient showing at this stage of the proceedings that this use of Deltek's trademarks creates a likelihood of confusion.

Order of April 9, 2009 at 14-15.

These findings by the Court led to its issuance of a preliminary injunction against the defendants. *Id.* Defendants' statement that Deltek "wrongfully" portrayed the Court's order is incorrect.

Defendants' claim that "Deltek proffers no evidence as to why a customer 'touched' the Iuvo website," is also false. *See* Defs. Opp. 14. Deltek submitted evidence on this point from Muldrow and Truong, who listed all of the customers that they received through what they called "web leads." Pl. Mem. 16, ¶ 101. Muldrow and Truong explained *their* belief that these customers clicked on the Iuvo website after searching the Internet for Deltek, and how Truong tracked these customers' Internet IP addresses, and performed a "reverse lookup" so that Muldrow could solicit them. Pl. Mem. 16-17, ¶¶ 96-102. Defendants' contention that "one cannot determine" whether these customers came to Iuvo through a third-party referral or through Internet searches by customers looking for Deltek (Defs. Opp. 14), is inconsistent with their own deposition testimony, in which Muldrow and Truong clearly distinguished between customers they had obtained through third-party referrals, and those who came to Iuvo through a "web lead."

The remaining arguments by defendants have been addressed in Deltek's prior briefs, which are incorporated herein by reference. *See* Pl. Opp. 11-17; *see also* Pl.'s Mem. in Supp. of Mot. for Prelim. Inj. at 10-14.

## II. Deltek Is Entitled to Summary Judgment on its Breach of Contract Claims (Counts V - VII(B)).

In their opposition, defendants leave wholly unaddressed Deltek's arguments that the individual defendants have breached their contracts with Deltek by (1) misusing confidential information, and (2) failing to return Deltek property when their employment ended. *See* Pl. Mem. 20-22; Defs. Opp. 17-20. Deltek is entitled to summary judgment on its breach of contract counts on these grounds alone.

With regard to defendants' arguments that the non-competition provisions are unenforceable, and that Deltek cannot prove damages, Deltek has fully addressed these points in

its opposition to defendants' motion for summary judgment, which is incorporated herein by reference. *See* Pl. Opp. 6-11, 25-30.

**III.    Deltek Is Entitled to Summary Judgment on its Tortious Interference with Contracts Claims (Count VIII).**

Defendants present *no arguments whatsoever* in opposition to Deltek's claims for tortious interference with contract, other than their contention that the non-competition provisions in the contracts are unenforceable. Defs. Opp. 17-19. They do not dispute that if the contracts are valid and enforceable in any respect, they are liable for tortiously interfering with each other's contracts with Deltek, and Iuvo also is liable for its interference with the contracts.

**IV.    Deltek is Entitled to Summary Judgment on its Tortious Interference with Business Relations and Business Expectancy Claims (Count IX).**

Defendants' sole argument in opposition to Deltek's tortious interference with business expectancy is that Deltek's corporate deponent "performed no analysis" of the 30 customers that defendants have taken, so as to determine whether the work for those customers would have been performed by Deltek or another company. In fact, Ms. Latkiewicz testified that (a) she had reviewed the list of Deltek clients for whom defendants are providing services; (b) she knows Deltek's high customer retention rate (a subject about which defense counsel did not inquire); and (c) she determined that Deltek would have been able "to provide the repeat business to them as we had in the past." Defs. Opp. 20-21.

Defendants do not explain what type of analysis they contend Ms. Latkiewicz should have performed, or why Deltek's normal "high retention rate" with respect to its existing customers would not have applied here, in the absence of defendants' wrongdoing. Importantly, defendants cite no legal authority whatsoever for their position that Deltek's evidence is insufficient under the relevant legal standards.

In fact, the law requires Deltek to prove that it had a "reasonable" business expectancy, and that defendants used improper means to interfere with that expectancy. *Banks v. Mario Industries of Va., Inc.*, 650 S.E.2d 687, 698 (Va. 2008). Deltek meets its burden of demonstrating a legitimate business expectancy based on the evidence that (a) the customers in question were already Deltek customers; (b) the customers needed services that Deltek provides, relating to Deltek's proprietary computer software; (c) Deltek has a high retention rate with existing customers; (d) Deltek's Vice President of Deltek Global Services (Ms. Latkiewicz) reviewed the list of customers in question and determined that Deltek would have expected to perform the work in question if not for defendants' intervention. *See id.* (holding that testimony of business executive that company 'had a reasonable expectation of getting all of the[] projects" was sufficient to establish plaintiff's entitlement to damages). Defendants' argument that Deltek's evidence is insufficient is not supported by Virginia law, and it is not surprising that defendants offer no authority for their position.

Importantly, defendants entirely fail to address the facts surrounding their taking of the ATK business, which alone establishes Deltek's right to summary judgment on its tortious interference claim. Muldrow admitted having discussions with both ATK and Truong, while he was still employed by Deltek, on the subject of moving the ATK business to Iuvo. Muldrow also admitted e-mailing Deltek documents regarding ATK to his personal e-mail address for his use after leaving Deltek, and admitted attending a meeting at ATK on the Wednesday following his Monday resignation – a meeting he had been planning to attend on behalf of Deltek. Clearly, no "analysis" need be performed by Deltek in order to establish a reasonable business expectancy with regard to the ATK work that defendants wrongfully took.

## V.      Deltek Is Entitled to Summary Judgment on its Breach of Fiduciary Duty Claims (Count X).

Defendants argue that they cannot be liable for breach of fiduciary duty for "mere preparations to leave" their employment with Deltek. Although they correctly state the law, this point has no application here, as it is laughable to suggest that these defendants engaged in only "mere preparations to leave." Muldrow's surrender of his Deltek computer to Truong, who was already a Deltek competitor at that point, with directions to erase all data, does not constitute "mere preparations to leave." The same is true of (a) Muldrow's e-mailing of Deltek documents to his personal e-mail address so he could use them after leaving Deltek; (b) Muldrow's downloading the Sales Opportunity Spreadsheet at 10 p.m. on his last day of work with Deltek, and sharing the document later with Iuvo executives; (c) Tom Truong's taking of his entire "My Documents" folder and erasure of all files on his Deltek computer; (d) Tom Truong's admitted use of Deltek documents to perform work for Iuvo; (e) Hai Truong's intentional destruction of consultant reports on his Deltek computer as a way to "get back" at his supervisor; (f) Levy's use of Deltek documents to perform work on behalf of a subsequent employer; and (g) all of the defendants' use of Deltek confidential documents to conduct business on behalf of Iuvo. These defendants went far beyond making arrangements for subsequent employment, and their conduct makes them liable for breaching their respective fiduciary duties to Deltek – and aiding and abetting each other's breaches – as a matter of law.

Deltek has fully addressed defendants' argument regarding damages in its opposition to defendants' motion for summary judgment, and incorporates such arguments by reference. *See* Pl. Opp. 23-24.

## VI.    Deltek Is Entitled to Summary Judgment on its Statutory and Common Law Civil Conspiracy Claims (Counts XII - XIII).

Defendants' opposition to Deltek's conspiracy claims does not directly address the core facts upon which Deltek's claims are based, but instead, tries to create a distraction with an irrelevant argument.

As Deltek stated in its opening memo, Muldrow and Truong conspired while Truong was operating Iuvo, and Muldrow was still a Deltek employee.  In that period of time, Muldrow gave Truong his Deltek laptop to erase all of the business data contained on it, which Truong did. Both were aware that the information on the machine belonged to Deltek, and Muldrow knew that Deltek would not otherwise have months' worth of important data.  Muldrow and Truong also worked together while Muldrow was still at Deltek to transition a Deltek customer, ATK, to Iuvo.

Defendants do not address these facts at all, or the fact that Hai Truong admitted destroying the consultant reports he had stored on his Deltek computer – intentionally to "get back" at Deltek when he was leaving the company and joining Iuvo – other than to complain that Deltek has not precisely identified what information was lost when defendants admittedly erased all data on their Deltek computers.  Defendants' point is of no consequence.  Deltek need not list what was lost – defendants have already admitted erasing *everything* on their computers, and they have explained what the computers contained.  As Muldrow put it, "the computer was my life. . . .  [T]here was a lot of broad information that was on that computer."  Muldrow Dep. 29, 33-34.  In fact, the computer contained "[a]nything and everything that pertained to [his] managing director role [at Deltek] – PowerPoint presentations, invoices with clients, proposals, anything that pertained to [his] job was . . . more than likely on the laptop." *Id*. 103.  Muldrow also knew that he had not saved the data on his computer to a Deltek server for "months to a

13

year," so Deltek had no other copies of the most recent data. *Id.* 29-30. Particularly given these admissions by Muldrow, it is hard to understand defendants' point that Deltek must list what property was destroyed before defendants can be liable for conspiring to harm Deltek while some of them were still at Deltek, and others were already working for Iuvo.

Defendants also fail to address the point that each of the defendants induced and encouraged breaches of the others' contractual obligations to Deltek, which can form the basis of a conspiracy claim. *See CaterCorp, Inc. v. Catering Concepts, Inc.*, 431 S.E.2d 277, 281-82 (Va. 1993) (allegations that defendants conspired to aid and abet breaches of a non-competition agreement stated claims for conspiracy).

## VII. Deltek Is Entitled to Summary Judgment on its Conversion Claims (Count XV).

Defendants do not dispute that they took, or destroyed, substantial amounts of documents and information belonging to Deltek. They cannot. Instead, defendants attempt to argue that they are not liable for conversion because some of the documents and information they took were electronic copies. This tenuous argument fails.

Defendants' position that the electronic files they took cannot form the basis of a conversion claim is unsupported by the law. This Court has made clear that "the purloining of copies of documents would constitute conversion because such action is an act of 'dominion' inconsistent with the true owner's property rights." *E.I. duPont de Nemours & Co. v. Kolon Industries, Inc.*, 2009 WL 2762614, at *9 (E.D.Va. Aug. 27, 2009) (quoting *Simmons v. Miller*, 544 S.E.2d 666, 679 (Va. 2001)). As this Court stated when ruling that a claim for conversion "based exclusively on the transfer of copies of electronic information" could not be dismissed, "it is undeniably true that theft of a copy is the same as taking the content of the original and that the copy belongs to the owner." *Id.*; *see also U.S. v. Fowler*, 932 F.2d 306, 309-10 (4th Cir.

1991) (defendant, who acquired copies of documents, not the original documents, was properly convicted of violating federal statute that prohibits conversion of United States property).[2]

Further, defendants have no response to the fact that Muldrow, Truong and Hai Truong entirely erased their Deltek-issued laptops.  It is not disputed that those laptops contained information and documents belonging to Deltek, the destruction of which constitutes conversion. *See  Hartzell Fan, Inc. v. Waco, Inc.*, 505 S.E.2d 196, 201 (Va. 1998) ("Conversion includes any distinct act of dominion wrongfully exerted over property that is in denial of, or inconsistent with, the owner's rights.")  Moreover, defendants testified that they knew Deltek did not have copies stored elsewhere of some of the information that was erased from those computers.  *See* Muldrow Dep. 29-30 (Muldrow had not saved the data on his computer to a Deltek server for "months to a year"); Hai Truong Dep. 46-48 (Hai Truong erased his computer because he was "pissed off" at Deltek and wanted to prevent Deltek from accessing consultant reports that he had stored on his computer but not uploaded to Deltek's system).  These acts also establish conversion as a matter of law.  *See Simmons*, 544 S.E.2d at 679 (declaring that a defendant is liable for conversion for "depriving the owner of their possession" of property).

---

[2] Defendants' attempt to discredit this Court's holding in *E.I. duPont de Nemours* and the holding in *Combined Ins. Co. of America v. Wiest*, 578 F. Supp. 2d 822 (W.D.Va. 2008) is inappropriate. *United Leasing Corp. v. Thrift Ins. Corp.*, 247 Va. 299 (1994), does not stand for the proposition that electronic copies of documents cannot be converted.  *Id.* 305.  Nor does it hold that electronic copies of documents are intangible property.  *Id.*  Indeed, as the Fourth Circuit has made clear, copies of documents are "things of value and tangible property" to the owner. *Fowler*, 932 F.2d at 310.

**VIII.  Deltek Is Entitled to Summary Judgment on its Claims for Violation of the Virginia Uniform Trade Secrets Act (Count XVI).**

Defendants take a surprising position in opposition to Deltek's trade secrets claim. Without citation to any testimony or affidavit, they state: "As to the 'Opportunities' spreadsheet, . . . Ed Muldrow obtained the document while employed by Deltek and within the scope of his employment."  This statement, about a document that lists *all* of Deltek's sales opportunities, company-wide, which Muldrow downloaded at 10:08 p.m. on his last day of work in Deltek's offices, is a bit hard to swallow.  Nevertheless, even if that statement were accepted as true, for summary judgment purposes, it is undisputed that Muldrow took the spreadsheet after his employment with Deltek ended, and shared it with others at Iuvo, attached to a message that stated:  "Strategize on which to pursue and how."  Truong Dep. 238-41; Pl. Mem., Ex. 13. Truong recalls that he, Muldrow, and Henning looked at the document and "contemplated" it. Truong Dep. 238-41.  Only after a discussion with legal counsel does Muldrow claim to have directed "everyone" at Iuvo not to use it, because he realized at that point that the spreadsheets were "confidential and proprietary information in violation of my agreement and our agreements . . ."  Muldrow Dep. 324-25.  On these facts alone – even if it were true that Muldrow's initial download was innocent – Deltek is entitled to summary judgment on its trade secrets claim.

Moreover, the Sales Opportunity Spreadsheet is not the only trade secret document that defendants took from Deltek.  At least two of the templates used by defendants to perform services for Deltek customers – a Master Services Agreement and a Consulting Agreement – originated from Deltek documents.  *See* Pl. Opp., Ex. 6.  There are at least 20 documents in defendants' possession that are clearly based on the templates stolen from Deltek, and used by defendants to conduct business for Iuvo.  *See* Pl. Opp., Ex. 2.  There are more than 1,000

documents from defendants' joint productions of electronically stored information that contain Deltek information in the metatags of those documents. *See* Pl. Opp., Ex. 3; Pl. Mem., Ex. 16.

Deltek has detailed the documents taken by defendants, and has responded to the causation and damages arguments made by defendants, in its opposition to defendants' motion for summary judgment. Those arguments are incorporated by reference. *See* Pl. Opp. 20-22, 25, 28-29.

## CONCLUSION

Deltek is entitled to summary judgment on its claims against defendants. Defendants have collectively acted to harm Deltek, using surreptitious means to steal documents from Deltek; destroy Deltek's only copies of valuable electronic files; lure Deltek customers over the Internet by infringing Deltek's trademarks; breach their contractual promises to Deltek and induce each other's breaches; and ultimately, steal hundreds of thousands of dollars in revenue from existing Deltek customers who were diverted to Iuvo. Deltek respectfully asks this Court to grant summary judgment to Deltek on all claims, and to hold a trial with respect to proof of amount of damages only.

Respectfully submitted,

_____/s/_____
Charles B. Wayne (VSB # 24954)
Elisha A. King (admitted *pro hac vice*)
Jamie M. Konn (VSB # 73113)
DLA Piper LLP (US)
500 Eighth Street NW
Washington, D.C. 20004
(202) 799-4000
(202) 799-5000 [fax]
charles.wayne@dlapiper.com
elisha.king@dlapiper.com
jamie.konn@dlapiper.com

*Counsel for Plaintiff*

Dated: November 9, 2009

17

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of November, 2009, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send notification of such filing (NEF) to the following:

William F. Krebs
Christopher A. Glaser
Michael R. Abejuela
Bean, Kinney & Korman, P.C.
2300 Wilson Blvd., Seventh Floor
Arlington, VA 22201

*Counsel for Defendants*


_____/s/_____
Jamie M. Konn